No. 24-3978

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

IN RE: SUBPOENA OF INTERNET
SUBSCRIBERS OF COX
COMMUNICATIONS, LLC AND COXCOM LLC

CAPSTONE STUDIOS CORP.

*Petitioner-Appellant*, and

MILLENNIUM FUNDING, INC. and VOLTAGE PICTURES, LLC

*Petitioners*

v.

JOHN DOE

*Respondent,* and

COXCOM, LLC

*Interested Party-Appellee*

On Appeal from the United States District Court
for the District of Hawaii
No. 1:20-cv-00426-JMS-WRP
Hon. Judge Seabright

---

## EXCERPTS OF RECORD
Volume 1 of 1

---

Kerry S. Culpepper, HI Bar No. 9837

ER-1

Culpepper IP, LLLC
75-170 Hualalai Rd, Suite B204
Kailua Kona, HI 96740
808-464-4047
kculpepper@culpepperip.com
*Attorney for Appellant Capstone Studios
Corp.*

# INDEX

**Page**

Order Denying Petitioners' Motion to Supplement Record for Appeal,
Docket No. 49 (filed June 7, 2024)……………………………………………… 7

Exhibit "1" to Petitioners' Motion to Supplement Record for Appeal,
Docket No. 48-2 (filed June 4, 2024)…………………………………………… 10

Petitioners' Motion to Supplement Record for Appeal,
Docket No. 48 (filed June 4, 2024)…………………………………………… 14

Entered Order Granting Petitioners' Motion for 30 day extension of time to file Notice of Appeal,
Docket No. 46 (filed May 8, 2024)…………………………………………… 17

Order (1) Granting Cox's Motion to Strike; (2) Denying Petitioners' Motion for Reconsideration; and (3) Clarifying Relief and Denying Petitioners' Motion to Stay,
Docket No. 44 (filed April 26, 2024)………………………………………….. 19

Exhibit "5" to Petitioners' Opposition to Cox's Motion to Strike,
Docket No. 42-5 (filed Mar. 8, 2024)………………………………………… 47

Exhibit "2" to Petitioners' Opposition to Cox's Motion to Strike,
Docket No. 42-2 (filed Mar. 8, 2024)………………………………………… 49

Petitioners' Memorandum in Opposition to Cox's Motion to Strike,
Docket No. 42 (filed Mar. 8, 2024)………………………………………… 60

Declaration of [Redacted] submitted in Petitioners' Reply,
Docket No. 40-1 (filed Feb. 28, 2024)…………………………………………71

Petitioners' Reply in support of motion for stay,
Docket No. 40 (filed Feb. 28, 2024)…………………………………………73

Entered Order setting briefing schedule on Petitioners' Motion for Reconsideration,
Docket No. 36 (filed Feb. 14, 2024)…………………………………………82

Exhibit "C" to Petitioners' Motion for Reconsideration,
Docket No. 35-3 (filed Feb. 12, 2024)……………………………………… 84

Declaration of David Cox in support of Petitioners' Motion for Reconsideration,
Docket No. 35-2 (filed Feb. 12, 2024)……………………………………… 86

Memorandum in support of Petitioners' Motion for Reconsideration,
Docket No. 35-1 (filed Feb. 12, 2024)……………………………………… 103

Petitioners' Statement,
Docket No. 34 (filed Feb. 10, 2024)………………………………………113

Entered Order Suspending Order and Directing Cox to file a response
to Petitioners' Motion for a stay,
Docket No. 33 (filed Feb. 1, 2024)……………………………………… 115

Order Overuling Petitioners' Objections and adopting Findings &
Recommendations,
Docket No. 31 (filed Jan. 30, 2024) …………………………………… 117

Petitioners' Response to Declaration of Amber Hall,
Docket No. 30 (filed Dec. 5, 2023)……………………………………… 140

Declaration of Amber Hall,
Docket No. 29 (filed Nov. 29, 2023)…………………………………… 146

Order Requesting Supplemental Evidence,
Docket No. 26 (filed Nov. 8, 2023)……………………………………… 150

Petitioners' Reply in Support of Objections to the Magistrate Judge's Findings
and Recommendations,
Docket No. 24 (filed Oct 9, 2023)………………………………………153

Cox's Response to Petitioners' Objections to the Magistrate Judge's Findings and
Recommendations
Docket No. 18 (filed Sept. 28, 2023)………………………………………163

Cox's Amended Notice of Intent to Respond to Petitioners' Objections to the Magistrate Judge's Findings and Recommendations,
Docket No. 16 (filed Sept. 28, 2023)……………………………………… 173

Cox's Amended Notice of Intent to Respond to Petitioners' Objections to the Magistrate Judge's Findings and Recommendations,
Docket No. 13 (filed Sept. 26, 2023)……………………………………… 176

Certificate of Service,
Docket No. 10-3 (filed Sept. 11, 2023)……………………………………179

Exhibit "1" to Petitioners' Objections to the Magistrate Judge's Findings and Recommendations,
Docket No. 10-2 (filed Sept. 11, 2023)……………………………………181

Memorandum in Support of Petitioners' Objections to the Magistrate Judge's Findings and Recommendations,
Docket No. 10-1 (filed Sept. 11, 2023)……………………………………185

Petitioners' Objections to the Magistrate Judge's Findings and Recommendations,
Docket No. 10 (filed Sept. 11, 2023) ……………………………………… 196

Magistrate Judge's Findings and Recommendations to Grant John Doe's Motion to Quash,
Docket No. 8 (filed Aug. 23, 2023) ………………………………………200

Certificate of Service,
Docket No. 7 (filed Aug. 23, 2023) ………………………………………216

Memorandum in Opposition to Motion to Quash,
Docket No. 6 (filed May 29, 2023)…………… ……………………………218

Entered Order construing John Doe's Objection as Motion to Quash and setting briefing schedule,
Docket No. 5 (filed May 26, 2023) ………………………………………223

John Doe's Objection,
Docket No. 4 (filed May 24, 2023) ………………………………………225

Issued 17 U.S.C. §512(h) Subpoena,
Docket No. 3 (filed April 13, 2023) ……………………………………… 226

Petitioners' Application for 17 U.S.C. §512(h) Subpoena,
Docket No. 1 (filed April 13, 2023) …………………………………… 229

Exhibit "2" to Petitioners' Application for 17 U.S.C. §512(h) Subpoena,
Docket No. 1-3 (filed April 13, 2023) ………………………………… 234

Exhibit "1" to Petitioners' Application for 17 U.S.C. §512(h) Subpoena,
Docket No. 1-2 (filed April 13, 2023) ………………………………… 238

Notice of Appeal,
Docket No. 33 (filed Nov. 24, 2020) ………………………………… 247

District Court Docket Sheet ………………………………………… 250

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN RE: | CIV. NO. 23-00426 JMS-WRP |
| SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC. | ORDER DENYING PETITIONERS' MOTION TO SUPPLEMENT RECORD FOR APPEAL, ECF NO. 48 |

## ORDER DENYING PETITIONERS' MOTION TO SUPPLEMENT RECORD FOR APPEAL, ECF NO. 48

Before the court is Petitioners' Motion to Supplement Record for Appeal under Federal Rule of Appellate Procedure ("FRAP") 10(e). For the reasons to follow, the court DENIES Petitioners' Motion.

Petitioners cite FRAP 10, titled "The Record on Appeal," which reads in relevant part:

(e) Correction or Modification of the Record.

(1) If any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly.

(2) If anything material to either party is omitted from or misstated in the record by error or accident, the omission

ER-7

or misstatement may be corrected and a supplemental record may be certified and forwarded:

> (A) on stipulation of the parties;
> (B) by the district court before or after the record has been forwarded; or
> (C) by the court of appeals.

FRAP 10(e) allows "[c]orrection or [m]odification" of the record on appeal if it does not accurately reflect the proceedings before the district court, or if materials have been mistakenly omitted. It cannot be used "to add to or enlarge the record on appeal to include material which was not before the district court." *United States v. Walker*, 601 F.2d 1051, 1054 (9th Cir. 1979); *see also United States v. Litwin*, 972 F.3d 1155, 1173–74 (9th Cir. 2020) (same) (citing *United States v. Garcia*, 997 F.2d 1273, 1278 (9th Cir. 1993) ("The district court may not use [FRAP] 10(e) to supplement the record with material not introduced or with findings not made.")).

Preliminarily, FRAP 10(e) appears to be inapplicable on its face— Petitioners have not yet filed a notice of appeal, so there is no record "on appeal" to modify or correct. In any event, Petitioners do not seek to correct or modify the record, they seek to add a new document to the record that was not before the court when it decided Petitioners' motions.[1] Petitioners do not argue that their proposed

---

[1] The document is submitted in support of Petitioners' argument that Cox has no standing in this case, which this court squarely rejected. ECF No. 44 at PageID.373–374. It

(continued . . .)

2

exhibit was mistakenly omitted from the record or that it was ever submitted to this court for consideration. Thus, FRAP 10(e) provides no authority for Petitioners' motion. And for the same reason, the court will not use its inherent authority to supplement the record so that the appellate court can review a document that this court did not consider. *See Kirshner v. United Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988) ("Papers not filed with the district court or admitted into evidence by that court are not part of the record on appeal."). Petitioners' Motion is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 7, 2024.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*In re: Subpoena of Internet Subscribers of Cox Communications, LLC and CoxCom, LLC*, Civ. No. 23-00426 JMS-WRP, Order Denying Petitioners' Motion to Supplement Record for Appeal, ECF No. 48

---

appears to be an invoice showing that Cox was prepaid for the costs of complying with the subpoena in this matter. ECF No. 48-2. It is intended to refute the court's reasoning that Cox has standing because "[i]t also appears that Cox stands to incur new costs or obligations if the court were to adopt Petitioners' construction of §512(d) . . . ." ECF No. 44 at PageID.374.

A motion to supplement the record is an inappropriate vehicle to rehash arguments that have been rejected. Nonetheless, to clarify, this holding refers to the costs and obligations that Cox *will incur* if the court adopts Petitioners' construction of 17 U.S.C. § 512(d) (i.e., if the court decides that § 512(d) applies to make internet service providers like Cox subject to § 512(h) subpoenas seeking the identities of P2P infringers). ECF No. 44 at PageID.373–374. That Cox was prepaid for the costs of compliance with this particular subpoena does not alter the fact that, if this court holds that Cox is generally subject to § 512(h) subpoenas for P2P infringement, Cox will incur new costs and obligations. Thus, the proposed new exhibit would not be relevant to an appeal in any event.

3

**Exhibit "1"**

<div align="right">
Subpoena Response Office<br>
Cox Communications, Inc.<br>
6205B Peachtree Dunwoody Road, 16th Floor<br>
Atlanta, GA 30328<br>
(404) 269-0100<br>
FAX: (404) 269-1898<br>
subpoenaresponse@cox.com
</div>

PAYOR COPY

June 27, 2023

TO:   Kerry S. Culpepper

RE:   Charges for Response to Attached Subpoena

**Reference # 23-** ▮▮▮▮▮▮                                  *Invoice #*  22982

# I N V O I C E

To defray cost of compliance, payment of the following charges is required for the response provided by Cox Communications to the attached request for production of information or records.  Payment is due upon receipt.

**Cost Reimbursement**       (18 U.S.C. section 2706)

| | | |
|---|---|---|
| ___ | $50.00 | Per account for basic information |
| ___ | $40.00 | Per account for alarm activity information/video/images/audio |
| ___ | $25.00 | Per account for alarm activity information (Cox Customers only) |
| ___ | $100.00 | Expedited handling |
| ___ | $50.00/Month (Flat rate) | Telephone call detail records (other than toll) |
| ___ | No Charge | Telephone toll records and basic Cox telephone subscriber records |
| ___ | $25.00/first 3 months, $25 each addt'l | Telephone call detail records (civil cases for Cox customers) |
| ___ | $5.00 | Per account in excess of 10 telephone subscribers* |
| ___ | $75.00/Hr./Staff | Requests requiring greater than 0.5 hours ($40.00 minimum) |
| ___ | $80.00 | For preservation requests |
| ___ | No Charge | Non-expedited ICAC or harrassing or abusive calls investigations |
| ___ | Pen Register/Trap and Trace | $1,550 initial install, $1,000/mo |
| ___ | Wiretap | $2,100 initial install, $1,775/mo |

**▮▮▮right Infringement Cases**

| | | |
|---|---|---|
| ▮▮▮ | $60.00/per IP Address | 1-10 IP Addresses |
| _____ | $55.00/per IP Address | 11-20 IP Addresses |
| _____ | $50.00/per IP Address | 21 & up IP Addresses |

**\*Telephone subscriber requests in excess of 10 accounts or otherwise voluminous may be charged under 18 USC 2706. Telephone account information in civil cases are charged $50.00 per account.**

**For more information: http://www.cox.com/Policy/leainformation/default.asp or call (404) 269-0100**
**Law Enforcement Agents can check service providers at http://www.npac.com.**

**TOTAL:**                        ▮▮▮▮▮▮▮▮

**Make checks payable to Cox Communications** ▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮

**Include the Reference and Invoice #'s from above along with payment**

**Mail to:  Cox Communications**
           **Subpoena Compliance/Legal Dept.**
           **6205-B Peachtree Dunwoody Road, 16th Floor**
           **Atlanta, GA 30328**

Subpoena Compliance Office
Cox Communications, Inc.
6205B Peachtree Dunwoody Road, 16th Floor
Atlanta, GA 30328
(404) 269-0100
FAX: (404) 269-1898
subpoenaresponse@cox.com

<div align="center">REMITTANCE COPY</div>

June 27, 2023

TO:   Kerry S. Culpepper
RE:   Charges for Response to Attached Subpoena

**Reference # 23 -** ▒▒▒▒▒▒▒▒▒▒                    *Invoice #*   22982

<div align="center">

# I N V O I C E

</div>

To defray cost of compliance, payment of the following charges is required for the response provided by Cox Communications to the attached request for production of information or records.  Payment is due upon receipt.

**Cost Reimbursement**          (18 U.S.C. section 2706)

| | | |
|---|---|---|
| __ | $50.00 | Per account for basic information |
| __ | $40.00 | Per account for alarm activity information/video/images/audio |
| __ | $25.00 | Per account for alarm activity information (Cox Customers only) |
| __ | $100.00 | Expedited handling |
| __ | $50.00/Month (Flat rate) | Telephone call detail records (other than toll) |
| __ | No Charge | Telephone toll record and basic Cox telephone subscriber records |
| __ | $25.00/first 3 months, $25 each addt'l | Telephone call detail records (civil cases for Cox customers) |
| __ | $5.00 | Per account in excess of 10 telephone subscribers* |
| — | $75.00/Hr./Staff | Requests requiring greater than 0.5 hours ($40.00 minimum) |
| — | $80.00 | For preservation requests |
| __ | No Charge | Non-expedited ICAC, harrasing or abusive calls investigations. |
| __ | Pen Register/Trap and Trace | $1,550 initial request, $1,000/mo |
| __ | Wiretap | $2,100 initial request, $1,775/mo |

**Copyright Infringement Cases**

| | | |
|---|---|---|
| ▒▒ | $60.00/per IP Address | 1-10 IP Addresses |
| _____ | $55.00/per IP Address | 11-20 IP Addresses |
| _____ | $50.00/per IP Address | 21 & up IP Addresses |

**\*Telephone subscriber requests in excess of 10 accounts or otherwise voluminous may be charged under 18 USC 2706.**
**Telephone account information in civil cases are charged at $50.00 per account.**

**For more information: http://www.cox.com/Policy/leainformation/default.asp or call (404) 269-0100**
**Law Enforcement Agents can check service providers at http://www.npac.com.**

## TOTAL:                    ▒▒▒▒▒▒▒▒

**Make checks payable to Cox Communications** ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒
▒▒▒▒▒▒▒

**Include the Reference and Invoice #'s  from above along with payment**

**Mail to: Cox Communications**
    **Subpoena Compliance/Legal Dept.**
    **6205-B Peachtree Dunwoody Road, 16th Floor**
    **Atlanta, GA 30328**

<div align="center">ER-12</div>

# Cox Subpoena Compliance Credit Card Authorization Form

Instructions:
    1. **Complete and sign**
    2. **Return by mail:**

Subpoena Compliance
Attn: Jacqueline Murray
Cox Communications
6205-B Peachtree Dunwoody Road, 16th Floor
Atlanta, GA 30328

    **By fax:**
    **Or email:**

Fax 404 269 1898
jacqueline.murray@cox.com

<u>Cox Communications, Inc.</u>

ALL credit card info is shredded.

**Reference # 23 -**

*Invoice #*    22982

Cardholder Name: _____

Card Type:    ☐ American Express    ☐ Visa    ☐ Mastercard

Card Number: _____

VID Code: _____

Expiration Date:    Month    Year

Billing Address: _____
_____
_____
_____

Contact:    Phone  _____
    Email  _____
    Fax  _____

I authorized a charge against this card in the amount of    $ _____

_____
Cardholder Signature

_____
Date

CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:   (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:        kculpepper@culpepperip.com

Attorney for Petitioners
Voltage Holdings, LLC
Millennium Funding, Inc., and
Capstone Studios Corp.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re Subpoena | ) | Case No.: 1:23-cv-00426-JMS-WRP |
| | ) | (Copyright) |
| Internet subscribers of Cox | ) | |
| Communications, LLC and CoxCom | ) | PETITIONERS' MOTION TO |
| LLC | ) | SUPPLEMENT RECORD FOR |
| | ) | APPEAL; MEMORANDUM IN |
| | ) | SUPPORT OF MOTION; EXHIBIT |
| | ) | "1"; CERTIFICATE OF SERVICE |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**PETITIONERS' MOTION TO SUPPLEMENT RECORD FOR APPEAL**

Petitioners Voltage Holdings, LLC; Millennium Funding, Inc., and Capstone

Studios Corp., by and through their attorney, Kerry S. Culpepper, move this

honorable court for leave to supplement the record for appeal with the invoice

20-023Ga

shown as Exhibit "1". The Motion is made pursuant to Fed. R. App. P. 10(e)(1) and (2) and this Court's inherent authority.

This Motion is based upon the Memorandum in Support thereof, and all pleadings and papers filed in this action, and upon such other matters the Court may entertain.

### L.R. 7.8 Certification

Petitioners maintain their position that Cox is not a party to this proceeding. Out of an abundance of caution, Petitioners make this motion following conferences by email with counsel for Cox pursuant to L.R. 7.8. Petitioners' counsel emailed Cox counsel on May 14 to inquire on Cox's position on this motion and what redactions Cox requested for Exhibit "1". Cox's counsel replied on May 17 inquiring on the legal basis for Petitioners' motion. Petitioners' counsel replied that same day and pointed out the legal arguments in this motion. On May 24, 2024, Cox's counsel replied by stating Cox disagreed with Petitioners' characterization of the Order and reserved right to oppose the motion in writing, but Cox did not provide the requested redactions. That same day, Petitioners' counsel reiterated the request for the proposed redactions. On May 28, 2024, Cox finally provided a proposed redacted version of the invoice included as Exhibit "1".

DATED: Kailua-Kona, Hawaii, June 4, 2024.

20-023Ga

CULPEPPER IP, LLLC


 /s/ Kerry S. Culpepper
Kerry S. Culpepper
Attorney for Petitioners


20-023Ga

| | |
|---|---|
| **From:** | hid_resp@hid.uscourts.gov |
| **To:** | hawaii_cmecf@hid.uscourts.gov |
| **Subject:** | Activity in Case 1:23-cv-00426-JMS-WRP In Re: Subpoena of Internet subscribers of Cox Communications, LLC and CoxCom LLC Order on Motion for Miscellaneous Relief |
| **Date:** | Wednesday, May 8, 2024 4:28:10 PM |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## U.S. District Court

## District of Hawaii

## Notice of Electronic Filing

The following transaction was entered on 5/8/2024 at 4:26 PM HST and filed on 5/8/2024

| | |
|---|---|
| **Case Name:** | In Re: Subpoena of Internet subscribers of Cox Communications, LLC and CoxCom LLC |
| **Case Number:** | 1:23-cv-00426-JMS-WRP |
| **Filer:** | |
| **WARNING: CASE CLOSED on 01/30/2024** | |
| **Document Number:** | 46(No document attached) |

**Docket Text:**
**EO: Petitioners' Motion for 30 Day Extension of Time to File Notice of Appeal, ECF No. [45] is GRANTED for good cause shown. The deadline to file a Notice of Appeal is extended to June 25, 2024.**

**(JUDGE J. MICHAEL SEABRIGHT)(rlfh)**


**1:23-cv-00426-JMS-WRP Notice has been electronically mailed to:**

Joachim P. Cox    jcox@cfhawaii.com, ckipi@cfhawaii.com, clarsen-dias@cfhawaii.com, glawlor@cfhawaii.com, jdougherty@cfhawaii.com, nfarris@cfhawaii.com

Abigail Marie Holden    aholden@cfhawaii.com, ckipi@cfhawaii.com, clarsen-dias@cfhawaii.com, glawlor@cfhawaii.com, jdougherty@cfhawaii.com, nfarris@cfhawaii.com

Kerry S. Culpepper    kculpepper@culpepperip.com, nho@culpepperip.com

Jennifer A. Golinveaux    jgolinveaux@winston.com

Thomas J. Kearney     tkearney@winston.com

**1:23-cv-00426-JMS-WRP Notice will not be electronically mailed to:**

John Doe
Las Vegas, NV

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN RE: | CIV. NO. 23-00426 JMS-WRP |
| SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC. | ORDER (1) GRANTING COX'S MOTION TO STRIKE, ECF NO. 39; (2) DENYING PETITIONERS' MOTION FOR RECONSIDERATION, ECF NO. 35; AND (3) CLARIFYING RELIEF AND DENYING PETITIONERS' MOTION TO STAY, ECF NO. 32 |

**ORDER (1) GRANTING COX'S MOTION TO STRIKE, ECF NO. 39; (2) DENYING PETITIONERS' MOTION FOR RECONSIDERATION, ECF NO. 35; AND (3) CLARIFYING RELIEF AND DENYING PETITIONERS' MOTION TO STAY, ECF NO. 32**

## I.   INTRODUCTION

Before the court are three motions.  Voltage Holdings, LLC; Millennium Funding, Inc.; and Capstone Studios Corp. (collectively "Petitioners") filed two motions in response to the court's January 30, 2024 Order Overruling Objections and Adopting Findings and Recommendation to Quash 512(h) Subpoena (the "Order to Quash").  ECF No. 31 (available at *In re Cox Commc'ns., LLC*, 2024 WL 341069 (D. Haw. Jan. 30, 2024)).  The first is an Emergency Motion to Stay requesting a stay of the part of the Order to Quash that requires Petitioners to "return and/or destroy" and to "maintain no further record of" the

information they obtained from their subpoena.  ECF No. 32 at PageID.175–176.

The second is a Motion for Reconsideration, ECF No. 35, of the Order to Quash,

attaching a declaration, ECF No. 35-2.  The third is Cox Communications LLC's

("Cox") Motion to Strike that declaration.  ECF No. 39.

For the reasons to follow, the court GRANTS Cox's Motion to Strike,

DENIES Petitioners' Motion for Reconsideration, and DENIES Petitioner's

Motion to Stay, but clarifies the scope of the relief granted by the Order to Quash.

## II.    BACKGROUND

The background of this action is laid out fully in the Order to Quash.

*See* ECF No. 31.  In brief, in an Application for 512(h) Subpoena[1], Petitioners

identified the IP addresses of certain individuals who allegedly distributed copies

of Petitioners' copyrighted film using peer-to-peer ("P2P") filesharing.  ECF No. 1

at PageID.2.  Petitioners then subpoenaed Cox, these individuals' internet service

provider ("ISP"), to discover their identities, and provided a list of IP addresses

(the "Subpoena").  *Id.* at PageID.2; ECF No. 1-1 at PageID.7.  Cox gave its

subscribers an opportunity to object to the disclosure of their identities, and one

subscriber ("John Doe") did so.  ECF No. 4.  The Magistrate Judge construed John

Doe's letter of objection as a motion to quash, ECF No. 5, and recommended that

---

[1]  The subpoena was sought under 17 U.S.C. § 512(h), part of the Digital Millennium Copyright Act ("DMCA").

the Subpoena be quashed because it was invalid under § 512(h).  ECF No. 8 at

PageID.54 (Findings and Recommendation to Grant John Doe's Motion to Quash

512(h) Subpoena, hereinafter "F&R").  Petitioners objected to the F&R, and Cox

filed a response to Petitioners' objections.  This court reviewed the F&R and

affirmed the Magistrate Judge's decision that the Subpoena was invalid.  In so

doing, the court ordered Petitioners to "return and/or destroy any information

derived from the Subpoena, to maintain no further record of the information

obtained [from] the Subpoena, and to make no further use of the subscriber data

obtained from the Subpoena."  ECF No. 31 at PageID.173.

Petitioners filed an Emergency Motion to Stay, ECF No. 32, to which

Cox submitted a Response, ECF No. 37, and Petitioners filed a Reply, ECF No. 40.

Petitioners also filed a Motion for Reconsideration, ECF No. 35, attaching a

declaration of David Cox ("D. Cox Declaration"), ECF No. 35-2, with three

exhibits attached.  Cox submitted a Response to the Motion for Reconsideration,

ECF No. 38, and a Motion to Strike the declaration and exhibits, ECF No. 39.

Petitioners filed a Memorandum in Opposition to the Motion to Strike, ECF No.

42, and Cox filed a Reply, ECF No. 43.  The court decides these motions without a

hearing pursuant to Local Rule 7.1(c).

<div align="center">3</div>

### III.   DISCUSSION

**A.     Motion to Strike**

Before considering Petitioners' Motion for Reconsideration, the court considers Cox's Motion to Strike the David Cox Declaration attached to Petitioners' Motion and its exhibits.  David Cox has a Bachelor of Science in Information Technology and owns an IT consulting company.  ECF No. 35-2 at PageID.210.  His declaration provides technical information in support of Petitioners' arguments concerning "null routing" and "port blocking and filtering."[2]  Cox asks that the court use its "inherent power to control [its] docket" to strike the declaration attached to Petitioners' Motion for Reconsideration, arguing that there is no reason Cox could not have raised the argument and filed the declaration and exhibits earlier in the litigation.  ECF No. 39-1 at PageID.277.

"A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."  *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis omitted) (holding that plaintiffs could not raise a choice of law

---

[2]  The "null routing" argument was raised in Petitioners' Objections, but the "port blocking and filtering" argument was not.  Petitioners assert that their port blocking and filtering argument is not new, but in their prior brief, they only mention port blocking and filtering in opposition to Cox's declarant's statement that "material is transmitted through [Cox's] system or network without modification of its content."  ECF No. 30 at PageID.146–147.  Petitioners never argued that port blocking and filtering support their interpretation of § 512(d), which is the only holding Petitioners challenge on reconsideration.

argument on reconsideration because they had prior notice that choice of law could be relevant and could have raised the argument in the original objections and hearings); *see also Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1557 n.4 (9th Cir. 1987) (holding that the district court did not abuse its discretion when it refused to consider affidavits filed in support of a motion for reconsideration when the appellant had no excuse for not presenting them previously); *Frederick S. Wyle Pro. Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (affirming denial of a motion for reconsideration because the purportedly "newly discovered evidence" attached to it was available before the court's disposition); *Sulak v. Am. Eurocopter Corp.*, 2009 WL 3425155, at *3 (D. Haw. Oct. 26, 2009) (refusing to consider evidence newly presented on motion for reconsideration because plaintiffs did not explain why they could not have presented the evidence earlier).

The court agrees with Cox:  Petitioners have not shown that this evidence could not have been raised or presented earlier.  In an apparent attempt to avoid this outcome, Petitioners argue that the declaration and exhibits are intended "to correct a factual assertion in this Court's order," namely, that the court "considered terminating a connection by null routing the same as terminating service."  ECF No. 42 at PageID.315, 317.  They argue that the court's "mistake" "could not have been anticipated."  *Id.* at PageID.318.  But Petitioners' premise is

5

wrong—the court did not hold that "terminating a connection by null routing [is] the same as terminating service." Rather, it stated that null routing "effectively terminates a network connection," which is a direct quote from a source *Petitioners* cited in their Objections. ECF No. 31 at PageID.169 (quoting ECF No.10-1 at PageID.70 n.5 (in turn, quoting Ax Sharma, "VPN provider bans BitTorrent after getting sued by film studios," (March 12, 2022) https:// www.bleepingcomputer.com/news/security/vpn-provider-bans-bittorrent-aftergetting-sued-by-film-studios/ [https://perma.cc/R2KG-JY7Z])). Thus, Petitioners already had ample opportunity to present evidence regarding what null routing is, and Petitioners certainly could have anticipated that the court would reference a source they themselves cited. *Kona Enters.,* 229 F.3d at 890. Petitioners may not have a "second bite at the apple" because they do not like the court's conclusion.[3]

---

[3] Petitioners also argue that Cox has no standing to "file motions or oppositions in this matter." ECF No. 42 at PageID.319. Because Cox never filed a timely objection to the subpoena or the Motion to Quash, and because Petitioners withdrew their request for John Doe's identification information, ECF No. 35-3 at PageID.228, Petitioners argue that Cox has no cognizable injury sufficient to file any motions in this proceeding. ECF No. 42 at PageID.319.

It is undisputed that the Subpoena was directed to and served on Cox—so, in that sense, Cox was a party to the Subpoena. ECF No. 1. Although only John Doe moved to quash, Cox entered this proceeding to respond to Petitioners' interpretation of § 512 advanced in their Objections to the F&R—namely, Petitioners' argument that Cox falls under § 512(d). *See* ECF No. 18 at PageID.107–108. That argument certainly implicated Cox's rights. Cox's objection to Petitioners' argument that its subpoena was valid under § 512(h), is a type of objection to Petitioners' § 512(h) subpoena, even if it was late. *See McCoy v. Sw. Airlines Co.,* 211 F.R.D. 381, 385 (C.D. Cal. 2002) ("In unusual circumstances and for good cause, . . . the failure to act timely will not bar consideration of objections [to a Rule 45 subpoena]."). The court finds good

(continued . . . )

6

The court STRIKES the David Cox Declaration and its exhibits.

**B.      Motion For Reconsideration**

*1.      Standard of Review*

In their Motion for Reconsideration, Petitioners rely on Federal Rules of Civil Procedure 59(e) and 60, and, to the "extent applicable," Local Rule of Practice for the United States District Court for the District of Hawaii ("LR") 60.1. ECF No. 35 at PageID.199.

A district court can reconsider final judgments or appealable interlocutory orders pursuant to Federal Rules of Civil Procedure 59(e) (governing motions to alter or amend judgments) and 60(b) (governing motions for relief from a final judgment). *See Balla v. Idaho Bd. of Corr.*, 869 F.2d 461, 466–67 (9th Cir. 1989); *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). Under LR 60.1, reconsideration is permitted only where there is "(a) Discovery of new material facts not previously available; (b) Intervening

---

cause to consider Cox's objections here—Cox is acting in good faith, and substantially complied with the subpoena except to the extent the subpoena sought the information of John Doe. *Id.* Indeed, the court specifically asked Cox to submit briefing and evidence on a "potentially important" and complex technical issue of whether Cox was an internet service provider or "mere conduit" under § 512(a) for purposes of the very subpoena at issue. *See* ECF No. 26 at PageID.136–37. The court also *directed* Cox to file an Opposition/Response to Petitioners' Motion for Reconsideration. *See* ECF No. 36. It also appears that Cox stands to incur new costs or obligations if the court were to adopt Petitioners' construction of § 512(d) (because it would then be subject to § 512(h) subpoenas seeking the identities of P2P infringers). Thus, the court rejects Petitioners' standing argument.

<div align="center">7</div>

<div align="center">ER-25</div>

change in law; [or] (c) Manifest error of law or fact." LR 60.1; *Sierra Club, Haw. Chapter v. City & Cnty. of Honolulu*, 486 F. Supp. 2d 1185, 1188 (D. Haw. 2007) ("Local Rule 60.1 explicitly mandates that reconsideration only be granted upon discovery of new material facts not previously available, the occurrence of an intervening change in law, or proof of manifest error of law or fact.").

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources" and "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters.*, 229 F.3d at 890 (citations, emphasis, and internal quotation marks omitted); *see Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008); *see also* LR60.1 ("Motions for reconsideration are disfavored."). A motion for reconsideration must "[f]irst, . . . demonstrate reasons why the court should reconsider its prior decision" and "[s]econd, . . . set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Yonemoto v. McDonald*, 2015 WL 12711230, at *1 (D. Haw. Apr. 23, 2015) (citations and internal quotation marks omitted).

Mere disagreement with a previous order is an insufficient basis for reconsideration, and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision.

8

*See Haw. Stevedores, Inc. v. HT & T Co.*, 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *White v. Sabatino*, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006) (internal quotation marks omitted) (quoting *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003)).

### 2.     *Background to § 512(d)*

To provide the necessary background to address Petitioners' arguments on reconsideration, the court first summarizes its conclusion in its Order to Quash that § 512(d) does not apply to ISPs in the context of P2P filesharing, and its reasons for rejecting Petitioners' argument otherwise. *See* ECF No. 31. The court then addresses each of Petitioners' arguments on reconsideration in turn.

The question initially posed to the court was whether Petitioners' § 512 subpoena on Cox was valid—specifically, whether Petitioners fulfilled the notice requirement of § 512(h). Section 512(h) requires that a request for subpoena contain "a copy of a notification described in subsection (c)(3)(A)."[4]  17

---

[4] 17 U.S.C. § 512(h) reads in relevant part (emphases added):

**(h) Subpoena to identify infringer.—**
    **(1) Request.**—A copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection.
    **(2) Contents of request.**—The request may be made by filing with the clerk—
                                                            (continued . . . )

9

ER-27

U.S.C. § 512(h)(2)(A).  Subsection (c)(3)(A) requires Petitioners' notification to contain an "[i]dentification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled . . . ."  17 U.S.C. § 512(c)(3)(A).[5]

_____

(A) *a copy of a notification described in subsection (c)(3)(A)*;

(B) a proposed subpoena; and

(C) a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title.

(3) **Contents of subpoena.**— The subpoena shall authorize and order the service provider receiving the notification and the subpoena to expeditiously disclose to the copyright owner or person authorized by the copyright owner information sufficient to identify the alleged infringer of the material described in the notification to the extent such information is available to the service provider.

(4) **Basis for granting subpoena.**—If the notification filed satisfies the provisions of subsection (c)(3)(A), the proposed subpoena is in proper form, and the accompanying declaration is properly executed, the clerk shall expeditiously issue and sign the proposed subpoena and return it to the requester for delivery to the service provider.

[5] Subsection (c)(3)(a) reads (emphasis added):

(3) **Elements of notification.**—

(A) To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:

(i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.

(iii) *Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.*

(iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

(continued . . . )

10

ER-28

Three of the safe harbors laid out in § 512 contain "notice and take down" provisions providing that, upon notice to the ISP, the ISP must remove either the infringing material (§ 512(b) and (c)) or the link to the infringing material (§ 512(d)).[6]  The safe harbor in § 512(a) does not contain a "notice and take down" provision.  Section 512(a) protects ISPs from liability for "transmitting, routing, or providing connections for" material through a system or

---

> **(v)** A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.
> **(vi)** A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

[6]  The relevant portions of 17 U.S.C. § 512(b), (c), and (d) read (emphases added):

**(b) System caching.**—
   **(1) Limitation on liability.**—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of *the intermediate and temporary storage of material on a system or network controlled or operated by or for the service provider* . . . .

**(c) Information residing on systems or networks at direction of users.**—
   **(1**) **In general.**—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of *the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider* . . . .

**(d) Information location tools.**—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the provider *referring or linking users to an online location containing infringing material or infringing activity, by using information location tools, including a directory, index, reference, pointer, or hypertext link* . . . .

11

network.[7]  17 U.S.C. § 512(a); *see also In re Charter Commc'ns, Inc. Subpoena Enf't Matter*, 393 F.3d 771, 775 (8th Cir. 2005) (observing that § 512(a) limits liability for ISPs that serve as a "mere conduit").  The safe harbor in § 512(a) does not require ISPs to take down material upon receiving notice from a copyright owner—if an ISP is a "mere conduit," nothing is stored, and there is nothing to take down.  *Cf. In re Charter*, 393 F.3d at 775.  Conversely, although their wording differs, each of the safe harbors in § 512(b), (c), and (d) requires that, when notified of alleged infringement by a copyright owner, an ISP take down the infringing material or the link to the infringing material.  *Compare* 17 U.S.C. § 512(a), *with* 17 U.S.C. § 512(b)(2)(E), 17 U.S.C. § 512(c)(1)(C), *and* 17 U.S.C.

---

[7]  17 U.S.C. § 512(a) reads (emphasis added):

   **(a) Transitory digital network communications.**—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the provider's *transmitting, routing, or providing connections for,* material through a system or network controlled or operated by or for the service provider, or by reason of the intermediate and transient storage of that material in the course of such transmitting, routing, or providing connections, if—
      **(1)** the transmission of the material was initiated by or at the direction of a person other than the service provider;
      **(2)** the transmission, routing, provision of connections, or storage is carried out through an automatic technical process without selection of the material by the service provider;
      **(3)** the service provider does not select the recipients of the material except as an automatic response to the request of another person;
      **(4)** no copy of the material made by the service provider in the course of such intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of connections; and
      **(5)** the material is transmitted through the system or network without modification of its content.

§ 512(d)(3).  The notice and take down provisions within § 512 (b), (c), and (d) all require that the notice from the copyright owner first meet the requirements of Subsection (c)(3)(A).  In contrast, the "mere conduit" safe harbor in § 512(a) does not contain any notice and take down provision referring to Subsection (c)(3)(A)— because there is no material to take down.

Petitioners conceded that Cox acts as a "conduit" for P2P infringement under the safe harbor in § 512(a), but argued that Cox also falls under § 512(d): it "refer[s] or link[s]" users to infringing material using "information location tool[s]."  ECF No.10-1 at PageID.68.  Petitioners contended that the IP addresses Cox assigns to users like John Doe are *both* "information location tool[s]" *and* "online location[s] containing infringing material."  ECF No. 24 at PageID.125–126.  Therefore, Petitioners argued that the list of IP addresses of alleged infringers that they attached to their request for subpoena was adequate notice to Cox of the "reference or link, to material or activity claimed to be infringing" that they wanted Cox to take down.  ECF No. 10-1 at PageID.69, 72.  Petitioners also claimed that it is possible for Cox to stop its users' infringing activity by null routing infringers' IP addresses.  ECF No. 10-1 at PageID.70 n.5, 73.

The court rejected those arguments, and held that Cox falls only under § 512(a), not § 512(d), and therefore, Petitioners' notice to Cox was invalid.  ECF

13

No. 31 at PageID.168.  Cox's assigning IP addresses to its subscribers does not constitute "refer[ring] or link[ing] users to an online location containing infringing material or infringing activity" under § 512(d), because an ISP assigning an IP address to a user does not actively "refer[] or link[]" that user to any other IP address.  *Id.* at PageID.167.  Cox assigns each of its users an IP address automatically—then, in the case of P2P filesharing, those users locate each other's IP addresses using a P2P filesharing system and share files.  *Id.*  It is the P2P system—not the ISP—that links internet users with files available to distribute with those seeking to download them.  *Id.*  Compared to a search engine, which accomplishes a referencing or linking function by actively furnishing links in response to a query, the ISP's assignment of IP addresses to individual internet users does not actively link or refer any internet user to the IP address of any other internet user.  *Id.* at PageID.168–169.  Thus, the court concluded that Cox does not fall under § 512(d), the list of IP addresses is not valid notice under § 512(c)(3)(A), and the Subpoena is invalid.

### 3.     *Arguments on Reconsideration*

#### a.     *Null routing*

On reconsideration, Petitioners have renewed their "null routing" argument from their Objections to the F&R.  ECF No. 35-1 at PageID.202–204.  The court has already considered and rejected this argument.  ECF No. 31 at

14

PageID.169–170.  Moreover, the argument is ancillary to the court's interpretation of § 512(d)—even if Petitioners were right, it would not change the determination set forth above.  Nonetheless, the court further explains its reasoning for rejecting this argument in detail below.

The Magistrate Judge—in support of his conclusion that Petitioners' list of IP addresses was inadequate notice under § 512(c)(3)(A)—reasoned that "a conduit ISP cannot remove or disable one user's access to infringing material resident on another user's computer because the ISP does not control the content on its subscribers' computer."  ECF No. 8 at PageID.51 (citing *Verizon*, 351 F.3d at 1236 ("The [copyright owner's] notification identifies absolutely no material [the ISP] could remove or access to which it could disable, which indicates to us that § 512(c)(3)(A) concerns means of infringement *other* than P2P file sharing.") (emphasis in F&R)).  To illustrate using the present parties, Cox would not be able to delete files containing Petitioners' copyrighted films, which, after being downloaded via P2P, are stored on the computers of individuals engaged in P2P filesharing.  In other words, because an ISP cannot remove, or disable access to, the material that is claimed to be infringing under subsections § 512(d)(3) and (c)(3)(A)—the files containing the copyrighted films—it is unlikely that the ISP's assignment of IP addresses falls under § 512(d).

15

Petitioners disagreed and appealed to this court, arguing that an ISP *can* disable access to "infringing material" through null routing, which is where an ISP "*effectively terminat[es] a network connection*, where it has received multiple notices of copyright infringement associated with an IP address."  ECF No. 10-1 at PageID.70 n.5 (quoting Ax Sharma, "VPN provider bans BitTorrent after getting sued by film studios," (March 12, 2022) https://www.bleepingcomputer.com/ news/security/vpn-provider-bans-bittorrent-aftergetting-sued-by-film-studios/ [https://perma.cc/R2KG-JY7Z]) (emphasis added)).  Petitioners argued that IP addresses are *in themselves* "references or links to infringing material or activity," and therefore ISPs actually *can* "disable access to" "references or links to infringing material or activity" by null routing IP addresses engaged in P2P filesharing.  *Id.* at 69–70.  Consequently, Petitioners argued, the "remove, or disable access to" language in § 512(d) poses no barrier to IP addresses being considered "information location tools" that "refer[] or link[]" users to infringing material under §512(d).  *Id.* at 70.  In other words, ISPs are able to "take down" links or references to infringing material through such methods as null routing and therefore they fit within § 512(d).

Although this court did not rest its interpretation of § 512(d) primarily on the "remove, or disable access to" language (as discussed above, it relied instead on whether IP addresses function as "information location tools" that

16

"refer[] or link[]" users to infringing activity in the context of P2P filesharing), it nonetheless rejected Petitioners' "null routing" argument.  It held that an ISP's ability to null route IP addresses does not make Petitioners' interpretation of the statute any more plausible.  Null routing a subscriber's IP address is not equivalent to "remov[ing], or disabl[ing] access to" links to infringing material or activity, because null routing a user's IP address has the outsize effect of terminating that address's connection to the network (thus terminating access to the internet for any user of that IP).  The DMCA distinguishes between terminating "access to infringing material," § 512(j)(1)(A)(i), and terminating a subscriber's account, § 512(j)(1)(A)(ii).  Thus, the court rejected Petitioners' argument on the basis that "effectively terminating a network connection" from a user's IP address goes beyond terminating "access to infringing material," and therefore, the DMCA does not authorize it.

On reconsideration, Petitioners argue that the Order to Quash was wrong to "argue" that "null routing terminates an account."  ECF No. 35-1 at PageID.204.  This mischaracterizes the Order to Quash.  As explained above, the court did not hold that null routing terminates an account, it held that null routing is a harsher penalty than the DMCA authorizes, given that the DMCA distinguishes between terminating access to infringing material and terminating a subscriber's account (which terminates access to the internet).  The court agreed

(and agrees) with Petitioners that null routing is not the same as terminating an account, but null routing nonetheless goes further than authorized by the DMCA.

To the extent Petitioners' arguments address a mischaracterization of the Order to Quash, they need not be considered. And to the extent Petitioners' arguments renew their challenge to the court's interpretation of § 512(d), they are improper—mere disagreement with a previous order is an insufficient basis for reconsideration, and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision.[8] *See Haw. Stevedores, Inc.*, 363 F. Supp. 2d at 1269.

---

[8] And, if Petitioners are arguing that the court should reconsider Petitioners' previous statement (which the court adopted) that null routing "effectively terminates a network connection," the court is not convinced. As Petitioners previously stated, null routing or blackhole routing occurs when an ISP redirects traffic destined for an IP address using "a network route that goes nowhere." ECF No. 10-1 at PageID.70 n.5. Petitioners may be correct that a user whose IP address is null routed may obtain a new IP address, or may be routed to a hard- or soft-walled garden prompting him to contact his ISP to resume service, ECF No. 35-1 at PageID.203—but his internet access was nonetheless "effectively terminate[d]" from the original IP address.

Petitioners also improperly seek to add evidence of another type of null routing, "destination null routing," that was not referenced in their previous briefing. Because this argument is based on the stricken D. Cox Declaration, the court cannot consider it. Even so, from Petitioners' description, "destination null routing" would not enable an ISP to meaningfully impede P2P infringement, and therefore would not support Petitioners' interpretation of § 512(d). According to Petitioners, through "destination null routing," a user "will still be able to use the Internet to access data, but other peers that are Cox accounts will not be able to link to the user's IP address to obtain copies of the pirated content." ECF No. 35-1 at PageID.203. But even if Cox subscribers could no longer torrent files from that IP address, subscribers to *every single other ISP* still could—so Cox would hardly have "remove[d], or disable[d] access to" the infringing links or material under § 512(d). In fact, Petitioners' original null routing argument also suffers from this flaw—if a user can easily obtain another IP address, then null routing is not a meaningful way for an ISP to "remove, or disable access to" infringing material (or links thereto), and is not a reason that ISPs should fall under § 512(d).

### b.      *Port blocking and filtering*

Petitioners also make a new argument that ISPs can use "other means such as port blocking and filtering" to block access to infringing material or activity.  ECF No. 35-1 at PageID.205–206.  Petitioners claim that this new argument is discussed "in the record," but in fact it was not made in their prior brief.[9]  Because Petitioners could have made this argument prior to the court's ruling, it is improper.  *Kona Enters.*, 229 F.3d at 890 (noting that reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation") (citations, emphasis, and internal quotation marks omitted).  In any event, even if it was proper on reconsideration, this argument would fail for the same reasons as Petitioners' "null routing" argument—whether ISPs can in fact "remove, or disable access to" infringing material or not, it would not change the court's interpretation of § 512(d).

---

[9]  As explained above, Petitioners' only reference to port blocking and filtering was an argument that Cox's alleged ability to scan traffic to Cox email addresses "to filter out spam and malicious email" and its "blocking of botnets, viruses, phishing sites, malware, and certain ports," was in conflict with Cox's declaration stating that "material is transmitted through [Cox's] system or network without modification of its content."  ECF No. 30 at PageID.146–147.  Petitioners did not tie this to § 512(d) in any way.

19

c.       *Notification language in § 512(c)(3)(A) and § 512(d)(3)*

Next, Petitioners argue that the court relied on the language of § 512(c)(3)(A) where it should have relied on the language of § 512(d)(3).[10]  ECF No. 35-1 at PageID.204 (quoting Order to Quash at PageID.166, 169).  Petitioners emphasize that § 512(d)(3), when it incorporates the notice requirement in § 512(c)(3)(A), discusses removal of "*the reference or link*, to material or activity claimed to be infringing" rather than simply removal of "the material that is claimed to be infringing."[11]  17 U.S.C. 512(d)(3) (emphasis added).  Thus, Petitioners argue, the list of IP addresses that Petitioners provided is not "infringing material" in itself, but is rather an identification of the "reference or link" to material that is the subject of infringing activity under § 512(d)(3).

---

[10]  Specifically, Petitioners take issue with the court "discuss[ing] whether the list of IP addresses [that they attached to their subpoena] 'could constitute adequate notice under Subsection (c)(3)(A) for infringement under § 512(d)' or whether Cox may remove or disable access to infringing [sic] in the context of § 512(d)."  ECF No. 35-1 at PageID.204 (quoting Order to Quash at PageID.166, 169).

[11]  17 U.S.C. § 512(d)(3) reads (emphasis added):

> **(3)** upon notification of claimed infringement as described in subsection (c)(3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity, except that, for purposes of this paragraph, the information described in subsection (c)(3)(A)(iii) shall be *identification of the reference or link, to material or activity claimed to be infringing*, that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate that reference or link.

20

To the extent Petitioners seek to clarify the court's summary of their argument on PageID.166 of the Order to Quash, the court recognizes that Petitioners intended to argue that the list of IP addresses was a list of "reference[s] or link[s]" to the infringing material, not the infringing material itself. But the court rejected this argument in the Order to Quash, holding that IP addresses *are not references or links under § 512(d)* and therefore Petitioners' notification was not adequate under § 512(h). Order to Quash at PageID.169. Disagreement with the court is not grounds for reconsideration. *See Haw. Stevedores,* 363 F. Supp. 2d at 1269.

> ### d.    *"Failure to qualify for the safe harbor does not equal liability"*
>
> Petitioners next take issue with the court's statement that
>
> > [i]f the assignment of IP addresses to P2P infringers falls under § 512(d), Cox would have no ability to avoid liability for monetary relief for P2P infringement in suits like Petitioners'[12] because although 'notice' by copyright holders would be possible, 'take down' by Cox would not.

ECF No. 31 at PageID.169–170. Petitioners misread this statement as meaning that "Cox would be liable [for copyright infringement] if it could not take down" infringing material, ECF No. 35-1 at PageID.206, which incorrectly paraphrases the Order to Quash. The Order to Quash reasoned that Petitioners' interpretation

---

[12]   The phrase, "suits like Petitioners" in the Order refers to copyright infringement suits seeking to hold individuals or corporations liable for P2P filesharing. ECF No. 31 at PageID.169.

21

of § 512(d) would result in ISPs (which, according to Petitioners, fall under both § 512(a) and § 512(d)) being unable to avoid liability for monetary relief via the safe harbor in § 512(d) upon notification of claimed infringement, because they would be unable to remove access to infringing material short of blocking access to the internet from a particular IP address, which is not authorized by the DMCA.

e.     *"The separate safe harbors of §§ 512(a) and (d) must be evaluated independently"*

Petitioners take issue with the Order to Quash's statement that "[i]f an ISP assigning an IP address is both 'providing connections for' infringement under (a) and 'referring or linking' to infringing material under (d)—as Petitioners contend—Congress would not have created two separate safe harbors."  ECF No. 31 at PageID.168.  Petitioners take this to hold that an ISP cannot qualify for two safe harbors, but they misunderstand.  Rather, following the interpretive canon that courts "presume that Congress did not intend any part of [a] statute to be superfluous, void, or insignificant," the court reasoned that it was unlikely that Congress wanted "providing connections for" infringement under § 512(a) to mean the same thing as "referring or linking" under § 512(d).  ECF No. 31 at PageID.168 (quoting *GCIU-Emp. Ret. Fund v. MNG Enters., Inc.*, 51 F.4th 1092, 1097 (9th Cir. 2022)).  Thus, it was unlikely that Cox's assignment of IP addresses constituted "referring or linking" to infringing activity because this would render § 512(a) "superfluous, void, or insignificant."  *Id.*

22

ER-40

   *f.*  *"The language in the information tools subsection is unambiguous"*

    Petitioners argue that because "the meaning of referring or linking is clear," the court's references to other precedents or to legislative history in order to interpret the terms were "unnecessary and improper."  ECF No. 35-1 at PageID.207–208.[13]  Because "a term is ambiguous if it is subject to reasonable alternative interpretations," Petitioners are arguing—again—that their interpretation of § 512(d) is reasonable and the court's is not.  *Vizcaino v. Microsoft Corp.*, 97 F.3d 1187, 1194 (9th Cir. 1996) (internal quotation marks omitted)).  This is improper on reconsideration, and moreover, Petitioners have not cited any precedent or authority to suggest that their interpretation is the only reasonable one.

---

   [13]  Here, Petitioners cite two cases that purportedly contradict the court's determination that "referring or linking" denotes "active assistance to users."  The first of these cases does not contradict the court's interpretation—it is aligned.  In *Totally Her Media, LLC v. BWP Media USA, Inc.*, 2015 WL 12659912, at *9 (C.D. Cal. Mar. 24, 2015), the "information location tools" in question were user-generated links that were hosted on Plaintiff's web-based social discussion forum such that Plaintiff's forum *actively* "referr[ed] or link[ed]" anyone who accessed it to infringing images.  The second case, *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007), was miscited by Petitioners.  The Ninth Circuit held that defendant CCBill *did not* fall under § 512(d), which means that, contrary to Petitioners' statement, the court *did not* consider the hyperlink that defendant generated to be an "information location tool."  *Id.* at 1116–17.  Later, the Ninth Circuit assumed without holding that the hyperlink was an information location tool in order to make a different point—which is the origin of Petitioners' misleading quote.  *Id.* ("*Even if* the hyperlink provided by CCBill could be viewed as an information location tool . . . .") (emphasis added).

**C.      Motion to Stay**

*1.      Standard of Review*

When a court issues final judgment granting an injunction and an opposing party appeals that judgment, the court may stay the injunction on terms that secure the opposing party's rights.  *See* Fed. R. Civ. P. 62(d).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."  *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 (9th Cir. 2020) (internal quotation marks omitted) (quoting *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)).  Courts consider the following factors when deciding whether to issue a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (citing *Nken*, 556 U.S. at 426).[14]  "The first two factors . . . are the most critical."  *Id.* (quoting *Nken*, 556 U.S. at 434) (internal quotation marks omitted).  "We consider the last two factors if the first two factors are satisfied."  *Id*.

---

[14]  Both parties agree that the court applies the *Nken* factors to the Emergency Motion to Stay.  *See* ECF No. 32-1 at PageID.179; ECF No. 37 at PageID.237–245.

### 2.    *Clarification of Relief*

Petitioners' Motion to Stay is DENIED.  Petitioners will not be irreparably harmed by the court's injunctive relief, in part because Petitioners have construed the relief to have broader applicability than intended.  *See Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) ("[I]f the petitioner has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors.") (summarizing *Nken*, 556 U.S. at 432).  The court thus clarifies the intended scope of the relief granted by the Order to Quash.

Petitioners' first argument for irreparable harm is that Petitioners will never be able to obtain the information they received from the Subpoena again, because ISPs typically destroy these types of records after six months.  ECF No. 32 at PageID.180; ECF No. 32-2 at PageID.185.  Cox, however, has committed to preserve the information through the pendency of Petitioners' appeal, and states that it would submit to a court order to that effect.  ECF No. 37 at PageID.243.  Accordingly, the court orders Cox to maintain the information.  This is sufficient to allay Petitioners' first concern.

Petitioners' second argument for irreparable harm is premised on a broader construction of the court's injunctive relief than was intended.  Apparently before the F&R issued, Petitioners contacted the individuals Cox identified to

them, and have negotiated settlement agreements with some of these individuals in exchange for information on the circumstances behind the infringement, i.e., what websites or software applications they used to obtain the pirated copies of the film. ECF No. 34 at PageID.195. Petitioners construe the Order to Quash to require them to destroy settlement agreements negotiated between them and various Cox subscribers, which will result in them not being able to comply with their contractual obligations in the settlement agreements. ECF No. 40 at PageID.301.

But the "information derived from the Subpoena" that Petitioners must "return and/or destroy" and "maintain no further record of" is limited to the actual information that Petitioners received from Cox—likely a physical or electronic file containing the names and addresses of individuals using the IP addresses that Petitioners identified. The requirement to "return and/or destroy" and "make no further record of" the information derived from the Subpoena does not extend to "secondary" information that Petitioners received through correspondence with the subscribers that were identified on the list received from Cox, or agreements concluded with those subscribers. Though this "secondary" information need not be "return[ed] and/or destroy[ed]," it does fall under the final clause of the Order to Quash, which requires Petitioners to "*make no further use of*

26

*the subscriber data* obtained from the Subpoena."[15]   Therefore, Petitioners may maintain records of, for example, correspondence and binding settlement agreements with subscribers, but may not continue to seek settlement with any subscriber who has not yet concluded an agreement, and may not use information received from subscribers as evidence in litigation, e.g., against piracy websites. *See* ECF No. 32-1 at PageID.181.

Because—given the clarification above and Cox's commitment to preserve the information—Petitioners will not suffer irreparable harm, Petitioners' Emergency Motion to Stay is DENIED.

///

///

///

///

///

///

///

---

[15] The court recognizes that Petitioners cannot "unlearn" the identities of individuals they have contracted with, making the destruction of all documents in Petitioners' possession related to any of the individuals identified of limited use in remedying the harm caused by the improperly issued subpoena.  The injunction to "make no further use of the subscriber data" is tailored to remedy the harm while recognizing that Petitioners cannot undo actions they already took in good faith.

27

ER-45

## IV.   CONCLUSION

Based on the foregoing, the court GRANTS Cox's Motion to Strike, ECF No. 39, DENIES Petitioners' Motion for Reconsideration, ECF No. 35, and DENIES Petitioners' Motion to Stay, ECF No. 32.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 26, 2024.



/s/ J. Michael Seabright

J. Michael Seabright
United States District Judge

*In re: Subpoena of Internet Subscribers of Cox Communications, LLC and CoxCom, LLC*, Civ. No. 23-00426 JMS-WRP, Order (1) Granting Cox's Motion to Strike, ECF No. 39; (2) Denying Petitioners' Motion for Reconsideration, ECF No. 35; and (3) Clarifying Relief and Denying Petitioners' Motion to Stay, ECF No. 32

# Exhibit "5"

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. MC 23-00263 JMS-WRP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Cox Communications, LLC and CoxCom LLC

on *(date)* 4/17/2023 .

☒ I served the subpoena by delivering a copy to the named person as follows: Cox Communications, LLC and CoxCom LLC

C/O CORPORATION SERVICE CO. 251 LITTLE FALLS DR. WILMINGTON, DE 19808. ACCEPTED BY: LYNANNE GARES

(Authorized person at the agent at 12:15p.m.)     on *(date)* 4/17/2023 ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ .

My fees are $ for travel and $ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: 4/17/2023

_____
*Server's signature*

GILBERT DEL VALLE      PROCESS SERVER
*Printed name and title*
BRANDYWINE PROCESS SERVERS, LTD.
PO BOX 1360
WILMINGTON, DE 19899
302-475-2600
*Server's address*

Additional information regarding attempted service, etc.:

ALSO SERVED: EXHIBIT 1

# Exhibit "2"

Case: 24-3978, 09/10/2024, DktEntry: 14.1, Page 50 of 257

Case 1:23-cv-00426-JMS-WRP    Document 42-2    Filed 03/08/24    Page 2 of 11   PageID.325

# DEADLINE

TIP US

HOME / FILM / NEWS

# 'Fall' Sequel In The Works After Vertigo-Inducing Thriller Becomes Surprise Netflix Hit

By Jake Kanter

March 17, 2023 10:30am



**Grace Caroline Currey, left, and Virginia Gardner in 'Fall'**
Tea Shop Productions

Listen to this article

**EXCLUSIVE**: Acrophobia sufferers look away now, the makers of vertigo thriller *Fall* are plotting a sequel after the film became an unexpected hit on Netflix internationally.

British producer Tea Shop Productions and director Scott Mann are discussing ideas for a second movie, which will look to unsettle audiences with another terrifying tale set at a great height.

*Fall* premiered last August and stars Grace Caroline Currey (*Shazam! Fury of the Gods*) and Virginia Gardner (*Gaslit*) as friends who scale and get stuck up a 2,000-foot radio tower in the desert.

ER-50

# DEADLINE

<span>TIP US</span>



**Justin Willman Unveils New Netflix Series 'The Magic Prank Show' Set For April Launch**



**'Avatar: The Last Airbender' Renewed For Two Seasons At Netflix; Live-Action Series Will Conclude With Season 3**

The indie thriller grossed close to $22M after being made on a $5M budget and has enjoyed word-of-mouth success on streaming services including Netflix, where it has scored top-10 rankings in four territories. It is available on Starz in the U.S.

*Fall* has been Netflix's second most-watched movie in the UK for two consecutive weeks, with only Idris Elba's *Luther: The Fallen Sun* performing better.

The film debuted on Netflix in the UK in January and Deadline understands it has performed impressively for the streaming service, which has not dedicated marketing resources to the title.

Tea Shop cofounder James Harris said *Fall*'s simple central conceit and carefully curated artwork and trailers have helped get audiences talking.

3/7/24, 12:39 PM
'Fall' On Netflix: How Film Was Made & News On Sequel

# DEADLINE

TIP US



"We were pleasantly surprised by how everybody has such a visceral reaction to it," he said. "It is one of those movies where word of mouth really helps."

Mark Lane, Tea Shop's other co-founder, added: "It's an easy thing for people to pick up on a streamer. You can see the concept in the poster image and we're finding that if people try it, they are getting hooked instantly."

Being in control of the marketing materials was important, Harris said. "You can make a good movie but unless you present companies with a way to market it, a lot of the time they mess it up. It was quite important for us to say, 'Shove it,' to people and control how to do the marketing."

The pair have enjoyed success with a similar concept, *47 Meters Down*, which features two women getting stuck at the bottom of the ocean in a shark cage.

Case: 24-3978, 09/10/2024, DktEntry: 14.1, Page 53 of 257
Case 1:23-cv-00426-JMS-WRP Document 42-2 Filed 03/08/24 Page 5 of 11 PageID.328

# DEADLINE

TIP US

They may look to involve Currey in the second film, but no decisions have been made. Jeffrey Dean Morgan (*The Walking Dead)* played Currey's father in the first film. The plan is to "get moving" on the project later this year.

*Fall* was shot in June 2020 with the backing of Capstone Group after a number of studios passed on the picture. Lionsgate later picked up the movie for U.S. theatrical release.

It was shot outside Palmdale, California, with Tea Shop erecting a 20 ft tower on a 100 ft hill to provide a false perspective while the rest was achieved in post-production.

Despite being one of the first films to get rolling during the pandemic, Covid-19 was not always the biggest problem. Filming was shut down for a day after a rare thunderstorm proved to be the catalyst for an ant infestation on the tower.

*Fall* saved around half a million dollars in reshoots by using deep fake technology to dub out all of Currey and Gardner's frantic "f*cks" and make it suitable for PG-13 audiences. Mann's company Flawless provided the artificial intelligence technology for the workaround.

"We had to ditch the best part of 100 shots," Harris said. "It can really save movies from spending millions of dollars on very small reshoots. You can really change the narrative in post in a more affordable way."

Subscribe to **Deadline Breaking News Alerts** and keep your inbox happy.

**READ MORE ABOUT:**

FALL / GRACE CAROLINE CURREY / INTERVIEWS / JEFFREY DEAN MORGAN / NETFLIX / SCOTT MANN / TEA SHOP PRODUCTIONS / VIRGINIA GARDNER

💬 **10 Comments**

💬 **10 Comments**

**Bmovies** *on March 21, 2023 7:27 pm*

I enjoyed this totally cheesy B movie. Not well made but maybe that's why it warrants a sequel? Or just leave it as is – a fun terrible movie. But get drunk and watch with friends the silly/illogical story line might be worth it again!

# DEADLINE

TIP US

**Ron** on March 19, 2023 8:41 am

This isn't even on netflix

---

**Carlos** *on March 19, 2023 2:58 am*

I didn't expect much when I sat down too watch it but found it to be a nail biter

---

**TDK1** *on March 18, 2023 8:57 am*

Great movie. Can wait for next Fall.

---

**Anonymous** *on March 17, 2023 2:41 pm*

Lionsgate really dropped the ball not pushing more marketing behind this. It could have been last summers sleeper.

---

Older Comments →

# Trending on Deadline

**1 /** Debra Byrd Dies: 'American Idol' & 'The Voice' Vocal Coach Was 72



**2 /** Ben Affleck, Jon Bernthal, J.K. Simmons & Cynthia Addai-Robinson Returning For 'The Accountant 2' As Artists Equity Sets Up Sequel At Amazon MGM



**3 /** Jim Parsons & Mayim Bialik To Reprise 'Big Bang Theory' Roles In 'Young Sheldon' Finale



Case: 24-3978, 09/10/2024, DktEntry: 14.1, Page 55 of 257

3/7/24, 12:39 PM                    'Fall' On Netflix: How Film Was Made & News On Sequel
Case 1:23-cv-00426-JMS-WRP   Document 42-2   Filed 03/08/24   Page 7 of 11   PageID.330

# DEADLINE



TIP US

Contestant Over 'Transphobia'; Rowling Says She Has Harassment
Claim Against Presenter



5 / Lela Rochon, Yvette Nicole Brown, Orlando Jones, Pooch Hall
Among 16 Cast In Carl Weber's 'The Family Business' New Orleans-
Set Spinoff



6 / Steve Lawrence Dies: Grammy- And Emmy-Winning Singer,
Partner Of Eydie Gormé Was 88



7 / Pete Hammond's Final Oscar Predictions: 'Oppenheimer' On Line
For A Big Bang On The Big Night; 'The Holdovers', 'Poor Things' &
Others Also Will Get Some Love



8 / Fox Nation Nabs Rights To 'The Chosen' & 'Passion Of The Christ'
For Easter



9 / 'The Real Housewives Of New Jersey' Season 14 Trailer Drops As
Bravo Sets Premiere Date For Teresa Giudice's Return



10 / 'SNL 1975' Origin Movie Finds Its Jim Henson, Michael
O'Donoghue & Billy Crystal

# DEADLINE

## Signup for Breaking News Alerts & Newsletters

Your Email     email@example.com

SIGN UP

ER-55

Case: 24-3978, 09/10/2024, DktEntry: 14.1, Page 56 of 257
Case 1:23-cv-00426-JMS-WRP   Document 42-2   Filed 03/08/24   Page 8 of 11  PageID.331

# DEADLINE

<span style="float:right">TIP US</span>

## Latest Film News



**Matt Bomer Joins Keanu Reeves, Jonah Hill And Cameron Diaz In Apple's 'Outcome'**

**'Oppenheimer's David Krumholtz To Star In Dark Comedy 'Forelock'**

**Breaking Baz: Tributes For International Industry Titan Jenne Casarotto From Kathleen Kennedy, Donna Langley, Barbara Broccoli & Many More**

**20th Wins Bidding War For Imagine's Survival Thriller 'Whalefall'; Brian Duffield To Co-Write & Direct**

## Newswire



**Deadline**

About Us

Advertise

**Legal**

Terms of Use

Case: 24-3978, 09/10/2024, DktEntry: 14.1, Page 57 of 257

Case 1:23-cv-00426-JMS-WRP   Document 42-2   Filed 03/08/24   Page 9 of 11  PageID.332

# DEADLINE

TIP US

Accessibility

AdChoices

California Privacy Rights

Your Privacy Choices

EU Privacy Preferences

## Sitemap

TV

Film

Awards

Box Office

Business

International

## Connect with Us

*Get our latest storiesin the feed of your favorite networks*



## Have a Tip?

*We want to hear from you! Send us a tip using our annonymous form.*

Case: 24-3978, 09/10/2024, DktEntry: 14.1, Page 58 of 257
Case 1:23-cv-00426-JMS-WRP   Document 42-2   Filed 03/08/24   Page 10 of 11   PageID.333

# DEADLINE

TIP US

## Stay in the Know

*Sign up for our breaking news alerts*

**Your Email**     email@example.com     ❯

By providing your information, you agree to our **Terms of Use** and our **Privacy Policy**. We use vendors that may also process your information to help provide our services. This site is protected by reCAPTCHA Enterprise and the Google **Privacy Policy** and **Terms of Service** apply.



## OUR SITES                                                                ⌄

VARIETY

DEADLINE

ROLLING STONE

WWD

HOLLYWOODLIFE

GOLD DERBY

SPY

ROBB REPORT

FOOTWEAR NEWS

BGR

INDIEWIRE

SOURCING JOURNAL

TVLINE

FAIRCHILD MEDIA

SHE KNOWS

3/7/24, 12:39 PM
'Fall' On Netflix: How Film Was Made & News On Sequel

Case: 24-3978, 09/10/2024, DktEntry: 14.1, Page 59 of 257
Case 1:23-cv-00426-JMS-WRP   Document 42-2   Filed 03/08/24   Page 11 of 11   PageID.334

# DEADLINE

TIP US

CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:   (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:        kculpepper@culpepperip.com

Attorney for Petitioners
Voltage Holdings, LLC
Millennium Funding, Inc., and
Capstone Studios Corp.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re Subpoena<br><br>Internet subscribers of Cox Communications, LLC and CoxCom LLC<br><br>_____ | **Case No.:** 1:23-cv-426-JMS-WRP<br>(Copyright)<br><br>PETITIONERS' MEMORANDUM IN OPPOSITION TO COX'S MOTION TO STRIKE [DOC. #39]; EXHIBITS "1"-"5"; CERTIFICATE OF SERVICE |

**PETITIONERS' MEMORANDUM IN OPPOSITION TO COX'S MOTION
TO STRIKE [DOC. #39]**

20-023Ga

Pursuant to L.R. 7.2, Petitioners Voltage Holdings, LLC, Millennium Funding, Inc., and Capstone Studios Corp ("Petitioners") submit their Memorandum in Opposition to Cox's Motion to Strike [Doc. #39]. Cox's motion to strike is nothing more than a thinly disguised sur-reply to ensure that it gets the last word.

## I.    INTRODUCTION

Petitioners are producers and/or controlling parties of popular movies *After Ever Happy*, *Fall,* and *The Protégé*. *After Ever Happy* is the fourth installment of Voltage's popular *After* franchise romantic drama film series. *See* Ex. "1". *Fall* is a thriller starring Caroline Currey and Virginia Gardner as two women who climb to the top of a 2,000-foot abandoned radio tower and become stranded at the top. *See* Ex. "2". *The Protégé* is an action thriller featuring A-list actors such as Samuel Jackson and Michael Keaton, among others. *See* Exs. "3"-"4". Financial resources, time and effort were invested in making and marketing these motion pictures based upon the expectation that they would have an opportunity to get a return on their investment from rentals and sales.

Cox is a provider of Internet service to residential and business subscribers. Massive piracy of Petitioners' motion pictures by Internet users such as Cox's hinders Petitioners' opportunity to get a return on their investments.

On April 13, 2023, Petitioners filed their application for a subpoena pursuant to 17 U.S.C. §512(h). *See* Doc. #1. Petitioners acknowledged in their application

2

20-023Ga

the decisions of *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) and *In re Charter Communications, Inc.*, 393 F.3d 771, 776-77 (8th Cir. 2005) but argued that the issue had not yet been considered in this circuit.[1]  The court issued the subpoena that same day.  *See* Doc. #3.

On April 17, 2023, Petitioners served the subpoena on Cox's Delaware registered agent.  *See* Ex. "5".

On May 25, 2023, John Doe made a single page objection "…objecting to having my personal information released."[2]  Doc. #4.

On May 26, 2023, Magistrate Judge Porter issued an Order construing the objection as a motion to quash and ordering Petitioners to respond.  *See* Doc. #5.

On May 29, 2023, Petitioners filed an Opposition correctly pointing out that Doe failed to argue a privacy interest, burden or any other recognized legal basis for quashing the subpoena.  *See* Doc. #6.  Petitioners served a copy of their Opposition on Cox.  *See* Doc. #7, p.2.  Cox did not file any response.  Nor did Doe file a reply.

On June 27, 2023, Cox responded to the subpoena by providing all subscriber identifications except John Doe's without any objections or reservations.

On Aug. 31, 2023, Magistrate Judge Porter issued a Findings and Recommendation ("F&R") concluding that (i) Cox is a mere conduit service

_____

1 The application mistakenly stated "Tenth" instead of Ninth Circuit.
2 The objection did not comply with LR 5.2 for filing sealed documents.

<p style="text-align:center">3</p>

provider; and (ii) the §512(h) subpoena is invalid for being based upon a §512(c)(3)(A) notification to the mere conduit provider Cox. *See* Doc. #8.

On Sept. 11, 2023, Petitioners filed their objections to the F&R. *See* Doc. #10.

On Sept. 26, 2023, Cox filed a Notice of intent to Respond to Petitioners' objections that identified itself as "Non-Parties". *See* Doc. #13. On Sept. 28, 2024, Cox filed its Response in which it stated, "Cox writes to correct the record in certain respects." Doc. #16,

On Oct. 9, 2023, Petitioners filed a Reply to Cox's response. *See* Doc. #24

On Nov. 8, 2023, the Court issued an Order requesting that Cox "file with the court appropriate evidentiary proof that it is—or is not—an internet service provider under 17 U.S.C. § 512(a)". Doc. #26, p.3.

On Nov. 29, 2023, Cox submitted a declaration from its Chief Compliance and Privacy Officer Amber Hall. *See* Doc. #29.

On Dec. 5, 2023, Petitioners filed their response to Ms. Hall's declaration. *See* Doc. #30.

On Jan. 30, 2024, the Court issued the Order quashing the subpoena and ordering Petitioners to *inter alia* destroy any information derived from the subpoena. *See* Doc. #31.

On Jan. 31, 2024, the Petitioners filed an urgent motion for a stay of the Order pending appeal. *See* Doc. #32.

4

20-023Ga

On Feb. 1, 2024, the Court issued an order suspending the order pending ruling on the motion for a stay.  *See* Doc. #33.

On Feb. 5, 2024, Petitioners withdrew their request for the information for John Doe by letter to Cox.  *See* Doc. #35-3.

On Feb. 12, 2024, Petitioners filed their motion for reconsideration of the order invalidating the subpoena. *See* Doc. #35.

On Feb. 15, 2024, Cox filed an opposition to the stay request. *See* Doc. #37.

On Feb. 28, 2024, Cox filed an opposition to Petitioners' motion for reconsideration and a motion to strike.  *See* Docs. ##38-39.

On Feb. 28, 2024, Petitioners filed their reply to Cox's opposition to their motion for reconsideration.  *See* Doc. #40.

## II.   LEGAL STANDARD

Courts have noted that motions to strike are generally "disfavored," *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 965 (9th Cir. 2014), and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *U.S. ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1038 (C.D. Cal. 2012).

"A movant for leave to intervene under Rule 24(a)(2) must have Article III standing to participate in proceedings before the district court." *City of Cleveland v. Nuclear Regulatory Comm'n*, 305 U.S. App. D.C. 162, 17 F.3d 1515, 1517 (1994).

5

20-023Ga

Article III standing requires three elements: (1) the party must have suffered in injury in fact that is: (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood rather than speculation that the injury will be addressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992).

## III.   ARGUMENT

### A.   Petitioners' inclusion of a declaration in support of their motion was appropriate.

Cox accuses Petitioners of "using the Declaration to attempt to improperly supplement the record". Mot. at PageID.284.  Firstly, although in the context of a Rule 12(f) motion, the Ninth Circuit has rejected as having "no merit" the argument that deletion is necessary to keep a party from improperly augmenting the record for appeal. *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Secondly, the argument is false.  Petitioners have respectfully asserted that the Court made a mistake by considering terminating a connection by null routing the same as terminating service.  To support this assertion, Petitioners included the declaration of David Cox ("D. Cox") to explain the technical features of null routing and, importantly, how null routing does not terminate Internet service.  Accordingly, Petitioners are not clarifying a previous expert declaration as in *Alvarez v. NBTY,*

6

20-023Ga

*Inc.*, No. 17-cv-00567-BAS-BGS, 2020 U.S. Dist. LEXIS 983, at *3-4 (S.D. Cal. Jan. 3, 2020).  Notably, Cox does not even try to dispute declarant D. Cox's points that null routing does not terminate Internet service and that Cox itself null routes certain customers when it places them in a walled garden.  Cox does not like the message, so it seeks to shoot the messenger by filing this motion to strike.

Contrary to Cox's assertion, Courts in this circuit routinely consider declarations submitted in support of motions for reconsideration.  *See In re Plum Baby Food Litig.*, No. 4:21-cv-00913-YGR, 2023 WL 3493319, 2023 U.S. Dist. LEXIS 87696, at *6 (N.D. Cal. May 3, 2023) (Denying  motion to strike declaration submitted in support of its motion for reconsideration because the opinions in the declaration "…provide general background relevant to the arguments presented...");  *Savetsky v. Pre-Paid Legal Servs.,* No. 14-03514 SC, 2015 WL 1925624, 2015 U.S. Dist. LEXIS 55595, at *1-3 (N.D. Cal. Apr. 28, 2015) (denying Plaintiff's motion to strike declaration Defendant submitted in support of motion for reconsideration).  Likewise, the Court should consider the declaration of D. Cox.

Cox argues that *Aoki v. MobileHelp, LLC*, 2022 WL 972419, 2022 U.S. Dist. LEXIS 60474 (D. Haw. Mar. 31, 2022) supports striking a declaration in support of a motion for reconsideration.  But in *Aoki* the Court struck exhibits Plaintiff attached to a *reply brief* that had no bearing on the issued raised in the opening motion in violation of L.R. 7.2.  Here, Petitioners included the declaration in their *opening*

7

20-023Ga

*brief.* Thus, unlike in *Aoki*, Cox had an opportunity to submit its own declaration to contradict the declaration of D. Cox.

Cox also relies on *SmartGene, Inc. v. Advanced Biological Labs.*, SA, 915 F. Supp. 2d 69, 72 (D.D.C. 2013) to argue that Petitioners cannot submit "supplemental material". Mot., PageID.284. Unlike the extreme facts of *SmartGene* where the movant submitted over 1500 pages of declarations and exhibits, Petitioners only submitted one declaration with two exhibits that combine for 17 pages. Notably, the same Court later distinguished *SmartGene* as not involving "correction of a factual assertion" in *Ecological Rights Found. v. United States EPA*, 541 F. Supp. 3d 34, 56 n.10 (D.D.C. 2021) in denying a motion to strike a declaration submitted in support of a motion for reconsideration. Likewise, here Petitioners seek to correct a factual assertion in this Court's order concerning null routing which they respectfully assert is a mistake. But nonetheless, this Court is not bound by the decision of *SmartGene* from a different district court in a different circuit, particularly one that same court declined to follow.

Cox also cites *Haw. Stevedores, Inc. v. HT&T Co.*, 363 F. Supp. 2d 1253, 1270 (D. Haw. 2005) and *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) where movants first raised issues of admiralty jurisdiction and a North Carolina choice of law provision in motions for reconsideration, respectively.

20-023Ga

Neither of these cases involved a motion to strike. Cox's arguments here appear to be a mere continuation of its opposition to Petitioners' motion for reconsideration.

Cox also argues that the exhibits to Mr. D. Cox's declaration should not be considered because they could have been submitted with Petitioners' initial objection. *See* Opp., PageID285. Both exhibits are necessary to illustrate what Petitioners respectfully assert are technical mistakes in the order that could not have been anticipated. D. Cox points out that BitTorrent traffic can be mitigated by blocking the specific listening ports specified in the BitTorrent protocol. *See* Doc. #32, ¶14. Exhibit "A" to his declaration is a copy of the actual BitTorrent protocol where certain ports are specified. D. Cox also points out that null routing an IP address will mitigate BitTorrent traffic because the trackers will broadcast inaccurate information. *See* Doc. #32., ¶19. Exhibit "A" to his declaration illustrates that the BitTorrent protocol states that the IP address is a parameter stating where the peers are located. Exhibit "B" to his declaration illustrates the different tiers of network providers of Internet service. D. Cox points out that because Cox is a Tier 2 provider, it can null route an IP address. In comparison, a Tier 1 network provider or IXP cannot null route an IP address without wreaking havoc on numerous downstream points. *See* Doc. #32, ¶¶26-31. Notably, Cox does not question the accuracy of these exhibits or D. Cox's assertions concerning null routing, filtering or port blocking. Both exhibits show the proper background of D. Cox's statements in his

9

20-023Ga

declaration and support the only logical conclusion – that his statements are accurate. If Petitioners had not included a declaration in support of their arguments, Cox would undoubtedly argue that Petitioners' argument was merely unsupported attorney arguments.

Cox also argues that the declaration of D. Cox should be stricken because it discussed port blocking or filtering. *See* Mot., PageID283. However, Cox concedes that Petitioners raised the issue of port blocking and filtering, albeit in the context of content modification. *See id.* Accordingly, because these issues are on the record, it was appropriate for Petitioners to point out that these are alternative means that can be used to mitigate unlawful BitTorrent traffic.

**B. Cox does not have standing to file motions or oppositions in this matter.**

Petitioners have repeatedly argued that Cox lacks standing because it is not a party to this proceeding. *See* Doc. #24, PageID.131 (Arguing Cox lacks standing to contest the subpoena or respond), Doc. #32-3, PageID.189 (qualifying meet and confer request as "To the extent Cox is a party…"), and Doc. #40, PageID.298 (objecting to Cox's filing without first seeking leave to intervene). It is undisputed that Cox never filed any objections to the subpoena or a motion to quash. Moreover, Cox did not even argue in its Opposition that it had any interest or would suffer a cognizable injury if the Court denied Petitioners' motion for a stay. *See* Doc. #37, PageID.244. Cox cannot even satisfy the standard to be an intervenor because it has

10

20-023Ga

not suffered any injury sufficient for Article III standing. Particularly, because Petitioners withdrew their request for John Doe's identification information, Cox has already fully responded to the subpoena. Thus, Cox has no cognizable injury sufficient for standing to file any motions in these proceedings, let alone a motion to strike. At best, if Cox wishes for the Court to consider its views on the applicability of 17 U.S.C. § § 512(a)-(d), Cox can move for leave to file an amicus brief.

## IV.   CONCLUSION

The declaration of David Cox Petitioners submitted in support of their motion for reconsideration merely points out what Petitioners assert are technical errors in the Court's order. Cox, who does not even have standing to object, had the opportunity to submit its own competing declaration when it (inappropriately) filed its own opposition to the motion for reconsideration. Accordingly, Cox's motion to strike should be denied.

DATED: Kailua-Kona, Hawaii, Mar. 8, 2024.

CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper
Attorney for Petitioners

20-023Ga

11

**DECLARATION OF** ███████████████████████

I, ████████████████████, do hereby declare, testify, and state as follows:

1.      I am a living individual above the age of 18 years old.

2.      I have personal knowledge of the facts stated below and, if called to testify, I could and would do so competently.

3.      I have read the Settlement and Release Agreement and make this Declaration in support of said Agreement.

4.      My roommate informed me that he found the Work (as defined in the Settlement and Release Statement) on the website "movierulz" at the uniform resource locator (url) https://ww28.watchmovierulz.to/.

5.      My roommate further informed me that upon being downloaded, the file appeared in the downloads folder on his computer.

6.      My roommate further informed me that the Work was deleted a few months before I received the legal notice.

7.      Finally, my roommate informed me that he used the application utorrent web.

I declare under the penalty of perjury that everything I have stated in this document is true and correct.

Dated: 09|26|2023

ER-71

ER-72

CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:   (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:      kculpepper@culpepperip.com

Attorney for Petitioners
Voltage Holdings, LLC
Millennium Funding, Inc., and
Capstone Studios Corp.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re Subpoena ) | **Case No.:** 1:23-cv-426-JMS-WRP |
| ) | (Copyright) |
| Internet subscribers of Cox ) | |
| Communications, LLC and CoxCom ) | PETITIONERS' REPLY IN |
| LLC ) | SUPPORT OF URGENT MOTION |
| ) | FOR STAY PENDING APPEAL; |
| ) | DECLARATION OF [REDACTED]; |
| ) | CERTIFICATE OF SERVICE |
| ) | |
| _____ ) | |

**PETITIONERS' REPLY IN SUPPORT OF THEIR URGENT MOTION
FOR STAY PENDING APPEAL**

Pursuant to L.R. 7.2, Petitioners file their Reply to the Opposition [Doc. #37]

of Cox.

**I. Petitioners object to Cox's filings without first obtaining an order
granting it leave to intervene.**

20-023Ga

Petitioners object to Cox's submission of an opposition to their motion for a stay because Cox is not a party to these proceedings.  Nor has Cox filed a motion to intervene.  Cox served a response to the subpoena without any objections or reservations.  A nonparty has the earlier of the time specified for compliance or 14 days after the subpoena is served to make an objection. *See* Fed. R. Civ. P. 45(d)(2)(B); *see also In re DMCA § 512(h) Subpoena to Twitter, Inc.*, No. 20-mc-80214-DMR, 2021 U.S. Dist. LEXIS 247680, at *6 (N.D. Cal. Dec. 29, 2021) (applying Rule 45 to a motion to quash a DMCA subpoena). Generally, when a party or nonparty fails to timely object to "discovery efforts, the objections are deemed waived . . . even [if] a party had an objection to make." *Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 668 (N.D. Fla. 2010); *see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (quoting *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) and holding that a party waived objection based on foreign secrecy laws because the party did not "raise the issue before the district court as an objection to [the other party's] discovery request").  Accordingly, Cox waived any opportunity to challenge the validity of the subpoena or otherwise oppose Petitioners' objections to the Magistrate Judge's Order.  Moreover, the motion to quash was filed by John Doe, not Cox or even by Cox stepping in the shoes of John Doe.  Nonetheless, because Petitioners withdrew their request for John

2

20-023Ga

Doe's identification information, *see* Doc. #35-3, any limited interest Cox has in these proceedings evaporated. The Court invited Cox to give a declaration on the issue of whether it was a conduit. *See* Doc. #26. Cox did. *See* Doc. #27. Any role Cox had in this matter ended at that time.

**II. Cox fails to rebut Petitioners' argument that there is a substantial case for relief on the merits.**

Cox argues that Petitioners have failed to show a "strong likelihood of success". Opp. at p.3. But Cox fails to address the Ninth Circuit's clarification in *Leiva-Perez v. Holder*, 640 F.3d 962, 967-68 (9th Cir. 2011) that a stay applicant can also succeed on this factor by showing a "fair prospect", "reasonable probability" or "a substantial case for relief on the merits" and balance of hardships in its favor. Per *Leiva-Perez*, "petitioners need not demonstrate that it is more likely than not that they will win on the merits". *Id.* at 966. For that reason alone, Cox's argument here fails. But Cox's specific points are also incorrect. First, Cox does not seriously dispute Petitioners' point that no Court has addressed the question of whether an IP address is an information location tool per 17 U.S.C. §512(d). And Cox's assertion that the case cited in FN4 of the Order addresses whether §512(h) subpoenas can be issued to §512(a) service providers is wrong.

Second, Cox's reliance on *United States v. Alisal Water Corp.*, 326 F. Supp. 1032, 1039 (N.D. Cal. 2004) in support of its argument that even a matter of first

3

impression is insufficient for a stay is misguided.  The Defendants in *Alisal* did not even argue that they were likely to succeed on the merits.  *See id* at 1039. Moreover, the principal reason the Court in *Alisal* denied the stay request was out of concern that the substantial and expensive efforts the Court, the receiver, the bidders and the public made to carry out the receivership order and would be wasted by derailing the sales. *See id* at 1040.  Such is not the case here.  Moreover, *Alisal* was decided prior to *Leiva-Perez*.

Cox also cites the unpublished decision *In re Ahern Rentals, Inc.*, 2013 WL 273403, *2 (D. Nev. Jan. 23, 2013) for the assertion that issues of first impression support denying a stay.  However, the issue in *Ahern Rentals* was not truly an issue of first impression.  Particularly, the Court noted that there was precedent from the bankruptcy appellate panel decision of *In re Henry Mayo Newhall Mem'l Hosp.*, 282 B.R. 444, 448 (B.A.P. 9th Cir. 2002) on the issue. *See Ahern Rentals, Inc. v. Goldman Sachs Palmetto State Credit Fund, L.P. (In re Ahern Rentals, Inc.)*, No. 3:12-CV-0676-LRH-VPC, 2013 U.S. Dist. LEXIS 9665, at *10 (D. Nev. Jan. 23, 2013).  This was the principal reason the *Ahern Rentals* Court denied the stay.

**III.  Cox fails to rebut Petitioners' assertion that they will be irreparably harmed absent a stay.**

Cox argues that any harm to Petitioners can be cured by Cox maintaining the customer identifications.  However, Cox ignores the evidence its subscribers

4

20-023Ga

provided to Petitioners of the piracy websites they used from Cox's Internet service to pirate Petitioners' movies.  If the Order is not suspended, Petitioners must destroy this evidence since it was derived from the subpoena.  Cox does not have this information to preserve.

Cox accuses Petitioners of using information from the subpoena "to extract settlements and coerce statements from some of the identified individuals…". Opp., p.14.  Petitioners take exception to Cox's inflammatory language.  Nonetheless, absent the stay, Petitioners must destroy settlement agreements which are contracts mutually negotiated between them and certain Cox subscribers.  Petitioners will not be able to comply with their contractual obligations with these subscribers because they will not even know with whom they settled after they destroy the agreements.  And Petitioners could not get a redo by filing John Doe lawsuits against the subscribers with whom they settled as suggested by Cox.  Filing such a lawsuit would breach the settlement agreements.  Petitioners' inability to comply with their contractual obligations of the settlement agreements absent a stay further shows that the balance of hardships tips in their favor.

**IV.  Cox has not established that any other parties will be injured by the requested stay.**

5

20-023Ga

Cox states that it takes no position on this issue but argues that the other Cox subscribers besides John Doe have an interest[1]. But Cox's other subscribers besides John Doe were served notice of the subpoena but did not serve or file any objections. Accordingly, Cox's argument fails.

Petitioners withdrew their request for John Doe's information. *See* Doc. #35-3. Accordingly, no parties will be injured if the Court grants Petitioners' proposed stay. On the other hand, as discussed above, if Petitioners are forced to destroy the contractual settlement agreements with Cox subscribers, they will be unable to comply with their contractual obligations because they will not know with whom they contracted. Thus, the Cox subscribers who are parties to the settlement agreements will suffer harm if a stay is not granted because they will not enjoy the full benefit of their release from liability.

## V. Cox has not established that public interest does not support a stay.

As stated above, Petitioners cannot file a John Doe lawsuit against subscribers with whom they have already settled and released from liability to obtain again the evidence against these piracy websites/platforms. Thus, the public will suffer because Petitioners will not be able to seek legal relief against these websites to enforce their copyrights. Cox argues in a footnote that it is "implausible" that

---

1 Cox's failure to assert that it will not even be injured by a stay further supports Petitioners' argument that Cox is not a party to this dispute because it responded to the subpoena without objections. Accordingly, Cox's opinion on this issue is irrelevant.

6

20-023Ga

Petitioners and/or their counsel did not know about the piracy website watchmovierulz because a *different party* filed a lawsuit against a website with a similar name in *a different district* – the Southern District of Florida ("SDFla"). *See* Opp., FN6. Again, Petitioners take exception to Cox's use of inflammatory dog whistle language. But the watchmovierulz website in the SDFla lawsuit referred to by Cox in its brief is "movierulz.stream" which is different from the website at issue here: "ww28.watchmovierulz.to". *See* Decl. of [REDACTED][2]. Petitioners never argued that they did not know about the existence of the PirateBay website.

Cox also argues in FN6 that "it is not clear why Petitioners believe the Court's Order would preclude them from investigating and, if warranted, suing those websites going forward." However, the Order clearly states that Petitioners must, "return and/or destroy *any information derived from the Subpoena…*". Order, p.22. By the language of the Order, Petitioners must once again independently obtain knowledge of the piracy website to seek legal relief. Else they would be using information derived from the subpoena. Further, Cox's argument ignores the fact that Petitioners need strong evidence that a foreign piracy website (on the .to domain of the Kingdom of Tonga) purposefully directed its conduct at the US to firmly establish US jurisdiction. That is, evidence that a US resident downloaded Petitioners' specific work from the website is such evidence. This Court is familiar

---

2 Petitioners attach a redacted version of the subscribers' affidavit to rebut Cox's allegation of "implausible".

7

20-023Ga

with the challenges copyright holders have of establishing personal jurisdiction in the US over foreign piracy websites. *See, e.g.,* HB Prods., Inc. v. Faizan, 603 F. Supp. 3d 910, (D. Haw. 2022). Finally, the Court can take notice that the website ww28.watchmovierulz.to is gone. Accordingly, Petitioners cannot independently again obtain evidence of this website's infringements even if they tried.

Further, as argued above, the subscribers that are parties to the settlement agreements have an interest in ensuring that Petitioners comply with the contractual terms. The public also has an interest in enforcement of private agreements and settlement of litigation. *See, e.g., Kiddie Rides, Inc. v. Southland Eng'g, Inc.*, 361 F.2d 575, 578 (9th Cir. 1966) ("It is essential to society's commercial welfare that there be no undermining of the desirable stability of contracts")

## VI.    Conclusion.

Petitioners have shown a substantial case on the merits, and that the balance of hardships and public interest tip sharply in favor of a stay. Accordingly, the Court should grant Petitioners request for a stay.


DATED: Kailua-Kona, Hawaii, Feb. 28, 2024.

20-023Ga

CULPEPPER IP, LLLC


 /s/ Kerry S. Culpepper
Kerry S. Culpepper
Attorney for Petitioners

20-023Ga

9

| | |
|---|---|
| **From:** | hid_resp@hid.uscourts.gov |
| **To:** | hawaii_cmecf@hid.uscourts.gov |
| **Subject:** | Activity in Case 1:23-cv-00426-JMS-WRP In Re: Subpoena of Internet subscribers of Cox Communications, LLC and CoxCom LLC Link |
| **Date:** | Wednesday, February 14, 2024 9:28:14 AM |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Hawaii**

**Notice of Electronic Filing**

The following transaction was entered on 2/14/2024 at 9:27 AM HST and filed on 2/14/2024

| | |
|---|---|
| **Case Name:** | In Re: Subpoena of Internet subscribers of Cox Communications, LLC and CoxCom LLC |
| **Case Number:** | 1:23-cv-00426-JMS-WRP |
| **Filer:** | |
| **WARNING: CASE CLOSED on 01/30/2024** | |
| **Document Number:** | 36(No document attached) |

**Docket Text:**
**EO: On February 12, 2024, Petitioners filed a Motion for Reconsideration of the court's January 30, 2024 Order Adopting Findings and Recommendation. *See* ECF No. [35]. Under Local Rule 60.1, no opposition or reply shall be filed unless directed by the court. Accordingly, the court DIRECTS that an Opposition/Response be filed to the Motion for Reconsideration. Any Opposition/Response is due by February 28, 2024. No Reply shall be filed.**

**(JUDGE J. MICHAEL SEABRIGHT)(rlfh)**

**1:23-cv-00426-JMS-WRP Notice has been electronically mailed to:**

Joachim P. Cox     jcox@cfhawaii.com, ckipi@cfhawaii.com, clarsen-dias@cfhawaii.com, glawlor@cfhawaii.com, jdougherty@cfhawaii.com, nfarris@cfhawaii.com

Abigail Marie Holden     aholden@cfhawaii.com, ckipi@cfhawaii.com, clarsen-dias@cfhawaii.com, glawlor@cfhawaii.com, jdougherty@cfhawaii.com, nfarris@cfhawaii.com

Kerry S. Culpepper     kculpepper@culpepperip.com, nho@culpepperip.com

Jennifer A. Golinveaux     jgolinveaux@winston.com

Thomas J. Kearney     tkearney@winston.com

**1:23-cv-00426-JMS-WRP Notice will not be electronically mailed to:**

John Doe
Las Vegas, NV

# Exhibit "C"

# CULPEPPER IP, LLLC

**Culpepper IP**

### ATTORNEY AT LAW

75-170 HUALALAI ROAD, SUITE B204
KAILUA-KONA, HAWAII 96740

KERRY S. CULPEPPER *

TEL: (808) 464-4047
FAX: (202) 204-5181

* ADMITTED TO PRACTICE IN VIRGINIA, HAWAI'I
    AND BEFORE THE USPTO

WWW.CULPEPPERIP.COM
————————

PATENTS, TRADEMARKS & COPYRIGHTS

Feb. 4, 2024

<u>Via E-mail</u>

Golinveaux, Jennifer <JGolinveaux@winston.com>

Kearney, Thomas <TKearney@winston.com>

Abigail Marie Holden   <aholden@cfhawaii.com>

<u>Via First Class Mail</u>

Jennifer A. Golinveaux

Winston & Strawn LLP

101 California Street

San Francisco, CA 94111-5840

U.S. District Court for the District of Hawaii

Case Name: *In Re: Subpoena of Internet subscribers of Cox Communications, LLC and CoxCom LLC*

Mics. Action No. 1:23-cv-00426-JMS-WRP

Dear Jennifer,

      The Petitioners withdraw their request for information for the subscriber at IP Address: 50.159.108.38 ("John Doe") – the individual who filed the Objection [Doc. #6].

Sincerely,

/ksc/

Kerry S. Culpepper

kculpepper@culpepperip.com

ER-85

CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:        kculpepper@culpepperip.com
Attorney for Petitioners

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re Subpoena ) | Case No.: 1:23-cv-00426-JMS-WRP |
| ) | (Copyright) |
| Internet subscribers of Cox ) | |
| Communications, LLC and CoxCom ) | DECLARATION OF DAVID COX |
| LLC ) | |
| ) | |
| ) | |
| ) | |

## **DECLARATION OF DAVID COX**

DAVID COX, hereby declares under penalty of law that the following is true and correct:

1.      I am an adult male residing in Wayne County, Michigan.

2.      I graduated from Eastern Michigan University in 2003 with a Bachelors of Science in Information Technology.

3.      I am the owner of SMR Hosting, LLC ("SMR"), a Michigan limited liability company.  SMR provides Information Technology, network consulting services and data forensics.  SMR was founded in 2009.

20-023DBa

4.      I founded a Virtual Private Network (VPN) service in 2013 that I sold in 2019 to a third party in a profitable transaction.

5.      I have over 20 years of experience in Information Technology.  Besides my experience owning SMR and the VPN service, I have worked as a systems administrator for the Bartech Group, a technical installer for Ford Motor Company, a field support engineer for International Business Machines.

6.      I have numerous certificates of qualification to work in network technologies such as Azure, Amazon Web Services and Cisco.

7.      I am currently the lead network architect/engineer for a publicly traded bank based in the Midwest.  I run the information technology department for this bank.  My duties include data lifecycle protection, network security, cloud security, access controls, infrastructure design, infrastructure security, quality of service, enterprise routing, enterprise network management, etc.

8.      I am competent to testify, and make the statements contained herein based upon my personal knowledge unless otherwise stated in support of Petitioners' Motion for reconsideration.

9.      I was compensated based upon my hourly rate by Petitioners' counsel for studying the information from which this declaration is based and preparing this declaration.

10.      I have been familiar with BitTorrent since it was introduced. I have attached as Exhibit "A" a copy of The BitTorrent Protocol Specification ("BitTorrent Specification").

2

20-023Ga

11.     In my role as owner of a VPN and web hosting company, I often took remedial measures to mitigate BitTorrent traffic and other abusive traffic.

12.     One approach I used was to temporarily null route Internet Protocol ("IP") addresses listed in DMCA notices or other notices of abuse.

13.     There are two types of null routing: source null routing and destination null routing.  A destination null route of an IP address will not terminate the Internet service of the user assigned the IP address.  It will only prevent the Internet Service Provider's ("ISP") other users from reaching the specific destination IP address.  A source null route will block that user assigned that IP address from reaching any destinations from that IP address.  However, the service of the user assigned the IP addresses for the source null route will not be terminated although the user will not be able to access the Internet if the user only has one IP address.  Indeed, if that user has any additional IP addresses, the user will still be able to reach destinations from the additional IP addresses.  A typical source null route is a walled garden where the user can only access an informational website from the user's Internet informing the user call in to the ISP to confirm the user will no longer engage in the abusive conduct to resume service.

14.     Another approach I used particularly for BitTorrent was to block certain ports associated with BitTorrent such as ports 6882-6889 specified in the BitTorrent Specification. *See* Ex. "A", p.4 ("Common behavior is for a downloader to try to listen on port 6881 and if that port is taken try 6882, then 6883, etc. and give up after 6889.")  Another port blocking approach is to rate limit ports.

20-023Ga

3

ER-88

15.     Another approach I used for mitigating BitTorrent abuse was Uniform Recourse Locator ("URL") filtering where access to certain notorious piracy websites at the URL level is blocked.  For example, referring to Exhibit "1" [Doc. #1-2] of Petitioners' application for the DMCA subpoena, most of the pirated movies originated from the piracy websites YTS.MX and RARBG.  Accordingly, blocking these notorious piracy websites would mitigate the abuse.

Case 1:23-mc-00263   Document 1-2   Filed 04/13/23   Page 3 of 9     PageID.10

| Number | NoticesID | IP | Filename |
|---|---|---|---|
| 1 | 52235213826 | 70.161.172.138 | After Ever Happy (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 2 | 51998269860 | 98.186.195.187 | The Protégé (2021) AC3 5.1 ITA.ENG 1080p H265 sub ita.eng S|
| 3 | 50781423708 | 174.72.179.158 | Fall.2022.1080p.BluRay.H264.AAC-RARBG |
| 4 | 50921146500 | 70.160.12.144 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 5 | 51643585404 | 70.189.207.108 | Fall.2022.720p.WEBRip.800MB.x264-GalaxyRG[TGx] |
| 6 | 51998876640 | 98.186.195.187 | Fall.2022.720p.WEBRip.800MB.x264-GalaxyRG[TGx] |
| 7 | 52252775054 | 70.161.172.138 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 8 | 52564539256 | 70.163.221.46 | www.5MovieRulz.lc - Fall (2022) 1080p BluRay - (DD+5.1 - 640| |
| 9 | 52806820788 | 68.230.145.56 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 10 | 52796238184 | 68.230.145.56 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 11 | 52792226610 | 70.176.239.249 | Fall.2022.1080p.WEBRip.DD5.1.x264-NOGRP |
| 12 | 52789574168 | 174.66.240.9 | Fall (2022) [2160p] [4K] [WEB] [5.1] [YTS.MX] |

16.     Other conventional approaches for blocking BitTorrent traffic include filtering techniques such as deep packet inspection, application firewalls, layer 7 filtering, rate limit and threshold filtering.

17.     In any of the above blocking or filtering approaches, the user's Internet service would not be terminated.  Port blocking as discussed above will disable access to the majority of BitTorrent traffic at the IP addresses.  Filtering (depending on the technology) will also disable access to a majority or all BitTorrent traffic at the IP addresses.

18.     The technology in the industry for mitigating against abusive BitTorrent traffic has advanced in the last 20 years and significantly in the last five years thanks to Next-gen

4

20-023Ga

security gateways containing Advanced RISC Machines ("ARM") processors and Artificial Intelligence.

19.     Returning to the issue of null routing, as explained above null routing is not the same as service termination.  However, the trackers that broadcast IP addresses that are sharing content over the BitTorrent protocol become inaccurate once an IP address is null routed.  *See* Ex. "A", p.4 ("ip  An optional parameter giving the IP…which the peer is at…").  Therefore, the BitTorrent sharing activity at the IP address will stop even if the user switched to a different IP address.

20.     Network monitoring is deeply ingrained within ISPs.  ISPs such as Cox monitor for quality of service such as traffic queuing, traffic shaping and prioritization.  ISPs such as Cox also monitor for certain activity such as attacks, network performance and traffic anomalies and maintain firewalls for filtering out denial of services, intrusion detection and mitigation.  Accordingly, I do not think there would be any additional burden to an ISP such as Cox to adopt one or more of the above approaches for stopping ongoing BitTorrent piracy at an IP address assigned to a subscriber.

21.     An IP address is the ultimate destination of information.   Everything through the Internet is done through IP addresses at a fundamental level.  The tools that look information up such as Domain Name System ("DNS") tools ultimately point to an IP address.

22.     In the context of BitTorrent, for example, the BitTorrent user ("seeder") share a pirated copy of material from an online location (the IP address) and another BitTorrent user ("peer") connects to the online location (the IP address) to obtain the pirated copy.  The seeder's

<p>5</p>

20-023Ga

IP address will be broadcast by a tracker to peers as a seeder having the pirated copy available to share.

23. For example, I understand from Exhibit "1" [Doc. #1-2] of Petitioners' application for the DMCA subpoena, the seeders were users of the ISP Cox and that seeder(1) was confirmed sharing a pirated copy of the movie *After Ever Happy* under the file name "After Ever Happy (2022) [1080p] [WEBRip] [5.1] [YTS.MX]". In this case, the online location where the pirated copy is broadcast by trackers as being available to be shared is the Cox IP address 70.161.172.138. Although the pirated copy of *After Ever Happy* is stored locally on seeder(1)'s computer it is broadcast online from the IP address just like seeder(1) could publish a website online stored locally from the IP address. Accordingly, an IP address is just like a pointer or hypertext link.

24. If the peer is a Cox user, Cox directly links the peer to the online location 70.161.172.138 when the peer's BitTorrent client app chooses the seeder's Cox IP address from the tracker. Even if the peer is a user of a different ISP, Cox will ultimately link the peer to the online location 70.161.172.138 when the peer's BitTorrent client app chooses the seeder's Cox IP address.

25. Accordingly, seeder(1)'s pirated copy stored on seeder(1)'s local computer is published online at IP address 70.161.172.138. When other peers select IP address 70.161.172.138, Cox will link them to the IP address to obtain the pirated copy. The same happens for all the seeders shown in Exhibit "1" [Doc. #1-2]. Although this process is automatic, it is no different from how other service providers automatically publish websites of their users.

6

20-023Ga

26.     I have attached as Exhibit "B" an image that I think accurately represents the structure of the different tiers of network providers of Internet service.

27.     Internet service providers, often Tier 1 networks, participate in Internet backbone traffic by privately negotiated interconnection agreements, primarily governed by the principle of settlement-free peering.

28.     I understand in the present case that the ISP Cox provided Internet service to residential subscribers.  In this circumstance, Cox would generally be considered a Tier 2 provider.

29.     A Tier 2 network is not considered a conduit because it provides service and equipment to end users.

30.     In comparison, an IXP providing interconnectivity between networks, or Tier 1 network providing transit services is considered a conduit because they are backbone providers that do not provide service to end users. A Tier 1 network provider or IXP cannot null route a single IP address at an endpoint because they are dealing with the interconnectivity of multiple large networks and do not control the IP address space assigned to the residential subscriber.

31.     A Tier 1 provider will provide multiple high speed (100 Gig) circuits to Tier 2 partners at an IXP with multiple blocks of IP addresses on each side for redundancy.

32.     Due to industry consolidation, some ISPs such as Comcast operate in both the Tier 1 and Tier 2 space.  In these circumstances, Comcast's transit operations would be considered Tier 1 network services while Comcast's provider of services to Internet users are considered Tier 2 services.

7

20-023Ga

I declare under penalty of perjury that the foregoing is true and correct.

DATED: Canton, MI, Feb. 7, 2024.

_____
David Cox
6800 Bridgemont Dr.
Canton, MI 48187

20-023Ga

8

# Exhibit "A"

BitTorrent**.org**

**Home**    **For Users**    For Developers    **Developer mailing list**    **Forums (archive)**

| | |
|---|---|
| **BEP:** | 3 |
| **Title:** | The BitTorrent Protocol Specification |
| **Version:** | 0e08ddf84d8d3bf101cdf897fc312f2774588c9e |
| **Last-Modified:** | Sat Feb 4 12:58:40 2017 +0100 |
| **Author:** | Bram Cohen <bram@bittorrent.com> |
| **Status:** | Final |
| **Type:** | Standard |
| **Created:** | 10-Jan-2008 |
| **Post-History:** | 24-Jun-2009 (arvid@bittorrent.com), clarified the encoding of strings in torrent files. 20-Oct-2012 (arvid@bittorrent.com), clarified that info-hash is the digest of en bencoding found in .torrent file. Introduced some references to new BEPs and cleaned up formatting. 11-Oct-2013 (arvid@bittorrent.com), correct the accepted and de-facto sizes for request messages 04-Feb-2017 (the8472.bep@infinite-source.de), further info-hash clarifications, added resources for new implementors |

BitTorrent is a protocol for distributing files. It identifies content by URL and is designed to integrate seamlessly with the web. Its advantage over plain HTTP is that when multiple downloads of the same file happen concurrently, the downloaders upload to each other, making it possible for the file source to support very large numbers of downloaders with only a modest increase in its load.

## A BitTorrent file distribution consists of these entities:

- An ordinary web server
- A static 'metainfo' file
- A BitTorrent tracker
- An 'original' downloader
- The end user web browsers
- The end user downloaders

There are ideally many end users for a single file.

## To start serving, a host goes through the following steps:

1. Start running a tracker (or, more likely, have one running already).
2. Start running an ordinary web server, such as apache, or have one already.
3. Associate the extension .torrent with mimetype application/x-bittorrent on their web server (or have done so already).
4. Generate a metainfo (.torrent) file using the complete file to be served and the URL of the tracker.

ER-95

Case: 24-3978, 09/10/2024, DktEntry: 14.1, Page 96 of 257
Case 1:23-cv-00426-JMS-WRP   Document 35-2   Filed 02/12/24   Page 11 of 17   PageID.220

5. Put the metainfo file on the web server.

6. Link to the metainfo (.torrent) file from some other web page.

7. Start a downloader which already has the complete file (the 'origin').

## To start downloading, a user does the following:

1. Install BitTorrent (or have done so already).

2. Surf the web.

3. Click on a link to a .torrent file.

4. Select where to save the file locally, or select a partial download to resume.

5. Wait for download to complete.

6. Tell downloader to exit (it keeps uploading until this happens).

## bencoding

- Strings are length-prefixed base ten followed by a colon and the string. For example `4:spam` corresponds to 'spam'.

- Integers are represented by an 'i' followed by the number in base 10 followed by an 'e'. For example `i3e` corresponds to 3 and `i-3e` corresponds to -3. Integers have no size limitation. `i-0e` is invalid. All encodings with a leading zero, such as `i03e`, are invalid, other than `i0e`, which of course corresponds to 0.

- Lists are encoded as an 'l' followed by their elements (also bencoded) followed by an 'e'. For example `l4:spam4:eggse` corresponds to ['spam', 'eggs'].

- Dictionaries are encoded as a 'd' followed by a list of alternating keys and their corresponding values followed by an 'e'. For example, `d3:cow3:moo4:spam4:eggse` corresponds to {'cow': 'moo', 'spam': 'eggs'} and `d4:spaml1:a1:bee` corresponds to {'spam': ['a', 'b']}. Keys must be strings and appear in sorted order (sorted as raw strings, not alphanumerics).

## metainfo files

Metainfo files (also known as .torrent files) are bencoded dictionaries with the following keys:

announce

    The URL of the tracker.

info

    This maps to a dictionary, with keys described below.

All strings in a .torrent file that contains text must be UTF-8 encoded.

### info dictionary

The `name` key maps to a UTF-8 encoded string which is the suggested name to save the file (or directory) as. It is purely advisory.

`piece length` maps to the number of bytes in each piece the file is split into. For the purposes of transfer, files are split into fixed-size pieces which are all the same length except for possibly the last one which may be truncated. `piece length` is almost always a power of two, most commonly 2 18 = 256 K (BitTorrent prior to version 3.2 uses 2 20 = 1 M as default).

`pieces` maps to a string whose length is a multiple of 20. It is to be subdivided into strings of length 20, each of which is the SHA1 hash of the piece at the corresponding index.

There is also a key `length` or a key `files`, but not both or neither. If `length` is present then the download represents a single file, otherwise it represents a set of files which go in a directory structure.

ER-96

In the single file case, `length` maps to the length of the file in bytes.

For the purposes of the other keys, the multi-file case is treated as only having a single file by concatenating the files in the order they appear in the files list. The files list is the value `files` maps to, and is a list of dictionaries containing the following keys:

`length` - The length of the file, in bytes.

`path` - A list of UTF-8 encoded strings corresponding to subdirectory names, the last of which is the actual file name (a zero length list is an error case).

In the single file case, the name key is the name of a file, in the muliple file case, it's the name of a directory.

## trackers

Tracker GET requests have the following keys:

info_hash

> The 20 byte sha1 hash of the bencoded form of the info value from the metainfo file. This value will almost certainly have to be escaped.

> Note that this is a substring of the metainfo file. The info-hash must be the hash of the encoded form as found in the .torrent file, which is identical to bdecoding the metainfo file, extracting the info dictionary and encoding it *if and only if* the bdecoder fully validated the input (e.g. key ordering, absence of leading zeros). Conversely that means clients must either reject invalid metainfo files or extract the substring directly. They must not perform a decode-encode roundtrip on invalid data.

peer_id

> A string of length 20 which this downloader uses as its id. Each downloader generates its own id at random at the start of a new download. This value will also almost certainly have to be escaped.

ip

> An optional parameter giving the IP (or dns name) which this peer is at. Generally used for the origin if it's on the same machine as the tracker.

port

> The port number this peer is listening on. Common behavior is for a downloader to try to listen on port 6881 and if that port is taken try 6882, then 6883, etc. and give up after 6889.

uploaded

> The total amount uploaded so far, encoded in base ten ascii.

downloaded

> The total amount downloaded so far, encoded in base ten ascii.

left

> The number of bytes this peer still has to download, encoded in base ten ascii. Note that this can't be computed from downloaded and the file length since it might be a resume, and there's a chance that some of the downloaded data failed an integrity check and had to be re-downloaded.

event

> This is an optional key which maps to `started`, `completed`, or `stopped` (or `empty`, which is the same as not being present). If not present, this is one of the announcements done at regular intervals. An announcement using `started` is sent when a download first begins, and one using `completed` is sent when the download is complete. No `completed` is sent if the file was complete when started. Downloaders send an announcement using `stopped` when they cease downloading.

bep_0003.rst_post

Tracker responses are bencoded dictionaries. If a tracker response has a key `failure reason`, then that maps to a human readable string which explains why the query failed, and no other keys are required. Otherwise, it must have two keys: `interval`, which maps to the number of seconds the downloader should wait between regular rerequests, and `peers`. `peers` maps to a list of dictionaries corresponding to `peers`, each of which contains the keys `peer id`, `ip`, and `port`, which map to the peer's self-selected ID, IP address or dns name as a string, and port number, respectively. Note that downloaders may rerequest on nonscheduled times if an event happens or they need more peers.

More commonly is that trackers return a compact representation of the peer list, see BEP 23.

If you want to make any extensions to metainfo files or tracker queries, please coordinate with Bram Cohen to make sure that all extensions are done compatibly.

It is common to announce over a UDP tracker protocol as well.

## peer protocol

BitTorrent's peer protocol operates over TCP or uTP.

Peer connections are symmetrical. Messages sent in both directions look the same, and data can flow in either direction.

The peer protocol refers to pieces of the file by index as described in the metainfo file, starting at zero. When a peer finishes downloading a piece and checks that the hash matches, it announces that it has that piece to all of its peers.

Connections contain two bits of state on either end: choked or not, and interested or not. Choking is a notification that no data will be sent until unchoking happens. The reasoning and common techniques behind choking are explained later in this document.

Data transfer takes place whenever one side is interested and the other side is not choking. Interest state must be kept up to date at all times - whenever a downloader doesn't have something they currently would ask a peer for in unchoked, they must express lack of interest, despite being choked. Implementing this properly is tricky, but makes it possible for downloaders to know which peers will start downloading immediately if unchoked.

Connections start out choked and not interested.

When data is being transferred, downloaders should keep several piece requests queued up at once in order to get good TCP performance (this is called 'pipelining'.) On the other side, requests which can't be written out to the TCP buffer immediately should be queued up in memory rather than kept in an application-level network buffer, so they can all be thrown out when a choke happens.

The peer wire protocol consists of a handshake followed by a never-ending stream of length-prefixed messages. The handshake starts with character ninteen (decimal) followed by the string 'BitTorrent protocol'. The leading character is a length prefix, put there in the hope that other new protocols may do the same and thus be trivially distinguishable from each other.

All later integers sent in the protocol are encoded as four bytes big-endian.

After the fixed headers come eight reserved bytes, which are all zero in all current implementations. If you wish to extend the protocol using these bytes, please coordinate with Bram Cohen to make sure all extensions are done compatibly.

Next comes the 20 byte sha1 hash of the bencoded form of the info value from the metainfo file. (This is the same value which is announced as `info_hash` to the tracker, only here it's raw instead of quoted here). If both sides don't send the same value, they sever the connection. The one possible exception is if a downloader wants to do multiple

ER-98

Case: 24-3978, 09/10/2024, DktEntry: 14.1, Page 99 of 257
Case 1:23-cv-00426-JMS-WRP   Document 35-2   Filed 02/12/24   Page 14 of 17   PageID.223

downloads over a single port, they may wait for incoming connections to give a download hash first, and respond with the same one if it's in their list.

After the download hash comes the 20-byte peer id which is reported in tracker requests and contained in peer lists in tracker responses. If the receiving side's peer id doesn't match the one the initiating side expects, it severs the connection.

That's it for handshaking, next comes an alternating stream of length prefixes and messages. Messages of length zero are keepalives, and ignored. Keepalives are generally sent once every two minutes, but note that timeouts can be done much more quickly when data is expected.

## peer messages

All non-keepalive messages start with a single byte which gives their type.

The possible values are:

- 0 - choke
- 1 - unchoke
- 2 - interested
- 3 - not interested
- 4 - have
- 5 - bitfield
- 6 - request
- 7 - piece
- 8 - cancel

'choke', 'unchoke', 'interested', and 'not interested' have no payload.

'bitfield' is only ever sent as the first message. Its payload is a bitfield with each index that downloader has sent set to one and the rest set to zero. Downloaders which don't have anything yet may skip the 'bitfield' message. The first byte of the bitfield corresponds to indices 0 - 7 from high bit to low bit, respectively. The next one 8-15, etc. Spare bits at the end are set to zero.

The 'have' message's payload is a single number, the index which that downloader just completed and checked the hash of.

'request' messages contain an index, begin, and length. The last two are byte offsets. Length is generally a power of two unless it gets truncated by the end of the file. All current implementations use $2^{14}$ (16 kiB), and close connections which request an amount greater than that.

'cancel' messages have the same payload as request messages. They are generally only sent towards the end of a download, during what's called 'endgame mode'. When a download is almost complete, there's a tendency for the last few pieces to all be downloaded off a single hosed modem line, taking a very long time. To make sure the last few pieces come in quickly, once requests for all pieces a given downloader doesn't have yet are currently pending, it sends requests for everything to everyone it's downloading from. To keep this from becoming horribly inefficient, it sends cancels to everyone else every time a piece arrives.

'piece' messages contain an index, begin, and piece. Note that they are correlated with request messages implicitly. It's possible for an unexpected piece to arrive if choke and unchoke messages are sent in quick succession and/or transfer is going very slowly.

2/5/24, 5:52 PM
bep_0003.rst_post

Downloaders generally download pieces in random order, which does a reasonably good job of keeping them from having a strict subset or superset of the pieces of any of their peers.

Choking is done for several reasons. TCP congestion control behaves very poorly when sending over many connections at once. Also, choking lets each peer use a tit-for-tat-ish algorithm to ensure that they get a consistent download rate.

The choking algorithm described below is the currently deployed one. It is very important that all new algorithms work well both in a network consisting entirely of themselves and in a network consisting mostly of this one.

There are several criteria a good choking algorithm should meet. It should cap the number of simultaneous uploads for good TCP performance. It should avoid choking and unchoking quickly, known as 'fibrillation'. It should reciprocate to peers who let it download. Finally, it should try out unused connections once in a while to find out if they might be better than the currently used ones, known as optimistic unchoking.

The currently deployed choking algorithm avoids fibrillation by only changing who's choked once every ten seconds. It does reciprocation and number of uploads capping by unchoking the four peers which it has the best download rates from and are interested. Peers which have a better upload rate but aren't interested get unchoked and if they become interested the worst uploader gets choked. If a downloader has a complete file, it uses its upload rate rather than its download rate to decide who to unchoke.

For optimistic unchoking, at any one time there is a single peer which is unchoked regardless of its upload rate (if interested, it counts as one of the four allowed downloaders.) Which peer is optimistically unchoked rotates every 30 seconds. To give them a decent chance of getting a complete piece to upload, new connections are three times as likely to start as the current optimistic unchoke as anywhere else in the rotation.

## Resources

- The BitTorrent Economics Paper outlines some request and choking algorithms clients should implement for optimal performance
- When developing a new implementation the Wireshark protocol analyzer and its dissectors for bittorrent can be useful to debug and compare with existing ones.

## Copyright

This document has been placed in the public domain.

ER-100

# Exhibit "B"

upload.wikimedia.org/wikipedia/commons/3/36/Internet_Connectivity_Distribution_%26_Core.svg

Case 1:23-cv-00426-JMS-WRP   Document 35-2   Filed 02/12/24   Page 17 of 17  PageID.226

Tier 1 Networks

Tier 2 Networks

PoP #3

PoP #2

PoP #1

Transit

Transit

Peering

IXP

Tier 2 ISP

Transit

Transit

Tier 3 Network
(multi-homed ISP)

Tier 3 Network
(single homed ISP)

Internet users
(business, consumers, etc)

ER-102

CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:  (202) 204-5181
E-Mail:      kculpepper@culpepperip.com

Attorney for Petitioners
Voltage Holdings, LLC
Millennium Funding, Inc., and
Capstone Studios Corp.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re Subpoena | ) Case No.: 1:23-cv-00426-JMS-WRP |
| | ) (Copyright) |
| Internet subscribers of Cox | ) |
| Communications, LLC and CoxCom | ) MEMORANDUM IN SUPPORT OF |
| LLC | ) PETITIONERS' MOTION FOR |
| | ) RECONSIDERATION |
| | ) |
| | ) |
| _____ | ) |

**MEMORANDUM IN SUPPORT OF PETITIONERS' MOTION FOR
<u>RECONSIDERATION</u>**

Petitioners Voltage Holdings, LLC; Millennium Funding, Inc.; and Capstone

Studios Corp., by and through their attorney, Kerry S. Culpepper, move this

honorable court for Reconsideration of the ORDER OVERRULING PLAINTIFF'S

OBJECTIONS AND ADOPTING THE MAGISTRATE JUDGE'S FINDINGS

AND RECOMMENDATION [Doc. #31] ("Order").  Petitioners respectfully assert

1

that the underpinnings of the Court's conclusion that the information location tools (17 U.S.C. 512(d)) section is not applicable to IP addresses are incorrect technically and legally. The Court's conclusion that null routing an IP address is the same as disabling access to a subscriber's account or terminating the account is technically incorrect. Further, in its analysis, the Court applied the notification language of 17 U.S.C. 512(c)(3)(A)(iii) directed to disabling access to the material rather than the correct notification language of 512(d)(3) directed to disabling *links* to the material. And the Court failed to acknowledge other means on the record that ISPs such as Cox have for disabling access to the material (or link to the material) that is claimed to be infringing or to be the subject of infringing activity such as port blocking and filtering. Petitioners respectfully assert that these errors amount to manifest errors of fact and law that justify the Court reconsidering the Order.

## I.       STANDARD OF REVIEW

Fed. R. Civ. P. 59(e) permits a District Court to reconsider and amend a previous order. The Rule, however, offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 34, 945 (9th Cir. 2003) (citation omitted). Pursuant to Fed. R. Civ. P. 60(b)(1), (6), a court may relieve a party from a final judgment or order due to, inter alia, mistake, or any other reason that justifies relief. The standards for reconsideration under Fed. R. Civ. P. 59(e) and 60(b) are substantially the same. *See*

2

*United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009) (listing grounds for relief under both rules); *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1262–63 (9th Cir. 1993); *Wharf v. Burlington N. R.R.*, 60 F.3d 631, 637 (9th Cir. 1995).

Courts have established only three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or fact in order to prevent manifest injustice. *See Mustafa v. Clark County School District*, 157 F.3d 1169, 1178-79 (9th Cir.1998); *Great Hawaiian Financial Corp. v. Aiu*, 116 F.R.D. 612, 616 (D. Hawai'i 1987), rev'd on other grounds, 863 F.2d 617 (9th Cir. 1988). A successful motion for reconsideration must demonstrate a reason why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature that induces the court to reverse its prior decision. *See White v. Sabatino*, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006).

## II.   <u>REASONS FOR RECONSIDERATION</u>

### A. *Null routing an IP address is not the same as terminating an account.*

The Court describes null routing as "terminating the user's connection, which is a harsher remedy than the DMCA authorizes" and compared terminating a user's connection to the account termination provision of §512(j)(1)(A)(ii). Order at PageID.169. Null routing an IP address may terminate a connection to infringing

3

BitTorrent activity, but it is not equivalent to account termination or Internet termination per §512(j)(1)(A)(ii).  Firstly, if an account has more than one IP address, the user will still be able to use the other IP addresses for full Internet access, although the null routed IP address from which BitTorrent activity was broadcast as making pirated copies available to be shared will be limited based upon the type of null routing as discussed below.  *See* Decl. of David Cox at ¶13.

Secondly, null routing will not even terminate the Internet connection even when the account only has a single IP address.  For example, if an IP address of an account is *source* null routed, the user is placed in a soft walled garden where access is limited to certain websites, usually a website of the service provider informing the user to call a certain number to resume full service.  *See id.* This appears to be one of the approaches used by Cox.  *See BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 149 F. Supp. 3d 634, 641 (E.D. Va. 2015) (describing how Cox places accounts in a "soft-walled garden" after certain number of notices where the account is limited to a single website where user can click a link to resume service and later to a "hard-walled garden" where the user must call Cox to resume service).  Secondly, if an IP address of a user's account is *destination* null routed, the user's service will still be able to use the Internet to access data, but other peers that are Cox accounts will not be able to link to the user's IP address to obtain copies of the pirated content.  *See* Cox Decl. at ¶13. Thus, source null routing cuts the link at the source, while

4

destination null routing cuts the link at the destination.  Although source null routing is more limiting than destination routing, neither type of null routing terminates an account as argued in the Order.

*B.   The Court relied on the wrong statutory notification language.*

The Order discusses whether the list of IP addresses "could constitute adequate notice under Subsection (c)(3)(A) for infringement under § 512(d)"[1] or whether Cox may remove or disable access to infringing in the context of §512(d). Order at PageIDs 166 and 169. However, §512(d)(3) provides that the Notification for §512(d) is for the service provider to remove or disable access to *the reference or link* – not the infringing material or activity.  Below Petitioners have put the §(c)(3)(A)(iii) language side by side with the §512(d)(3) language to clearly illustrate this point.

| (3)(A)(iii) language: | (d)(3) language: |
|---|---|
| (iii)Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material. | identification of the reference or link, to material or activity claimed to be infringing, that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate that reference or link. |

---

[1] The notification was not the list of the IP addresses at PageIDs9-16 as stated in the Opinion.  Rather, a representative copy of the notification is shown as Ex. "2" to the application.  *See* PageID.17.

Petitioners' assertion is consistent with the Congressional Record. *See* H.R. Rep No. 105-551, pt. 2, at 58 (1998) ("…responds expeditiously to remove or disable the *reference or link* upon receiving a notification of claimed infringement as described in new subsection…the information submitted by the complaining party…is the identification of the reference or link to infringing material or activity…and the information reasonably sufficient to permit the service provider to locate that *reference or link*.") (emphasis added).

In view of this point, the Court's concern that "Cox has no meaningful ability to satisfy the remedial requirements of the § 512(d) safe harbor short of terminating the user's connection" evaporates. Order at PageID18. In response to the notifications, Cox can put the IP addresses in the notice in the walled garden as it already does or block the BitTorrent ports or filter BitTorrent activity as it already at least does port blocking and filtering generally as noted in the opinion to remove or disable the link to the infringing material or activity.

C. *The record discusses other means such as port blocking and filtering that can block access to infringing material or activity.*

The Order treats null routing as the only possible means set forth for removing access to infringing activity or material or the link thereto. However, Petitioners also argued that Cox can block ports and filter out material. Although the Court disagreed with Petitioners that filtering or blocking ports modifies material, *see*

6

Order at PageID172, these are still means an ISP such as Cox have at its disposal for removing access to the infringing material. *See* Decl. of Cox at ¶¶14-17 (noting various types of port blocking and filtering a service provider can use to block access to infringing material via BitTorrent).

## D.   *Failure to qualify for the safe harbor does not equal liability.*

The Court's opinion states that "If the assignment of IP addresses to P2P infringers falls under § 512(d), Cox would have no ability to avoid liability for monetary relief for P2P infringement in suits like Petitioners' because although "notice" by copyright holders would be possible, "take down" by Cox would not." Order at PageID169-170.   Firstly, Petitioners are not suing Cox.   Rather, Cox responded to the subpoena without objection[2].   Secondly, as discussed above, Cox can use source null routing to place the IP address in a walled garden, destination null routing so that other Cox peers cannot obtained pieces of the pirated copy from the IP address, block BitTorrent ports, or filter BitTorrent activity in response to the notices to comply with the take down.   Importantly, Cox already engages in some of these practical measures in some cases.   But more importantly, Petitioners respectfully assert that the predicate for the assertion that Cox would be liable if it could not take down is incorrect. § 512(l) states that even the failure to qualify for a

---

[2] Because Petitioners withdrew their request for John Doe's information, *see* Ex. "C", Cox no longer has any role in this subpoena dispute (to the extent any dispute remains).

7

safe harbor "shall not bear adversely…any other defense." *See also Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1174 (C.D. Cal. 2002). Accordingly, ISPs such as Cox still maintain all their defenses and are not automatically liable if they fail to qualify for any of the safe harbors.

E.   *The separate safe harbors §§ 512(a) and (d) must be evaluated independently.*

The Order states that "If an ISP assigning an IP address is both "providing connections for" infringement under (a) and "referring or linking" to infringing material under (d)—as Petitioners contend—Congress would not have created two separate safe harbors."  Order at PageID168.  But § 512(n) states, "whether a service provider qualifies for the limitation on liability in any one of those subsections shall be based solely on the criteria in that subsection, and shall not affect a determination of whether that service provider qualifies for the limitations on liability under any other such subsection."   Accordingly, per § 512(n) a service provider can indeed qualify for two overlapping safe harbors.

F.   *The language in the information tools subsection is unambiguous.*

The Order considered the Congressional record and the unpublished case of *A&M Recs., Inc. v. Napster, Inc.*, 2000 WL 573136, at *5 (N.D. Cal. May 12, 2000) in defining referring or linking as "providing some degree of "active assistance" to users in locating online resources".[3]  Order at PageID167, FN6.   However, the

---

[3] The Court's conclusion that linking or referring requires active assistance contradicts conclusions in *Totally Her*

8

meaning of referring or linking is clear.[4]  Accordingly, the Order should not have referred to Congressional records to interpret the clear terms referring or linking. Just a week ago, the Ninth Circuit noted in reversing an admiralty decision of this Court that "Because the meaning of the statute is clear from its text, the district court's review of the legislative history was unnecessary and improper." *Ehart v. Lahaina Divers, Inc.*, __ F.4th __, No. 22-16149, 2024 U.S. App. LEXIS 2974, at *16 n.13 (9th Cir. Feb. 8, 2024) (quoting *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017)).  Similarly, here the Order's review of legislative history of these clear terms was unnecessary and improper.

## III.   CONCLUSION

The Court's conclusion that § 512(d) information tool section rested for the most part on incorrect conclusions that: (i) null routing an IP address is equivalent to terminating service; (ii) ISPs such as Cox do not have other practical measures such as port blocking or filtering to stop access to infringing content via BitTorrent; and (iii) the notification required Cox have the ability to remove or disable access to the infringing material.  However, as discussed above, (i) null routing does not terminate the Internet service at the account and Cox already uses source null

---

*Media, LLC v. Bwp Media United States, Inc.*, No. CV 13-08379-AB (PLAx), 2015 U.S. Dist. LEXIS 193685, at *32-33 (C.D. Cal. Mar. 24, 2015) that user generated links to third-party websites displaying infringing photographs are information location tools and in *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1116 (9th Cir. 2007) that hyperlinks provided by CCBill to a website "could be viewed as an "information location tool"".

[4] Besides Petitioners citation to the dictionary definitions in their Reply Brief, *see* PageID.127, the declaration of David Cox includes a diagram of the structures of the different tiers and interconnection of the Internet.  *See* Decl. of Cox at ¶¶26-32; Ex. "B".

9

routing; (ii) Cox has available other practical measures such as port blocking or filtering to stop access to infringing content via BitTorrent; and (iii) the § 512(d) notification  required Cox have the ability to remove or disable access to the *reference or the link* to the infringing material or activity rather than disabling or removing the infringing material.  Accordingly, Petitioners respectfully request that the Court Reconsider the Order to the extent it relied on the above technical and legal errors that amount to manifest injustice.

DATED: Kailua-Kona, Hawaii, Feb. 12, 2014.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Petitioners

10

CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:  (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Petitioners
Voltage Holdings, LLC
Millennium Funding, Inc., and
Capstone Studios Corp.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re Subpoena ) | Case No.: 1:23-cv-00426-JMS-WRP |
| ) | (Copyright) |
| Internet subscribers of Cox ) | |
| Communications, LLC and CoxCom ) | PETITIONERS' STATEMENT; |
| LLC ) | CERTIFICATE OF SERVICE |
| ) | |
| ) | |
| ) | |
| ) | |
| _____ ) | |

## PETITIONERS' STATEMENT

Petitioners Voltage Holdings, LLC; Millennium Funding, Inc., and Capstone Studios Corp., by and through their attorneys, hereby submit this Statement in response to the Court's Order [Doc. #33] of Feb. 1, 2024 directing Petitioners "to file a Statement as to whether (and if so, how) the subpoenaed information has been used, to include whether other litigation has been filed in other districts."

20-023Ga

ER-113

**A. Whether other litigation has been filed in other districts.**

Petitioners have not filed any litigation in any other districts based upon the subpoenaed information.

**B.  How the subpoenaed information has been used.**

Petitioners contacted subscribers by written letters to the names and addresses provided in response to the subpoena. Some of the subscribers entered into settlement agreements and disclosed the circumstances behind the infringement (what website was used to obtain a pirated copies or torrent file for pirating copies; what software application was used; how did they find out about the website or software application, etc.).

DATED: Kailua Kona, Hawaii, Feb. 10, 2024.


CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper
Attorney for Petitioners

2

20-023Ga

**kculpepper culpepperip.com**

| | |
|---|---|
| **From:** | hid_resp@hid.uscourts.gov |
| **Sent:** | Thursday, February 1, 2024 12:51 PM |
| **To:** | hawaii_cmecf@hid.uscourts.gov |
| **Subject:** | Activity in Case 1:23-cv-00426-JMS-WRP In Re: Subpoena of Internet subscribers of Cox Communications, LLC and CoxCom LLC Link |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### District of Hawaii

## Notice of Electronic Filing

The following transaction was entered on 2/1/2024 at 12:51 PM HST and filed on 2/1/2024

| | |
|---|---|
| **Case Name:** | In Re: Subpoena of Internet subscribers of Cox Communications, LLC and CoxCom LLC |
| **Case Number:** | 1:23-cv-00426-JMS-WRP |
| **Filer:** | |

**WARNING: CASE CLOSED on 01/30/2024**

**Document Number:** 33(No document attached)

Docket Text:
**EO: Petitioners have filed an "Urgent Motion for Stay Pending Appeal" ("Motion for Stay"), ECF No. [32], regarding the court's order for Petitioners "[n]o later than one week after [January 30, 2024] to return and/or destroy any information derived from the Subpoena, to maintain no further record of the information obtained from the Subpoena, and to make no further use of the subscriber data obtained from the Subpoena."** *See* **ECF No. [31] at PageID.173. Upon review of the Motion to Stay, the court temporarily SUSPENDS the requirements "to return and/or destroy any information" and "to maintain no further record of the information" so as to allow CoxCom LLC to file a Response to the Motion to Stay. Accordingly, Cox is DIRECTED to file a Response by February 15, 2024. After review of a Response, the Court will decide whether to stay any requirements pending any appeal.**

**In the meantime, the parties are to maintain the status quo while the court decides the Motion for Stay. That is, Petitioners are still required to "made no further use of the subscriber data" while the court decides the Motion for Stay.**

**Petitioners are also DIRECTED to file a Statement as to whether (and if so, how) the subpoenaed information has been used, to include whether other litigation has been filed in other districts. Such a Statement is also due by February 15, 2024.**

1

ER-115

**(JUDGE J. MICHAEL SEABRIGHT)(rlfh)**

**1:23-cv-00426-JMS-WRP Notice has been electronically mailed to:**

Joachim P. Cox     jcox@cfhawaii.com, ckipi@cfhawaii.com, clarsen-dias@cfhawaii.com, glawlor@cfhawaii.com, jdougherty@cfhawaii.com, nfarris@cfhawaii.com

Abigail Marie Holden     aholden@cfhawaii.com, ckipi@cfhawaii.com, clarsen-dias@cfhawaii.com, glawlor@cfhawaii.com, jdougherty@cfhawaii.com, nfarris@cfhawaii.com

Kerry S. Culpepper     kculpepper@culpepperip.com, nho@culpepperip.com

Jennifer A. Golinveaux     jgolinveaux@winston.com

Thomas J. Kearney     tkearney@winston.com

**1:23-cv-00426-JMS-WRP Notice will not be electronically mailed to:**

John Doe
Las Vegas, NV

2

ER-116

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN RE:<br><br>SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC. | CIV. NO. 23-00426 JMS-WRP<br><br>ORDER OVERRULING OBJECTIONS, ECF NO. 10, AND ADOPTING FINDINGS AND RECOMMENDATION TO QUASH 512(h) SUBPOENA, ECF NO. 8 |

## ORDER OVERRULING OBJECTIONS, ECF NO. 10, AND ADOPTING FINDINGS AND RECOMMENDATION TO QUASH 512(h) SUBPOENA, ECF NO. 8

### I.      INTRODUCTION

Before the court are Objections filed by Petitioners Voltage Holdings,

LLC; Millennium Funding, Inc.; and Capstone Studios Corp. (collectively

"Petitioners") to a Magistrate Judge's Findings and Recommendation to Grant

John Doe's Motion to Quash a Subpoena ("F&R") issued under 17 U.S.C.

§ 512(h), part of the Digital Millennium Copyright Act ("DMCA").  ECF No. 10.

After the Objections were filed, to address Petitioners' Objections on a full record,

the court ordered supplemental briefing from Cox Communications LLC and

CoxCom LLC (collectively, "Cox").  ECF No. 26.  Accordingly, Cox submitted a

ER-117

declaration, ECF No. 29, and Petitioners submitted a response to the declaration, ECF No. 30.

Having considered the F&R and the supplemental briefing, Petitioners' Objections are OVERRULED, and the August 31, 2023 F&R is ADOPTED.  The court determines that, because Cox acted as a conduit for the allegedly copyrighted material, Cox falls under the safe harbor in 17 U.S.C. § 512(a), and therefore § 512(h) does not authorize the subpoena issued here.[1]  The subpoena is quashed.

## II.    STANDARD OF REVIEW

When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673–74 (1980); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise.").

_____

[1]  The court rules on Petitioners' objections to the F&R and to the Hall Declaration without a hearing pursuant to Local Rule 7.1(c).

2

Under a de novo standard, this court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006); *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988). Although the court need not hold a de novo hearing, the court must arrive at its own independent conclusion about those portions of the magistrate judge's findings or recommendation to which a party objects. *United States v. Remsing*, 874 F.2d 614, 618 (9th Cir. 1989).

## III.   <u>BACKGROUND</u>

### A.   Proceedings Before the Magistrate Judge

This case concerns a subpoena issued by Petitioners to Cox pursuant to 17 U.S.C. § 512(h) (the "Subpoena"). ECF No. 1. Petitioners identified the IP addresses of certain Cox subscribers who had allegedly distributed copies of Petitioners' copyrighted film using peer-to-peer ("P2P") filesharing. ECF No. 1 at PageID.2. By issuing the Subpoena to Cox, Petitioners sought to discover these subscribers' identities using the IP addresses that Cox had assigned to them. *Id.* at PageID.2; ECF No. 1-1 at PageID.7. Cox gave its subscribers an opportunity to object to the disclosure of their identities, and one subscriber ("John Doe") did so. ECF No. 4. The Magistrate Judge construed John Doe's letter of objection as a

3

motion to quash, ECF No. 5, and recommended that the Subpoena be quashed because it was invalid under 17 U.S.C. § 512(h).  ECF No. 8 at PageID.54.

Petitioners objected under Local Rule 74.1(a), appealing to this court by making five specific Objections to the F&R.  ECF No. 10 at PageID.62-63.  But before reaching the specific issues on appeal, the court provides necessary context by setting forth the relevant technologies at issue and the DMCA's legal framework applicable to P2P filesharing.

**B.    The Technologies at Issue**

Two technologies are at issue—the assignment of IP addresses by an internet service provider ("ISP"), and P2P file sharing.

An IP address is a unique identifier assigned by an ISP to every computer having access to the internet, including computer servers that host websites.  *United States v. Werdene*, 883 F.3d 204, 207 (3d Cir. 2018).  Thus, each user of an ISP, and each computer hosting websites, has a unique IP address. "Many IP addresses are dynamic, meaning that they are assigned when a user connects to the internet, and they change from time to time."  *Hard Drive Prods., Inc. v. Does 1-90*, 2012 WL 1094653, at *1 n.2 (N.D. Cal. Mar. 30, 2012).

P2P filesharing systems allow users to disseminate files stored on their computers to other internet users, or "peers."  *In re Charter Commc'ns, Inc., Subpoena Enf't Matter*, 393 F.3d 771, 773 (8th Cir. 2005).  "By utilizing [P2P]

4

technology, an internet user can directly search the MP3 file libraries of other users, with no web site being involved because the transferred files are not stored on the computers of the ISP providing the P2P users with internet access." *Id.*  In the context of P2P filesharing, individual internet subscribers (each with a unique IP address assigned by their ISP) share files among themselves through the aid of a P2P system that helps each user locate other users seeking to distribute or receive the file in question.  *See id.*  In other words, P2P acts as a decentralized platform permitting individuals to share files without a third party acting as an intermediary.

## C.     The DMCA and P2P Filesharing

The DMCA authorizes copyright owners to seek a subpoena from the clerk of any United States District Court for identification of an alleged infringer. 17 U.S.C. § 512(h). [2]  Section 512(h)(2)(A) requires a request for subpoena to

---

[2]  17 U.S.C. § 512(h) reads in relevant part:

**(h) Subpoena to identify infringer.—**
    **(1) Request.**—A copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection.
    **(2) Contents of request.**—The request may be made by filing with the clerk—
        **(A)** *a copy of a notification described in subsection (c)(3)(A)*;
        **(B)** a proposed subpoena; and
        **(C)** a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title.
    **(3) Contents of subpoena.**—
        The subpoena shall authorize and order the service provider receiving the notification and the subpoena to expeditiously disclose to the copyright owner or person authorized by the copyright owner information sufficient to identify the

(continued . . . )

contain "a copy of a notification described in subsection (c)(3)(A)."  17 U.S.C. § 512(h)(2)(A).  In turn, subsection (c)(3)(A) of § 512 ("Subsection (c)(3)(A)") requires the notification to contain an "[i]dentification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled . . . ."  17 U.S.C. § 512(c)(3)(A).[3]

---

alleged infringer of the material described in the notification to the extent such information is available to the service provider.
   **(4) Basis for granting subpoena.**—*If the notification filed satisfies the provisions of subsection (c)(3)(A)*, the proposed subpoena is in proper form, and the accompanying declaration is properly executed, the clerk shall expeditiously issue and sign the proposed subpoena and return it to the requester for delivery to the service provider.

(Emphases added.)

[3] Subsection (c)(3)(a) reads:

 **(c) Information residing on systems or networks at direction of users.**—

   . . . .

   **(3) Elements of notification.**—
      **(A)** To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:
         **(i)** A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
         **(ii)** Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.
         **(iii)** *Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.*
         **(iv)** Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.
                                                      (continued . . . )

6

And § 512(h)(4) states that notice satisfying each part of Subsection (c)(3)(A) is a condition precedent to issuing a subpoena.  17 U.S.C. § 512(h)(4) ("Basis for granting subpoena.").  In other words, if a copyright holder does not or cannot fulfill the notice provision in Subsection (c)(3)(A), it cannot obtain a subpoena under § 512(h).

The DMCA creates four safe harbors for ISPs to avoid liability for infringing activity.  Under the reasoning of the Eighth and District of Colombia Circuits (and many district courts), these safe harbor provisions demonstrate that a § 512(h) subpoena may not be used to obtain the identities of P2P infringers from an ISP falling within safe harbor provision § 512(a).  *See Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1234 (D.C. Cir. 2003); *In re Charter*, 393 F.3d at 776; *see, e.g.*, *In re Subpoena issued to Birch Commc'ns, Inc.*, 2015 WL 2091735, at *5 (N.D. Ga. May 5, 2015); *In re Subpoena to Univ. of N.C. at Chapel Hill*, 367 F.Supp.2d 945, 951–956 (M.D.N.C. 2005).

---

**(v)** A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.
**(vi)** A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(Emphasis added.)

7

ER-123

The safe harbor in § 512(a) protects ISPs from liability for "transmitting, routing, or providing connections for" material through a system or network.[4]  17 U.S.C. § 512(a); *see also In re Charter*, 393 F.3d at 775 (observing that § 512(a) limits liability for ISPs that serve as a "mere conduit").  The safe harbors in § 512(b), (c), and (d) protect ISPs from liability for infringing material that users temporarily store in caches (§ 512(b)), on systems or networks (§ 512(c)), or at links (§ 512(d)) provided by the ISP.[5]  17 U.S.C. § 512(b)–(d).

_____

[4]  17 U.S.C. § 512(a) reads:

  **(a) Transitory digital network communications.**—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the provider's *transmitting, routing, or providing connections for,* material through a system or network controlled or operated by or for the service provider, or by reason of the intermediate and transient storage of that material in the course of such transmitting, routing, or providing connections, if—
     **(1)** the transmission of the material was initiated by or at the direction of a person other than the service provider;
     **(2)** the transmission, routing, provision of connections, or storage is carried out through an automatic technical process without selection of the material by the service provider;
     **(3)** the service provider does not select the recipients of the material except as an automatic response to the request of another person;
     **(4)** no copy of the material made by the service provider in the course of such intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of connections; and
     **(5)** the material is transmitted through the system or network without modification of its content.

(Emphasis added.)

[5]  The relevant portions of 17 U.S.C. § 512(b), (c), and (d) read:

  **(b) System caching**.—

(continued . . . )

8

The safe harbor in § 512(a) does not require ISPs to take down material upon receiving notice from a copyright owner—if an ISP is a "mere conduit," nothing is stored, and there is nothing to take down. *Cf. In re Charter*, 393 F.3d at 775. Conversely, though their wording differs, each of the safe harbors in § 512(b), (c), and (d) requires that, when notified of alleged infringement by a copyright owner, an ISP "respond[] expeditiously to remove, or disable access to, the material that is claimed to be infringing upon notification of claimed infringement." *Compare* 17 U.S.C. § 512(b)(2)(E), *with* 17 U.S.C. § 512(c)(1)(C) *and* 17 U.S.C. § 512(d)(3). These provisions within § 512 (b), (c), and (d) (called "notice and take down" provisions) all require that the notice from the copyright owner first meet the requirements of Subsection (c)(3)(A). In contrast, the "mere

---

**(1) Limitation on liability.**—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of *the intermediate and temporary storage of material on a system or network controlled or operated by or for the service provider . . . .*

**(c) Information residing on systems or networks at direction of users.**—
**(1) In general.**—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of *the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider . . . .*

**(d) Information location tools.**—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the provider *referring or linking users to an online location containing infringing material or infringing activity, by using information location tools, including a directory, index, reference, pointer, or hypertext link . . . .*

(Emphases added.)

9

conduit" safe harbor in § 512(a) does not contain any notice and take down provision referring to Subsection (c)(3)(A)—because there is no material to take down.

In considering whether a copyright owner can obtain the IP addresses of P2P infringers by subpoenaing an ISP under § 512(h), the Eighth Circuit and D.C. Circuit both reasoned that if the ISP acts as a "mere conduit" in cases of P2P filesharing, it is not possible for a copyright owner to satisfy the notice requirement in Subsection (c)(3)(A). *Verizon*, 351 F.3d at 1233 ("We conclude from both the terms of § 512(h) and the overall structure of § 512 that, . . . a [512(h)] subpoena may be issued only to an ISP engaged in storing on its servers material that is infringing or the subject of infringing activity."); *In re Charter*, 393 F.3d at 777 ("[B]ecause the parties do not dispute that [the ISP's] function was limited to acting as a conduit for the allegedly copyright protected material, we agree § 512(h) does not authorize the subpoenas issued here."). The Eighth Circuit explained that

> [t]he absence of the remove-or-disable-access provision (and the concomitant notification provision) [in § 512(a)] makes sense where an ISP merely acts as a conduit for infringing material—rather than directly storing, caching, or linking to infringing material—because the ISP has no ability to remove the infringing material from its system or disable access to the infringing material.

*In re Charter*, 393 F.3d at 776.

10

On this basis, both courts ruled that the ISP fell within the safe harbor in § 512(a) and the subpoenas over P2P filesharing were improper. *Verizon*, 351 F.3d at 1233; *In re Charter*, 393 F.3d at 777. In short, a § 512(h) subpoena cannot issue if the ISP is unable to locate and remove the infringing material, and an ISP acting as a mere conduit for allegedly infringing activity cannot do so. This court agrees with the reasoning of the Eighth and D.C. Circuits.

With this background, the court now turns to Petitioners' specific objections.

**D.     Petitioners' Objections to the F&R**

Petitioners appealed the Magistrate Judge's F&R to this court, making five Objections. ECF No. 10 at PageID.62–63. Cox submitted a Response to the Objections, ECF No.18, and Petitioners submitted a Reply, ECF No. 24.

Petitioners' Objections (1), (2) and (3) all address the Magistrate Judge's determination that the Subpoena was invalid under the DMCA. Along with their request for subpoena, Petitioners had submitted a list of IP addresses of Cox subscribers that allegedly participated in infringing activity, which Petitioners argued constituted adequate notice to Cox of the infringing activity under § 512(h) and Subsection (c)(3)(A). ECF No. 1-2 at PageID.9–16; ECF No. 10-1 at PageID.69. Relying on *Verizon* and *In re Charter*, the F&R found the notice was

11

inadequate, and recommended the subpoena be quashed.  ECF No. 8 at PageID.44–56.

First, Petitioners object to the F&R's conclusion that "Cox's role in disseminating the allegedly copyrighted material is confined to acting as a mere 'conduit' in the transfer of files through its network including the files at issue in this case."  ECF No. 10 at PageID.62.  They argue that in assigning IP addresses to the alleged P2P infringers, Cox was also referring or linking material under § 512(d), making their list of IP addresses valid notice of infringement.  ECF No. 10-1 at PageID.68–70.

Second, Petitioners object to the F&R's conclusion that the subpoena was not valid because "subpart 512(c)(3)(A)(iii) required Petitioners to identify in their 512(c)(3)(A) notice to Cox the infringing material that could be removed or access to which could be disabled, which Petitioners could not do because Cox's role in the alleged infringement was limited to providing the internet service that connected P2P subscribers . . . ."  ECF No. 10 at PageID.62.  This argument is essentially coterminous with Petitioners' Objection (1).

Third, Petitioners object to the F&R's conclusion that "when the infringement complained of is done through P2P file sharing such as through a BitTorrent protocol, the ISP can neither 'remove' nor 'disable access to' the

12

infringing material because that material is not stored on the ISP's servers." *Id.* at PageID.62–63.

Fourth, Petitioners object to "the F&R's factual conclusions that were not based upon any briefings of Doe or Petitioners," namely, the F&R's determination, based on an "appear[ance] from other cases and the circumstances of this case," that Cox acted as a "mere 'conduit' in the transfer of files through its network." ECF No. 8 at PageID.45; ECF No. 10 at PageID.63; ECF No. 10-1 at PageID. 74. Petitioners initially argued that the parties should have had the ability to submit briefing on the statutory interpretation issue. ECF No. 10-1 at PageID.74. In response, this court requested that Cox submit appropriate evidentiary proof that it falls (or does not fall) under 17 U.S.C. § 512(a), noting that a declaration by an appropriate corporate representative with personal knowledge of the relevant statutory factors would appear to be sufficient. ECF No. 26. Cox responded by filing a declaration by one of its officers stating that it was an internet service provider under 17 U.S.C. § 512(a) (the "Hall Declaration"). ECF No. 29. Petitioners objected to the declaration. ECF No. 30.

Finally, Petitioners object to the F&R's conclusion "that Petitioners be ordered to return and/or destroy any information obtained from the Subpoena, to maintain no further record of the information from the Subpoena, and to make no further use of the subscriber data obtained from the Subpoena." ECF No. 10 at

PageID.63.  They ask that any remedy apply only to the information of John Doe.

ECF No. 10-1 at PageID.74–75.

The court now turns to each of these points on appeal.

## IV.   DISCUSSION

### A.   Petitioners' Objections (1), (2), and (3)

Reading all the statutory provisions in concert and applying them to the alleged P2P infringement at issue, this court reaches the same conclusion as the F&R: The 17 U.S.C. § 512(h) subpoena is invalid because the notice provisions of 17 U.S.C. § 512(c)(3)(A) are not satisfied.

The F&R reasoned, following *Verizon* and *In re Charter*, that the structure of the DMCA precludes a copyright owner from requesting a § 512(h) subpoena for an ISP acting as a conduit for filesharing.  ECF No.8 at PageID.52–54.  Having determined that Cox—like the ISPs in *Verizon* and *In re Charter*—was a "mere conduit" for infringing material under § 512(a), the F&R decided that no proper notice could be issued, because there is no notice and take down provision in § 512(a).  ECF No. 8 at PageID.57.  Therefore, the Subpoena was invalid.  *Id.*

On appeal, Petitioners concede that Cox acted as a "conduit" for P2P infringement under the safe harbor in § 512(a), but argue that Cox is not a "*mere conduit*" because it *also* falls under § 512(d).  Petitioners claim that, in assigning IP addresses to P2P infringers, Cox "refer[s] or link[s]" users to infringing material

14

using "information location tool[s]."  ECF No.10-1 at PageID.68.  They argue that the IP addresses Cox assigns to users like John Doe are *both* "information location tool[s]" *and* "online location[s] containing infringing material" for the purposes of § 512(d).  ECF No. 24 at PageID.125–126.  As explained, the § 512(d) safe harbor does have a notice and take down provision, though the § 512(a) safe harbor does not.  If the ISP falls under § 512(a) *and* § 512(d), Petitioners argue, the list of IP addresses that Petitioners attached to their request for subpoena could constitute adequate notice under Subsection (c)(3)(A) for infringement under § 512(d).  In other words, the list of IP addresses of alleged infringers *is* the "infringing material" or "material that is . . . the subject of infringing activity" that Petitioners wanted Cox to take down under § 512(d), because users' IP addresses "link" them to each other within the P2P system.  ECF No. 10-1 at PageID.72.  Petitioners further contend that *Verizon* and *In re Charter* never addressed the question of whether P2P infringement fell under § 512(d) because the argument was never raised.  ECF No. 10-1 at PageID.70.

In support of this argument, Petitioners claim that simply by typing a website's IP address into an internet search bar, a user can connect to that website.  ECF No. 24 at PageID.128.  Under this argument, the IP address therefore functions as a link or reference of a user to a website.  Therefore, Petitioners also claim that it is possible for Cox to stop its users' infringing activity by disabling

15

infringers' IP addresses, for example, through null routing.  ECF No. 10-1 at

PageID.70 n.5, 73.

Petitioners are incorrect.  Simply because users can use an IP address

to access a website does not mean that IP addresses necessarily function as links or

references in P2P filesharing.[6]  In typical P2P filesharing, individual internet

subscribers share files among themselves through the aid of a P2P system, "with

no website being involved." *In re Charter*, 393 F.3d at 773.  Although each

internet user sharing files over P2P has an IP address, it is the P2P system that

enables users to locate peers who are also seeking to distribute or receive files.[7]

---

[6]  Although the DMCA does not define "referring or linking," § 512(d) (which gives a safe harbor to ISPs that "refer[] or link[]" users to infringing material) has been described as "cover[ing] *active assistance* to users." *A&M Recs., Inc. v. Napster, Inc.*, 2000 WL 573136, at *5 (N.D. Cal. May 12, 2000) (emphasis added).  Thus, "referring or linking" requires more than just the assignment of an IP address to a user through automatic operations—it requires providing some degree of "active assistance" to users in locating online resources. *Cf. id.*  The legislative history of the DMCA supports this position.  The Committee Reports describe information location tools as being created, not by automatic processes occurring below the user level, but by "online editors and catalogers." H.R. Rep No. 105-551, pt. 2, at 58 (1998) ("Information location tools are essential to the operation of the internet . . . Directories such as Yahoo!'s usually *are created by people visiting sites to categorize them*.  It is precisely the *human judgment and editorial discretion* exercised by these cataloguers which makes directories valuable.") (emphases added); S. Rep No. 105-190, at 49 (1998) (same).

[7]  The P2P system that John Doe and others allegedly used is BitTorrent.  ECF No. 1-3 at PageID.18.  The Ninth Circuit explained the operation of BitTorrent in detail in *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1026–28 (9th Cir. 2013).  Importantly, "[t]here is no central repository of torrent files . . . ." *Id.* at 1028.  In order to enable users to locate files, BitTorrent employs both client software on a user's computer and "trackers," servers run by various independent operators that help users seeking to download particular files locate peers who have those files available to distribute. *Id.*  These trackers "serve many of the functions of an indexing server" for torrents. *Id.* at 1027.  Thus, while one BitTorrent user may download files from other users, all of whom happen to have IP addresses, the trackers and the client

(continued . . . )

16

The most fitting description of what Cox did in assigning John Doe an IP address is that Cox "provid[ed] connections for" the alleged infringement under § 512(a). Cox assigned Doe an IP address, and routed traffic that allegedly contained a copyrighted file to that IP address using "automatic technical processes." 17 U.S.C. § 512(a). If an ISP assigning an IP address is both "providing connections for" infringement under (a) and "referring or linking" to infringing material under (d)—as Petitioners contend—Congress would not have created two separate safe harbors. *See GCIU-Emp. Ret. Fund v. MNG Enterprises, Inc.*, 51 F.4th 1092, 1097 (9th Cir. 2022) (Courts "presume that Congress did not intend any part of [a] statute to be "superfluous, void, or insignificant") (internal quotations omitted); *cf. Verizon*, 351 F.3d at 1234 ("Section 512 creates four safe harbors, *each of which* immunizes ISPs from liability for copyright infringement *under certain highly specialized conditions*.") (emphases added).

Furthermore, IP addresses do not fit comfortably within § 512(d)'s description of an "information location tool." Section 512(d) describes an "information location tool" as "including a directory, index, reference, pointer, or hypertext link" that is used to "refer[] or link[] users to an online location containing infringing material or infringing activity." 17 U.S.C. § 512(d). The

---

software accomplish the indexing, referencing, and linking functions necessary to locate and distribute files—the ISP is not involved. *Cf. id.* at 1026–1028; *see also, e.g.*, *HB Prods., Inc. v. Faizan*, 603 F. Supp. 3d 910, 917–19 (D. Haw. 2022) (describing how BitTorrent operates).

17

prototypical "information location tool" is a search engine.  *See, e.g., Capitol Recs., Inc. v. MP3tunes, LLC,* 821 F. Supp. 2d 627, 639 (S.D.N.Y. 2011) ("Subsection 512(d) governs information location tools, e.g., search engines."). An IP address does not, in itself, constitute a "directory, index, reference, pointer, or hypertext link."

Petitioners' argument that Cox may "remove or disable access to" the infringing material, for example, by using null routing, also fails.  ECF No. 10-1 at PageID.73.  The F&R correctly reasons, following *Verizon*, that in the text of the DMCA, Congress considered disabling access to infringing material and disabling access to a subscriber's account to be distinct remedies.  *Verizon*, 351 F.3d at 1235 (comparing 17 U.S.C. §512(j)(1)(A)(i) (authorizing injunction restraining ISP "from providing access to infringing material") with 17 U.S.C. §512(j)(1)(A)(ii) (authorizing injunction terminating a subscriber's account)).  As Petitioners acknowledge, null routing effectively terminates a network connection.  ECF No. 10-1 at PageID.70.  So, Cox has no meaningful ability to satisfy the remedial requirements of the § 512(d) safe harbor short of terminating the user's connection, which is a harsher remedy than the DMCA authorizes.  If the assignment of IP addresses to P2P infringers falls under § 512(d), Cox would have no ability to avoid liability for monetary relief for P2P infringement in suits like Petitioners'

18

because although "notice" by copyright holders would be possible, "take down" by Cox would not.  Petitioners' construction of the statute is therefore implausible.

The F&R suggests that Petitioners can seek Doe's identity through other avenues including a John Doe lawsuit.  ECF No. 8 at PageID.56.  Petitioners respond that it may be prohibitively difficult for them to file a John Doe lawsuit after the Ninth Circuit's decision in *Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142, 1145 (9th Cir. 2018).  ECF No. 24 at PageID.129–130.  But even assuming for the sake of argument that Petitioners are correct, it is simply not relevant to the court's interpretation of the DMCA.  *Cf. Verizon,* 351 F.3d at 1238 ("It is not the province of the courts . . . to rewrite the DMCA in order to make it fit a new and unforeseen internet architecture [P2P filesharing], no matter how damaging that development has been to [copyright holders].").

## B.    Petitioners' Objections (4) and (5)

Petitioners' Fourth Objection is that the F&R should not have determined that Cox acted as a "mere conduit" without evidence from the parties.  ECF No. 10 at PageID.73–74.  In response to the court's request (*see, e.g.*, Federal Rule of Civil Procedure 72(b)(3), which allows this court to "receive further evidence"), Cox has supplemented the record with a declaration by its Chief

Compliance and Privacy Officer, Amber Hall.[8]  ECF No. 29.  Hall attests that Cox

"is engaged in transmitting, routing, or providing connections for" material only as

described in § 512(a).  ECF No. 29 at PageID.141.  Petitioners argue that Hall does

not have the requisite technical expertise to attest to the facts in the declaration,

that her statements are not credible because they conflict with other public

statements by Cox, and that her statements are impermissible legal conclusions.

ECF No. 30 at PageID.144–146.

Petitioners' challenge to Hall's credibility based on her job title, Chief

Compliance and Privacy Officer, is unpersuasive.  ECF No. 30 at PageID.147.

Hall attests that as Chief Compliance and Privacy Officer, she is "responsible for

understanding how Cox's Internet service product operates in connection with the

[functionality at issue]."  ECF No. 29 at PageID.140.  Further, "personal

knowledge of the business entity's activities may be inferred to corporate officers."

*Envy Hawaii LLC v. Volvo Car USA LLC*, 2019 WL 5865912, at *6 (D. Haw. Nov.

8, 2019); *see also Siebert v. Gene Sec. Network, Inc.*, 75 F. Supp. 3d 1108, 1115

(N.D. Cal. 2014) (holding that an employee may testify about information she is

---

[8]  Within their fourth objection, Petitioners also object to the F&R sua sponte analyzing whether the Subpoena was valid under 17 U.S.C. §512(h) without John Doe having raised that argument in his pro se motion.  The Magistrate Judge was within his discretion to do so, and to the extent that objection was based on the lack of briefing, Petitioners have now had ample opportunity to submit briefing on these issues, which the court has reviewed de novo.  *See* ECF Nos. 10 & 24; *see also United States v. Ochoa-Sanchez*, 676 F.2d 1283, 1288 (9th Cir. 1982) ("The trial court acts in its discretion in deciding whether to quash a subpoena.").

20

required to be aware of in the course of her employment); *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000) (holding that the declarant's five-year tenure as manager lent support to his claim of personal knowledge of industry practice). And it is insufficient for Petitioners to simply claim that Ms. Hall is not credible solely because of her job title (i.e., because she is not Chief Technology or Information Officer).

Petitioners' argument that Ms. Hall's declaration conflicts with public statements by Cox that Cox filters out spam email, viruses, botnets, and malware over its network also fails. ECF No. 30 at PageID.146–147. The fact that Cox refuses to transmit certain types of malicious files, or blocks certain ports, does not amount to an admission that Cox "modifi[es] the content" of transmissions through its network in a way that would remove Cox from the safe harbor in § 512(a). In other words, Cox's filtering or blocking certain transmissions does not mean Cox is not a "mere conduit" in the context of P2P filesharing.

Last, Petitioners' characterization of Ms. Hall's statements as "legal conclusions" is incorrect. Ms. Hall's use of the language of § 512(a) in her description of Cox's operations does not convert her factual statements into an impermissible legal conclusion.

Finally, turning to Petitioners' Fifth Objection, given that the Subpoena was inappropriately issued under § 512(h), it must be quashed as to all

21

Defendants.[9]  As the F&R found, because there was no statutory basis for Petitioners to receive any of the information they requested, Petitioners must destroy and make no further use of all of the information they received.  ECF No. 8 at PageID.57–58.

## V.     CONCLUSION

The court OVERRULES Petitioners' Objections, ECF No. 10, and ADOPTS the Magistrate Judge's August 31, 2023 Finding and Recommendation to quash Petitioners' Subpoena, ECF No. 8.  Petitioners' 512(h) Subpoena is QUASHED.  No later than one week after the date of this Order, Petitioners are ordered to return and/or destroy any information derived from the Subpoena, to maintain no further record of the information obtained the Subpoena, and to make no further use of the subscriber data obtained from the Subpoena.

---

[9] Finding that the Subpoena was not validly issued, the Court does not address John Doe's pro se arguments that (1) the infringer was someone using his family's unprotected Wi-Fi connection and that (2) John Doe does not have the ability or resources to travel to address this court (John Doe appears to be located in Las Vegas).  ECF No. 4.  Furthermore, as John Doe might be alluding to, the court need not decide whether the court has personal jurisdiction over John Doe (or whether he has waived it).  In this regard, some courts have addressed the issue of personal jurisdiction and venue for recipients of a § 512(h) subpoena, with one court reasoning that "[although] Section 512(h) says that the copyright owner or agent can seek a subpoena from any district court, [it] does not say that every district court has [personal] jurisdiction to issue a subpoena compelling action from persons outside the district." *In re Subpoena to Univ. of N.C. at Chapel Hill*, 367 F.Supp.2d at 957 (quashing a subpoena seeking to compel discovery outside the court's district); *see also In re DMCA Section 512(h) Subpoena to Facebook, Inc.*, 2015 WL 12805630, at *8 (S.D. Tex. Nov. 18, 2015) (affirming Magistrate Judge's recommendation to deny a motion to compel for improper venue given Facebook's lack of nexus to the Southern District of Texas).

22

IT IS SO ORDERED.



 /s/ J. Michael Seabright

J. Michael Seabright
United States District Judge

DATED:  Honolulu, Hawaii, January 30, 2024.

*In re: Subpoena of Internet Subscribers of Cox Communications, LLC and CoxCom, LLC*, Civ. No. 23-00426 JMS-WRP, Order Overruling Objections, ECF No. 10, and Adopting Findings and Recommendation to Quash 512(h) Subpoena, ECF No. 8

23

CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:   (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Petitioners
Voltage Holdings, LLC
Millennium Funding, Inc., and
Capstone Studios Corp.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re Subpoena | Case No.: 1:23-cv-00426-JMS-WRP (Copyright) |
| Internet subscribers of Cox Communications, LLC and CoxCom LLC | PETITIONERS' RESPONSE TO DECLARATION OF AMBER HALL; CERTIFICATE OF SERVICE |

## PETITIONERS' RESPONSE TO DECLARATION OF AMBER HALL

Cox failed to "file appropriate evidentiary proof that it is…an internet service provider under 17 U.S.C. § 512(a)…" as ordered by the Court.  Order [Doc. #26], p.3.  Rather, Cox merely submitted a three-page declaration of Amber Hall ("Ms. Hall") replete with legal conclusions and devoid of any facts besides her job title and the relationship between Cox Communications, Inc. and CGI Corporate Services,

20-023Ga

LLC.  As shown below, paragraph 4 of Ms. Hall's declaration merely parrots the

language of 17 U.S.C. § 512(a):

| Paragraph 4 of Decl. of Amber Hall [Doc. #29] | §512(a) excerpt |
|---|---|
| Cox, as an Internet service provider, is engaged in transmitting, routing, or providing connections for, material through its system and network only under the following conditions, and does not engage in any intermediate or transient storage of such material except under the following conditions:<br><br>(1) the transmission of the material was initiated by or at the direction of a person other than Cox;<br>(2) the transmission, routing, provision of connections, or storage is carried out through an automatic technical process without selection of the material by Cox;<br>(3) Cox does not select the recipients of the material except as an automatic response to the request of another person;<br>(4) no copy of the material made by Cox in the course of such intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of | A service provider … transmitting, routing, or providing connections for, material through a system or network controlled or operated by or for the service provider, or by reason of the intermediate and transient storage of that material in the course of such transmitting, routing, or providing connections, if—<br>(1) the transmission of the material was initiated by or at the direction of a person other than the service provider;<br>(2) the transmission, routing, provision of connections, or storage is carried out through an automatic technical process without selection of the material by the service provider;<br>(3) the service provider does not select the recipients of the material except as an automatic response to the request of another person;<br>(4) no copy of the material made by the service provider in the course of such intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for |

2

20-023Ga

| | |
|---|---|
| connections; and<br>(5) the material is transmitted through the system or network without modification of its content. | the transmission, routing, or provision of connections; and<br>(5) the material is transmitted through the system or network without modification of its content. |

Ms. Hall's declaration is devoid of *any* facts supporting a conclusion that Cox is a conduit provider per §512(a).  For example, Ms. Hall does not describe how long Cox maintains copies of material – a key factor for determining whether Cox maintained a copy for a period not longer than reasonably necessary for the transmission, routing, or provision of connections in compliance with §512(a)(4).  *See Ellison v. Robertson*, 357 F.3d 1072, 1081 (9th Cir. 2004) (affirming District Court's conclusion that the limited period of days AOL stored infringing material satisfied § 512(a)).  Ms. Hall also fails to provide any facts reconciling her declaration that "(5) the material is transmitted through the system or network without modification of its content", Decl. of Hall at ¶4, with Cox's public disclosures that it scans incoming email traffic to filter out spam and blocks access to certain websites with her statement that.  *See*

"Your Privacy Rights as a COX Customer and Related Information Notice to Cox Residential Customers - Email and Online Communications"*,* June 15, 2023, https://www.cox.com/aboutus/policies/annual-privacy-notice.html#security    [last accessed on 12/4/2023] ("we generally scan incoming and outgoing email traffic

3

20-023Ga

electronically to identify and filter likely spam and malicious email...”); *see also* Cox Internet Service Disclosures - C. Network Practices, Aug. 11, 2023, https://www.cox.com/aboutus/policies/internet-service-disclosures.html [last accessed on 12/4/2023] (Cox describes blocking of botnets, viruses, phishing sites, malware, and certain ports).  Even one of the only two facts Ms. Hall does disclose, that she is employed as Chief Compliance and Privacy Officer, fails to establish any foundation for her legal conclusion.  This type of position (in comparison to Chief Technology or Information Officer) does not imply the level of detailed understanding of the technical workings of data packet flow through Cox's network supportive of her legal conclusions.  Ms. Hall's declaration is an example of "[c]onclusory affidavits that do not affirmatively show personal knowledge of specific facts" that the Ninth Circuit has deemed "insufficient".  *Shakur v. Schriro*, 514 F.3d 878, 889-90 (9th Cir. 2008) (Ninth Circuit criticized District Court's reliance on affidavit of employee commenting on different area from which she specialized ("Pastoral Administrator rather than an official specializing in food service or procurement")).  Accordingly, Cox has failed to provide any evidentiary proof that it is a conduit per § 512(a)).

Ms. Hall's declaration also violates L.R. 7.5, which requires that "Affidavits and declarations shall contain only facts, shall conform to the requirements of Fed. R. Civ. P. 56(c)(4) and 28 U.S.C. § 1746, and shall avoid conclusions and argument."

4

20-023Ga

The only facts in Ms. Hall's declaration are the relationship between Cox Communications, Inc. and CGI Corporate Services, LLC and her job title.  Courts routinely refuse to consider legal conclusions in declarations such as Ms. Hall's.  *See Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1136 n.2 (9th Cir. 2009) (rejecting declaration that contained only mere legal conclusions); *Turner v. Haw. First, Inc.*, 903 F. Supp. 2d 1037, 1048 n.11 (D. Haw. 2012) ("Mr. Turner's declaration also includes repeated legal and factual conclusions…The Court is not obliged to credit these conclusory statements, and does not do so."); *United States v. Novelli*, 381 F. Supp. 2d 1125, 1131 (C.D. Cal. 2005) ("To the extent that any of the contents of these declarations are legal conclusions, they will not be considered by the Court"); *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1131 (S.D. Cal. 2022) ("the Court has considered the admissible factual evidence but disregarded the improper legal conclusions…").  Accordingly, Petitioners respectfully request the Court to not consider enumerated paragraph 4 of Ms. Hall's declaration that are mere legal conclusions.

Assuming *arguendo* that the Court considers the legal conclusions in Ms. Hall's declaration, Petitioners point out that Cox failed to provide evidence refuting Petitioners' arguments that Cox provides additional services to its subscribers besides the conduit features described in §512(a) such as providing IP addresses for

5

subscribers and hotspot routers for public WiFi in subscriber homes.  Petitioners maintain the other arguments in their objections [Doc. #10] to the F&R.

## Conclusion

Cox's declaration of Ms. Hall fails to provide evidence that it is a conduit pursuant to §512(a).  Accordingly, Petitioners respectfully request that the Court sustain their objections, reject the F&R and overrule Doe's objection to the subpoena.  Alternatively, Petitioners request that the Court only partially quash the subpoena with respect to Doe's identification information so that Petitioners can proceed with legal relief against infringers of their Works discovered in response to the subpoena.

DATED: Kailua-Kona, Hawaii, December 5, 2023.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper
Attorney for Petitioners

20-023Ga

6

COX FRICKE LLP
A LIMITED LIABILITY LAW PARTNERSHIP LLP
JOACHIM P. COX                        7520-0
   jcox@cfhawaii.com
ABIGAIL M. HOLDEN                8793-0
   aholden@cfhawaii.com
800 Bethel Street, Suite 600
Honolulu, Hawaiʻi 96813
Telephone:  (808) 585-9440
Facsimile:   (808) 275-3276

WINSTON & STRAWN LLP
JENNIFER A. GOLINVEAUX
   JGolinveaux@winston.com
THOMAS J. KEARNEY
   TKearney@winston.com
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone:  (415) 591-1000

Attorneys for Non-Party
COXCOM LLC

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| IN RE:<br><br>SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC, | CASE NO.: 1:23-cv-00426-JMS-WRP<br><br>DECLARATION OF AMBER HALL IN RESPONSE TO ORDER REQUESTING SUPPLEMENTAL EVIDENCE (DKT. NO 26); CERTIFICATE OF SERVICE<br><br>Honorable J. Michael Seabright |

DocuSign Envelope ID: D3D46DB4-6938-48F6-A4E6-FAB4AD9BE58B

## DECLARATION IN RESPONSE TO ORDER
## REQUESTING SUPPLEMENTAL EVIDENCE

I, Amber Hall, submit this declaration pursuant to 28 U.S.C. § 1746 in response to the Court's November 8, 2023 Order Requesting Supplemental Evidence, Docket No. 26 in the above-titled case.

1.    I have been employed by CCI Corporate Services, LLC, a wholly owned subsidiary of Cox Communications, Inc. ("Cox Communications") continuously since August 2021, and am currently its Chief Compliance and Privacy Officer.  I have personal knowledge of the facts in this declaration.

2.    CoxCom LLC ("CoxCom") is a wholly owned subsidiary of Cox Communications.[1] CoxCom and Cox Communications (jointly, "Cox") provide cable and Internet service to consumers and businesses across the United States.

3.    In my role as Chief Compliance and Privacy Officer, I am primarily responsible for various compliance advice and activities, including those related to processing of copyright notices. In connection with this role, I am responsible for understanding how Cox's Internet service product operates in connection with the below described functionality.

---

[1] Petitioners' Subpoena was directed to CoxCom LLC and "Cox Communications, LLC." As CoxCom explained previously, Cox Communications, LLC is not an entity within the Cox family and appears to have been erroneously named in this matter. *See* Dkt. No. 18. Petitioners do not dispute that Cox Communications, LLC was named in error. *See* Dkt. No. 24 ("Petitioners' Reply in Support of Objections").

2

DocuSign Envelope ID: D3D46DB4-6930-48F6-A4E6-FAB4AD9BE562

4.  Cox, as an Internet service provider, is engaged in transmitting, routing, or providing connections for, material through its system and network only under the following conditions, and does not engage in any intermediate or transient storage of such material except under the following conditions:

(1) the transmission of the material was initiated by or at the direction of a person other than Cox;

(2) the transmission, routing, provision of connections, or storage is carried out through an automatic technical process without selection of the material by Cox;

(3) Cox does not select the recipients of the material except as an automatic response to the request of another person;

(4) no copy of the material made by Cox in the course of such intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of connections; and

(5) the material is transmitted through the system or network without

modification of its content.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on ____11/29/2023____ at Atlanta, Georgia.


DocuSigned by:

*Amber Hall*

0547C7B97CAD459...

Amber Hall

4

ER-149

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN RE:<br><br>SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC. | CIV. NO. 23-00426 JMS-WRP<br><br>ORDER REQUESTING SUPPLEMENTAL EVIDENCE |

## <u>ORDER REQUESTING SUPPLEMENTAL EVIDENCE</u>

Presently before the court are Objections by Petitioners Voltage Holdings, LLC; Millennium Funding, Inc.; and Capstone Studios Corp. (collectively "Petitioners") to a Magistrate Judge's Findings and Recommendation to Grant John Doe's Motion to Quash 512(h) Subpoena ("F&R"). ECF No. 10.

Among other objections, Petitioners take issue with the F&R's factual finding that "Cox's role in disseminating the allegedly copyrighted material is confined to acting as a mere 'conduit' in the transfer of files through its network . . . ." ECF No. 8 at PageID.45. The F&R's rationale for that finding was not based on evidence, but was an "appear[ance] from other cases and the circumstances of this case." *Id.* Petitioners argue that the Magistrate Judge made

such a finding even though "[n]obody argued or submitted any evidence asserting Cox is a mere conduit provider." ECF No. 10-1 at PageID.66. Petitioners then ask the court to make a factual finding that the internet protocol ("IP") addresses provided by Cox constitute "information location tools" within the meaning of 17 U.S.C. § 512(d). *See* ECF No. 10-1 at PageID.68–70. And CoxCom LLC's Response to the Objections takes issue with Petitioners' proposed factual finding that Cox's IP addresses are § 512(d) information location tools, and argues that in any event Petitioners' position "does not withstand scrutiny." ECF No. 18 at PageID.108.

Such a factual finding—that Cox acts as a "mere conduit" in transferring files through its network—is potentially important. If the court follows the prevailing precedent discussed in *Recording Industry Association of America v. Verizon Internet Services*, 351 F.3d 1229, 1233–36 (D.C. Cir. 2003) and *In re Charter Communications, Inc., Subpoena Enforcement Matter*, 393 F.3d 771, 777 (8th Cir. 2005), then a finding that Cox in this instance fits within 17 U.S.C. § 512(a) as a provider that "transmit[s], route[s], or provide[s] connections for material" (i.e., acts as a "mere conduit") would mean that Petitioner's 512(h) subpoena is invalid—and the court would then overrule that objection and adopt the F&R. But a finding that Cox falls within 17 U.S.C. § 512(b), (c), or (d) would

2

mean that the 512(h) subpoena is proper.  *See, e.g.*, *In re Subpoena to Univ. of N.C. at Chapel Hill*, 367 F. Supp. 2d 945, 952–54 (M.D.N.C. 2005).

Accordingly, so that the court may address Petitioners' Objections to the F&R on a full record, the court requests that CoxCom, LLC file with the court appropriate evidentiary proof that it is—or is not—an internet service provider under 17 U.S.C. § 512(a) for purposes of the subpoena issued in this matter.  *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C) (allowing district judge to receive further evidence in resolving objection to F&R).  A declaration by an appropriate corporate representative with personal knowledge of the relevant statutory factors would appear to be sufficient.  Such a declaration or other evidence is due by **November 22, 2023**.  Petitioners may file a response to CoxCom, LLC's submission by **December 6, 2023**.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 8, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*In re: Subpoena of Internet Subscribers of Cox Communications, LLC and CoxCom, LLC*, Civ. No. 23-00426 JMS-WRP, Order Requesting Supplemental Evidence

<div align="center">3</div>

CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:  (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Petitioners
Voltage Holdings, LLC
Millennium Funding, Inc., and
Capstone Studios Corp.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re Subpoena<br><br>Internet subscribers of Cox Communications, LLC and CoxCom LLC | **Case No.:** 1:23-mc-263-JMS-WRP<br>(Copyright)<br><br>PETITIONERS' REPLY IN SUPPORT OF OBJECTIONS; CERTIFICATE OF SERVICE |

**PETITIONERS' REPLY IN SUPPORT OF THEIR OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO GRANT JOHN DOES' MOTION TO QUASH**

Pursuant to the Court's order [Doc. #23] of Oct. 2, 2023, Doc. #23, Petitioners file their Reply to the Response [Doc. #18] of Cox.

**I.     Introduction.**

20-023Ga

ER-153

Cox states that Petitioners' first objection to the F&R is that "Cox acted as a "conduit" in the transfer…"  Response at p.4.  However, Petitioners objection is to the F&R's incorrect conclusion that Cox is *merely* a conduit.  Cox does not dispute Petitioners' assertion that it provides additional services to its subscribers besides the conduit features described in 17 U.S.C. §512(a) such as providing IP addresses for subscribers and hotspot routers for public WiFi in subscriber homes.  Cox does not dispute Petitioners' assertion that Cox can null route IP addresses where infringing activity is ongoing to stop the infringement.

Cox does not dispute Petitioners' assertion that the F&R failed to consider 17 U.S.C. §512(d)'s information location tools when analyzing whether the notification to Cox complied with §512(c)(3)(A) to determine validity of the subpoena.

Cox does not refute Petitioners' argument that this Court should adopt the reasoning of Judge Murphy's dissent in *In re Charter Commc'ns, Inc., Subpoena Enf't Matter*, 393 F.3d 771, 781 (8th Cir. 2005) with respect to the *separate* issue of whether a DMCA subpoena can be issued to conduit providers.

Cox also does not refute Petitioners' argument that the F&R's conclusion that Petitioners be ordered to destroy all materials received in response to the subpoena is an extreme remedy not requested by any of the parties that would prevent

20-023Ga

Petitioners from taking legal action against piracy websites used by Cox's subscribers[1].

Ultimately, the main dispute between Petitioners and Cox is whether the IP addresses Cox provides to its subscribers are information location tools. However, in view of Cox's acknowledgement that the IP address it provides to its subscribers specifies an online location, response at pp. 6-7, the Court should answer this question in Petitioners' favor because the IP addresses provided by Cox refer to (and are) the "online location containing infringing material or infringing activity" as provided in §512(d) and Cox connects P2P users to this online location.

## II.    The information location tool provision of §512(d) applies to Cox.

Because Cox provides information locations tools (IP addresses) and refers or links P2P users to these online locations, the underlying notification sent to Cox, and thus the DMCA subpoena itself were valid. §512(d) limits liability:

> "…for infringement of copyright by reason of the provider *referring or linking* users *to an online location containing infringing material or infringing activity*, by using *information location tools*, including a directory, index, reference, pointer, or hypertext link…" (emphasis added)

### A.  The IP addresses provided by Cox are online locations.

---

[1] Example websites disclosed by Cox's subscribers include "watchmovierulz" and "piratebay".

20-023Ga

Cox does not dispute that the IP addresses Cox provide specify online locations. *See* Response at pp. 6-7 (citing Petitioners brief where they state that IP addresses are online locations).

**B. The online locations contained infringing material or activity.**

Cox does not refute Petitioners arguments that the notification shown in Ex. "2" [Doc. #1-3] to the Application specified IP address 70.161.172.138 as the location of infringing material or activity.  It should be noted that §512(d) does not require that the online location be different from the information location tool (directory, index, reference, pointer or hypertext link).  Cox's IP address 70.161.172.138 can be the online location and the information location tool.  Even concluding that the infringing files reside on Cox's subscribers' computers, the *infringing material or infringing activity* is online by Cox's IP address.

**C. Cox refers or links users to the online location.**

Cox argues that the F&R recognizes that "linking or referring" to an IP address is done by the providers and users of the P2P system rather than Cox.  *See id.* at p.7.  Not true.  The F&R states that "Cox merely provides the internet that connects two users so that they are able to exchange allegedly infringing material on their personal computers."  F&R at p.4.  To be clear, Petitioners disagree with the F&R's implication that connecting is *the only* service Cox provides.  However, even the F&R recognizes the common sense conclusion that Cox *connects* the two users.

4

20-023Ga

'Link' and 'connect' are synonyms. *See link, Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/link (last accessed on Oct. 9, 2023), *link* (defining link as to couple or connect), *Merriam-Webster Thesaurus*, https://www.merriam-webster.com/thesaurus/link (last accessed on Oct. 9, 2023) (indicating connect as synonym to link).

And Cox concedes that it transmits data through its system at the direction of third party users per §512(a).  *See* Response at p.7.   Petitioners do not believe that any Court has imparted the volitional conduct requirement to the linking §512(d). Accordingly, Cox is linking the users to the online location when it transmits the data.

### D.   The IP addresses Cox provides are information tools.

Cox's argument that the IP address is not an information location tool defies common English language and basic network fundamentals.  Petitioners dispose of this argument with a simple example.  As of Oct. 8, 2023, this Court's website www.hid.uscourts.gov is located at IP address 199.107.17.79.

20-023Ga

5

```
C:\Users\Kerry>ping www.hid.uscourts.gov

Pinging www.hid.uscourts.gov [199.107.17.79] with 32 bytes of data:
Reply from 199.107.17.79: bytes=32 time=118ms TTL=47
Reply from 199.107.17.79: bytes=32 time=118ms TTL=47
Reply from 199.107.17.79: bytes=32 time=117ms TTL=47
Reply from 199.107.17.79: bytes=32 time=119ms TTL=47

Ping statistics for 199.107.17.79:
    Packets: Sent = 4, Received = 4, Lost = 0 (0% loss),
Approximate round trip times in milli-seconds:
    Minimum = 117ms, Maximum = 119ms, Average = 118ms

C:\Users\Kerry>
```

By entering the information location tool 199.107.17.79 in a website browser, a user can visit this Court's website (locate this Court's website information).



*(screenshot showing Court website accessible by 199.107.17.79)*

6

20-023Ga

Accordingly, the IP address is more than just a street address as argued by Cox. As shown by the screenshot above, the IP address is the link to this Court's website. Of course, the more common manner for accessing this Court's website is by entering the hypertext markup link (HTML) www.hid.uscourts.gov. But as shown above, there is no practical difference because both locate the same information (this Court's website). And §512(d) explicitly includes "hypertext link" as an example of an information location tool.

Cox attempts to argue against applicability of §512(d) by pointing out that it does not store the transferred files or P2P files on its servers. Response at p.7. But in the context of §512(d), it is irrelevant whether the infringing activity or material is taking place or stored on Cox's servers. The issue is whether Cox provides the *information location tool*. It is undisputed that Cox provides the IP addresses. Accordingly, the information locations tool of §512(d) applies to Cox.

### III.   Caselaw and technology have changed in the 20 years since the DC Circuit's Verizon decision.

Cox characterizes Petitioners' argument that the case law has developed in the last few decades as "puzzling". Response at p.8. However, Cox's own argument in its previous paragraph that Petitioners could use a John Doe lawsuit to obtain the subscriber information solves Cox's puzzle. Per the Ninth Circuit's decision of *Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142, 1145 (9th Cir. 2018), a John Doe

<div align="center">7</div>

20-023Ga

lawsuit complaint must allege "something more to create a reasonable inference that a subscriber is also an infringer". Accordingly, Petitioners cannot file a John Doe lawsuit and request early discovery in the Ninth Circuit unless they can allege "something more" consistent with Rule 11. John Doe's objection asserting that "our internet service was open for anyone to use", Doc. #4, illustrates the conundrum in going forward with a John Doe lawsuit after *Cobbler*[2]. On the other hand, one cannot argue with the results obtained from the DMCA subpoena at issue. In response to the notification, John Doe took the necessary steps ("added a password") to stop the infringing activity at the IP address provided by Cox. *See id.* Cox does not dispute that this type of WiFi service for "allowing everyone in [Doe's] neighborhood to use…" was not feasible two decades ago[3]. Indeed, *Cobbler* recognizes this exact point. *See Cobbler Nev., LLC*, 901 F.3d at 1149 (rejecting a theory that would make a subscriber liable for not being "technologically savvy enough to secure the connection to block access by a frugal neighbor"). In view of the change in technology and caselaw, the Court should not automatically adopt the reasoning of nearly two decades ago in *Verizon* and *In re Charter*.

**IV.   Cox has no standing to contest the subpoena or respond to the F&R.**

---

2 This Court should note that John Doe lawsuits filed by undersigned since *Cobbler* alleged something more such as that Doe registered for an account with a notorious piracy website. *See, e.g., Fallen Productions, Inc. et al. v. DOE*, 1:20-cv-33, D.Haw., Doc. 1.

3 It is likely feasible that the WiFi at issue is Cox's public hotspot that it installs in customers' home as shown in Doc. #10-2. Cox cannot argue that if the infringing material was cached or stored in Cox's public WiFi hotspot router installed at John Doe's home, other provisions such as §512(b)-(c) are applicable.

8

20-023Ga

Cox does not dispute Petitioners' argument that Cox made no objections to the DMCA subpoena.  Accordingly, Cox waived the right to make any objections against the validity of the subpoena.  *See McCoy v. Southwest Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002).  Cox's failure to join Doe's motion to quash or file any brief arguing in support of Doe's motion to quash or that the subpoena was invalid further underscores this point.

## V.     Conclusion.

Cox's concession in its response that the IP address specifies the online locations eliminates any dispute on the issue of whether it provides information location tools.  Accordingly, Petitioners respectfully request that the Court sustain their objections, reject the F&R and overrule Doe's objection to the subpoena.  At the least, the dispute between Cox and Petitioners on this issue illustrates Petitioners' point that it was erroneous for the F&R to make a conclusion on this technical issue based upon papers outside the adversary process and without even considering the applicability of §512(d).  Alternatively, Petitioners request that the Court only partially quash the subpoena with respect to Doe's identification information so that Petitioners can proceed with legal relief against infringers of their Works discovered in response to the subpoena.

DATED: Kailua-Kona, Hawaii, October 9, 2023.

<center>9</center>

20-023Ga

<center>ER-161</center>

CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper
Attorney for Petitioners

10

20-023Ga

COX FRICKE LLP
A LIMITED LIABILITY LAW PARTNERSHIP LLP
JOACHIM P. COX                    7520-0
   jcox@cfhawaii.com
ABIGAIL M. HOLDEN                 8793-0
   aholden@cfhawaii.com
800 Bethel Street, Suite 600
Honolulu, Hawai'i 96813
Telephone:  (808) 585-9440
Facsimile:  (808) 275-3276

WINSTON & STRAWN LLP
JENNIFER A. GOLINVEAUX (*pro hac vice* forthcoming)
   JGolinveaux@winston.com
THOMAS J. KEARNEY (*pro hac vice* forthcoming)
   TKearney@winston.com
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone:  (415) 591-1000

Attorneys for Non-Party
COXCOM LLC

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| IN RE: | CASE NO.: 1:23-mc-263-JMS-WRP |
| SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC, | COXCOM LLC'S RESPONSE TO OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION [DKT. 10]; CERTIFICATE OF SERVICE |
| | Honorable J. Michael Seabright |

## COXCOM LLC'S RESPONSE TO OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION [DKT. 10]

Pursuant to Local Rule 74.1(b), CoxCom LLC ("Cox")[1] submits this Response to Petitioners' September 11, 2023 Objections to Magistrate Judge's Findings and Recommendation to Grant John Doe's Motion to Quash 512(h) Subpoena (Dkt. No. 10).

## PROCEDURAL BACKGROUND

On April 13, 2023, Petitioners sought a subpoena pursuant to Section 512(h) of the Digital Millennium Copyright Act, 17 U.S.C. § 512(h), directing Cox Communications, LLC [sic] and CoxCom LLC to provide personally identifying information about Cox subscribers who had allegedly been assigned certain internet protocol addresses ("IP addresses") listed in the Application. Dkt. 1 ("Application for 512(h) Subpoena"), 1-2. The Subpoena issued the same day. Dkt. 3.

On May 24, 2023, the assignee of one of the identified IP addresses submitted a letter to the Court asking to have the Subpoena "quashed or dismissed and … objecting to having [their] personal information released." Dkt. 4. The Court, construing the letter as a Motion to Quash, directed Petitioners to file a response by June 12, 2023. Dkt. Entry 5. Petitioners filed a Memorandum in Opposition to

---

[1] Petitioners' Subpoena was directed to CoxCom LLC and "Cox Communications, LLC." Cox Communications, LLC is not an entity within the Cox family and appears to have been erroneously named in this matter.

Motion to Quash on May 29, 2023. Dkt. 6 ("Opposition" or "Opp."). Petitioners'

Opposition did not address the conditions placed on subpoenas under § 512(h), but

simply argued that "the subpoena … fully complie[d] with Rule 45 of the Federal

Rules of Civil Procedure." *Id.* at 3.[2]

On August 31, 2023, Magistrate Judge Porter filed Findings and

Recommendations to Grant John Doe's Motion to Quash 512(h) Subpoena, Dkt. 8

("F&R"). The F&R explained that because Petitioners had obtained the subpoena on

"a freestanding basis independent of a complaint or litigation," the "sole issue

presented in the case" is "whether the subpoena should be enforced or not." Dkt. 8

at 1-2 n.1 (citing *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 880

(N.D. Cal. 2020).[3] The F&R found "that 512(h) subpoenas are not available to serve

---

[2] Petitioners' Application had stated that "[t]he proposed subpoena is a Rule 45 subpoena," Dkt. 1 at 3, but this is plainly incorrect: Petitioners sought the Subpoena under 17 U.S.C. § 512(h), not Rule 45, and as the Court recognized, "[t]his case concerns Petitioners' use of the subpoena provision of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. Section 512(h)…" Dkt. 8 at 2. Section 512(h) of the DMCA, which is a separate and independent statutory authority for issuance of subpoenas, contains requirements and limitations not present in Rule 45, and Rule 45—unlike § 512(h)—does not authorize subpoenas outside the context of ongoing litigation. *See* F&R at 14 n.3 (noting that Petitioners could pursue "alternative avenues to seeking Doe's identity including a 'John Doe' lawsuit … [combined] with a motion for third party discovery"—that is, a Rule 45 subpoena).

[3] Other courts have similarly recognized that "[a] motion to quash challenges … the validity of the subpoena itself[.]" *Rowley v. City of New Bedford*, 2023 WL 3012578, at *3 (W.D. Ky. Apr. 19, 2023) (citing *Comer v. Roosen Varchetti & Olivier, PLLC*, 2018 WL 11473294, at *1 (E.D. Mich. Sept. 5, 2018)); *and see, e.g.*, 81 Am. Jur. 2d Witnesses § 12 ("It has been held that a motion to quash a subpoena can only challenge the validity of the subpoena[.]")

3

on ISPs acting as conduits for P2P file sharing infringement," *id.* at 10, and found

and recommended:

> that the 512(h) Subpoena, ECF No. 3, be QUASHED and that Petitioners be ordered return and/or destroy any information derived from the Subpoena, to maintain no further record of the information obtained the Subpoena, and to make no further use of the subscriber data obtained from the Subpoena.

*Id.* at 16.

Petitioners filed objections to the F&R on September 11, 2023. Dkt. 10

(Objections" or "Obj."). Specifically, Petitioners objected to the Magistrate's

conclusions:

1. That Cox acted as a "conduit" in the transfer of the files at issue;

2. That the § 512(h) subpoena was not valid because the DMCA precludes

   issuance of a subpoena directed to a service provider that provides services

   covered by Section 512(a) of the DMCA;

3. That an ISP like Cox cannot "remove or disable access to" allegedly infringing

   material, shared by P2P filesharing (such as the BitTorrent protocol), that is

   not stored on the ISP's servers.

Petitioners also objected generally to "all the F&R's factual conclusions that

were not based upon any briefings of Doe or Petitioners," and objected to the F&R's

recommendation that Petitioners be ordered to destroy and not use information

obtained from the Subpoena.

<div align="center">4</div>

Petitioners supported their Objections with a supporting Memorandum. Dkt. 10-1 ("Memorandum"). As discussed below, Petitioners' Memorandum goes beyond proper objection and urges the Court to make "factual" findings that are based on unsupported speculation, that lack any support in existing case law, or both. Accordingly, Cox writes to correct the record in certain respects.

## ARGUMENT

Petitioners' Memorandum objects to the Magistrate's finding that Cox is merely a provider of "conduit" (transmission) services with respect to the allegedly infringing material at issue, arguing that no evidence was submitted and no argument made on that issue. Obj. at 2; *see* F&R at 3 (noting that "it appears from other cases and the circumstances of this case that Cox's role in disseminating the allegedly copyrighted material is confined to acting as a mere 'conduit' in the transfer of files through its network including the files at issue in this case[,]" and quoting supporting findings from *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293 (4th Cir. 2018)).

Yet at the same time, Petitioners also take the inconsistent position that the Court should make a *different*, completely unsupported, finding, based not on any facts before the Court, nor any legal authority, but solely on Petitioner's speculative, conclusory statement that the IP addresses assigned by Cox to its customers "are §512(d) information location tools linking to infringing material[.]" Obj. at 2. As

5

ER-167

discussed below, Petitioners' mischaracterization of IP addresses as "links," and their argument that Cox provides "information location tools" under the meaning of the DMCA, does not withstand scrutiny. Accordingly, for at least the same reasons Petitioners provide in their Objections, it would be improper for the Court to make such a finding.

Section 512(d) of the DMCA on its face applies to online service providers[4] that "refer[] or link[] users to an online location…" by providing "*tools*"—such as "a directory, index, reference, pointer, or hypertext link"—that enable the tool's users to locate "*information*" online. 17 U.S.C. § 512(d) (emphases added). Petitioners' conclusory, entirely unsupported mischaracterization of an IP address as such a tool, based on the unexamined theory that an IP address is also a "link," does not withstand scrutiny. As a matter of both well understood technology and ordinary meaning, an IP address does not create or function as a "link," any more than assigning a telephone number to a handheld device causes a phone call to be placed to the device, or assigning a street address to a house causes visitors to come to the house. Instead—as Petitioners themselves concede—an IP address merely "specifies" an online location. *See* Obj. at 5 (acknowledging that "IP addresses…

---

[4] As defined in the DMCA, an "internet service provider" (or "ISP") like Cox, which transmits, routes, or provides connections for data without modifying it, is one specific type of "service provider." Entities that provide other types of "online services or network access" are also referred to as "service providers" under the statute, but are not necessarily ISPs. *See* 17 U.S.C. § 512(k)(1).

6

*are … online locations*"). As the Magistrate recognized, in the context of P2P

filesharing systems such as Bit Torrent, any "linking or referring" *to* an IP address

location is performed *by the providers and users of the P2P system*—not by an

internet service provider like Cox that merely transmits data through its system at

the direction of those third party users. *See, e.g.*, F&R at 3 ("*P2P systems* allow …

*an internet user* [to] directly search the MP3 file libraries *of other users* … the

transferred files are not stored on the computers of the ISP providing the P2P users

with internet access.") (emphases added). Cox does not provide such P2P systems,

and Petitioners properly do not claim that it does.

The sole authority Petitioners cite further undermines their speculation that an

IP address somehow functions as a "link" to "information." This Court, in *HB Prods.*

*v. Faizan*, explained that an IP ("Internet Protocol") address "*specifies the location*

*of [a] device or workstation on the Internet.*" 603 F. Supp. 3d 910, 917 n.2 (D. Haw.

2022) (quoting IBM, Dictionary of IBM & Computing Technology); *see* Obj. at 4

(acknowledging that an IP address "specifies the location of [a] device or

workstation on the Internet"). Once again, "specif[ying]" a location is not the same

as "linking" to it.

There is also no merit to Petitioners' speculation, relegated to a footnote, that

other services Cox may or may not offer (such as provision of wi-fi routers or

wireless "hotspots") could potentially bring Cox under the provisions of DMCA

7

subsections 512(b) or 512(c). Obj. at 5 n.4. Again, Petitioners' only cited "authority" for this conjecture fails to support it: their Exhibit 1 shows only that "Cox Hotspots"—a technology not at issue here—provide "wireless… internet connectivity," which on its face has nothing to do with either data caching (the subject of § 512(b)) or online storage at the direction of a user (the subject of § 512(c)). Similarly, Petitioners' perfunctory suggestion that "technology has changed significantly in the two decades since *Verizon* and *In re Charter*" is not only completely unsupported, but also fails to support their theory that IP addresses are, or could be, "information location tools." To the extent Petitioners suggest that the Court should find the Subpoena valid simply in order to provide Petitioners with ready access to the information they seek, there are—as the Magistrate noted—other means of obtaining the information they seek. *See* F&R at 14 n.3 (discussing "alternative avenues… including a 'John Doe' lawsuit").

Finally, Petitioners' argument that "the case law has developed in the last two decades," Obj. at 7-8, is puzzling, since none of the decisions they cite support their theory that Cox provides "information location tools" (or any other service subject to either section 512(b) or 512(c) of the DMCA). Simply put, they have no bearing on whether the Subpoena is valid in light of the DMCA.

8

## CONCLUSION

The Magistrate Judge found, based on ample precedent, that "Cox's role in the alleged infringement was limited to providing the internet service that connected P2P subscribers utilizing a BitTorrent protocol to allegedly download and share movies between their personal computers; there was nothing stored on Cox's servers to be taken down." F&R at 14. Nothing in Petitioners' Response to the Motion to Quash or their Objections to the F&R supports a contrary finding that Cox's mere provision of IP addresses amounts to providing active "links" to content, or that IP addresses, standing alone, are "information location tools" within the meaning of 17 U.S.C. § 512(d). For the reasons above, the Court should decline Petitioners' request to make such a finding on this record.

DATED:  Honolulu, Hawai'i, September 28, 2023.

*/s/ Abigail M. Holden*
JOACHIM P. COX
ABIGAIL M. HOLDEN
JENNIFER A. GOLINVEAUX (*pro hac vice* forthcoming)
THOMAS J. KEARNEY (*pro hac vice* forthcoming)

Attorneys for Non-Party
COXCOM LLC

9

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

IN RE:

SUBPOENA OF INTERNET
SUBSCRIBERS OF COX
COMMUNICATIONS, LLC AND
COXCOM LLC,

CASE NO.: 1:23-mc-263-JMS-WRP

CERTIFICATE OF SERVICE

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, a true and correct copy of the

foregoing document was duly served upon the following parties via the means and

on the date indicated below:

> Kerry S. Culpepper                          **[VIA CM/ECF]**
> kculpepper@culpepperip.com
> CULPEPPER IP, LLLC
> 75-170 Hualalai Road, Suite B204
> Kailua-Kona, Hawaiʻi 96740
>
> Attorney for Petitioners
> VOLTAGE HOLDINGS, LLC
> MILLENNIUM FUNDING, INC., and
> CAPSTONE STUDIOS CORP.
>
> DATED:  Honolulu, Hawaiʻi, September 28, 2023.

> /s/ Abigail M. Holden
> JOACHIM P. COX
> ABIGAIL M. HOLDEN
> JENNIFER A. GOLINVEAUX (*pro hac vice* forthcoming)
> THOMAS J. KEARNEY (*pro hac vice* forthcoming)
> Attorneys for Non-Party
> COXCOM LLC

COX FRICKE LLP
A LIMITED LIABILITY LAW PARTNERSHIP LLP
JOACHIM P. COX                         7520-0
    jcox@cfhawaii.com
ABIGAIL M. HOLDEN                      8793-0
    aholden@cfhawaii.com
800 Bethel Street, Suite 600
Honolulu, Hawai'i 96813
Telephone:  (808) 585-9440
Facsimile:   (808) 275-3276

WINSTON & STRAWN LLP
JENNIFER A. GOLINVEAUX (*pro hac vice* forthcoming)
    JGolinveaux@winston.com
THOMAS J. KEARNEY (*pro hac vice* forthcoming)
    TKearney@winston.com
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone:  (415) 591-1000

Attorneys for Non-Party
COXCOM LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| IN RE:<br><br>SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC, | CASE NO.: 1:23-mc-263-JMS-WRP<br><br>NON-PARTY COXCOM LLC'S AMENDED NOTICE OF INTENT TO RESPOND TO OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION; CERTIFICATE OF SERVICE<br><br>Honorable J. Michael Seabright |

ER-173

## NON-PARTY COXCOM LLC'S AMENDED NOTICE OF INTENT TO RESPOND TO OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION

Docket No. 13, Non-Parties Cox Communications, LLC and CoxCom LLC's Notice of Intent to Respond to Objections to Magistrate Judge's Findings and Recommendation is hereby amended ("Notice"). The Notice is hereby filed only on behalf of Non-Party CoxCom LLC[1] as follows:

Non-Party CoxCom LLC ("Cox") respectfully writes to provide notice to the Court of its intent to respond to Petitioner's Objections to Magistrate Judge's Findings and Recommendation to Grant John Doe's Motion to Quash 512(h) Subpoena (ECF No. 10, hereinafter the "Objections"). Cox recently received notice of the Objections, which was served via First Class Mail on September 11, 2023. Accordingly, pursuant to Local Rule 74.1(b) and Rule 6(d) of the Federal Rules of Civil Procedure, Cox intends to file a response to the Objections by no later than Thursday, September 28, 2023.

DATED: Honolulu, Hawai'i, September 28, 2023

/s/ Abigail M. Holden
JOACHIM P. COX
ABIGAIL M. HOLDEN
JENNIFER A. GOLINVEAUX (*pro hac vice* forthcoming)
THOMAS J. KEARNEY (*pro hac vice* forthcoming)
Attorneys for Non-Party
COXCOM LLC

---

[1] Cox Communications, LLC is not an entity within the Cox family and appears to have been erroneously named in this matter.

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| IN RE:<br><br>SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC, | CASE NO.: 1:23-mc-263-JMS-WRP<br><br>CERTIFICATE OF SERVICE |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, a true and correct copy of the

foregoing document was duly served upon the following parties via the means and

on the date indicated below:

Kerry S. Culpepper                        [**VIA CM/ECF**]
kculpepper@culpepperip.com
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaiʻi 96740

Attorney for Petitioners
VOLTAGE HOLDINGS, LLC
MILLENNIUM FUNDING, INC., and
CAPSTONE STUDIOS CORP.

DATED:  Honolulu, Hawaiʻi, September 28, 2023.

*/s/ Abigail M. Holden*
JOACHIM P. COX
ABIGAIL M. HOLDEN
JENNIFER A. GOLINVEAUX (*pro hac vice* forthcoming)
THOMAS J. KEARNEY (*pro hac vice* forthcoming)
Attorneys for Non-Party
COXCOM LLC

COX FRICKE LLP
A LIMITED LIABILITY LAW PARTNERSHIP LLP
JOACHIM P. COX                     7520-0
    jcox@cfhawaii.com
ABIGAIL M. HOLDEN                8793-0
    aholden@cfhawaii.com
800 Bethel Street, Suite 600
Honolulu, Hawai'i 96813
Telephone:  (808) 585-9440
Facsimile:   (808) 275-3276

WINSTON & STRAWN LLP
JENNIFER A. GOLINVEAUX (*pro hac vice* forthcoming)
    JGolinveaux@winston.com
THOMAS J. KEARNEY (*pro hac vice* forthcoming)
    TKearney@winston.com
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone:  (415) 591-1000

Attorneys for Non-Parties
COX COMMUNICATIONS, LLC
and COXCOM LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| IN RE: | CASE NO.: 1:23-mc-263-JMS-WRP |
| SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC, | NON-PARTIES COX COMMUNICATIONS, LLC AND COXCOM LLC'S NOTICE OF INTENT TO RESPOND TO OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION; CERTIFICATE OF SERVICE |
| | Honorable J. Michael Seabright |

**NON-PARTIES COX COMMUNICATIONS, LLC AND COXCOM LLC'S NOTICE OF INTENT TO RESPOND TO OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION**

Non-parties Cox Communications, LLC and CoxCom LLC (collectively, "Cox") respectfully write to provide notice to the Court of their intent to respond to Petitioner's Objections to Magistrate Judge's Findings and Recommendation to Grant John Doe's Motion to Quash 512(h) Subpoena (ECF No. 10, hereinafter the "Objections"). Cox recently received notice of the Objections, which was served via First Class Mail on September 11, 2023. Accordingly, pursuant to Local Rule 74.1(b) and Rule 6(d) of the Federal Rules of Civil Procedure, Cox intends to file a response to the Objections by no later than Thursday, September 28, 2023.

DATED: Honolulu, Hawai'i, September 26, 2023

/s/ Abigail M. Holden
JOACHIM P. COX
ABIGAIL M. HOLDEN
JENNIFER A. GOLINVEAUX (*pro hac vice* forthcoming)
THOMAS J. KEARNEY (*pro hac vice* forthcoming)

Attorneys for Non-Parties
COX COMMUNICATIONS, LLC
and COXCOM LLC

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| IN RE: | CASE NO.: 1:23-mc-263-JMS-WRP |
| SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC, | CERTIFICATE OF SERVICE |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, a true and correct copy of the

foregoing document was duly served upon the following parties via the means and

on the date indicated below:

Kerry S. Culpepper                              **[VIA CM/ECF]**
kculpepper@culpepperip.com
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaiʻi 96740

Attorney for Petitioners
VOLTAGE HOLDINGS, LLC
MILLENNIUM FUNDING, INC., and
CAPSTONE STUDIOS CORP.

DATED:  Honolulu, Hawaiʻi, September 26, 2023.

　　　　　　　　　　*/s/ Abigail M. Holden*
　　　　　　　　　　JOACHIM P. COX
　　　　　　　　　　ABIGAIL M. HOLDEN
　　　　　　　　　　JENNIFER A. GOLINVEAUX (*pro hac vice* forthcoming)
　　　　　　　　　　THOMAS J. KEARNEY (*pro hac vice* forthcoming)
　　　　　　　　　　Attorneys for Non-Parties
　　　　　　　　　　COX COMMUNICATIONS, LLC
　　　　　　　　　　and COXCOM LLC

CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Petitioners
Voltage Holdings, LLC,
Millennium Funding, Inc., and
Capstone Studios Corp.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re Subpoena | ) | **Case No.:** 1:23-mc-263-JMS-WRP |
| | ) | (Copyright) |
| Internet subscribers of Cox | ) | |
| Communications, LLC and CoxCom | ) | CERTIFICATE OF SERVICE |
| LLC | ) | |
| | ) | |
| | ) | |
| | ) | |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 11, 2023 and by the

methods of service noted below, a true and correct copy of the foregoing served to

the following:

Via First Class Mail
*Service per Rule 5(b)(2)(D)*
John Doe
c/o Clerk of Court

1

20-023Ga

District of Hawaii
300 Ala Moana Blvd, C-338
Honolulu, HI, 96850

<u>Via First Class Mail</u>
Corporation Service Co.
Agent for Cox Communications LLC and CoxCom LLC
251 Little Falls Drive
Wilmington, DE 19808

DATED: Kailua-Kona, Hawaii, Sept. 11, 2023.

CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
<u>Kerry S. Culpepper</u>

Attorney for Petitioners
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:   (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:        kculpepper@culpepperip.com
Attorney for Petitioners

2

20-023Ga

**Exhibit "1"**

Case: 24-3978, 09/10/2024, DktEntry: 14.1, Page 182 of 257

Case 1:23-mc-00263-JMS-WRP   Document 10-2   Filed 09/11/23   Page 2 of 4   PageID.77

 Support

Support Search

# Understanding Cox Hotspots

Share or Print This Article

   

## Details

Cox Hotspots provides access to four million WiFi hotspots nationwide for all Cox Internet customers at no additional charge.

- You can take Cox Internet with you when you leave home.
- Cox Hotspots provide fast, wireless, on-the-go internet connectivity for your tablet, smartphone, or other WiFi-enabled devices.
- Access more than four million hotspots to help you save on your wireless data plan.

## Availability

Cox Hotspots are available in all Cox markets at the following outdoor and indoor venues. Find locations near you at our Cox Hotspots page.

- Central business districts where people often eat, shop, and socialize
- Waiting areas in professional small and medium size businesses
- Residential multi-dwelling unit (MDU) common areas, including the pool area, lobby, and recreational playground and parks
- Cox Retail Stores

For all Cox customers who may travel outside of their home area and want to access a WiFi hotspot, CableWiFi is available by a partnering cable provider.

CableWiFi is a wireless network name created through a collaboration of U.S. Cable & Internet Service Providers including Cox Communications, Optimum, Spectrum, and XFINITY. It allows each other's eligible Internet customers free access to a collective network of WiFi hotspots across the nation.

## Access

To access and use Cox Hotspots, see Signing In to Cox Hotspots. You can connect to our hotspots using the following types of WiFi-enabled devices:

- Laptops using Windows or Mac operating systems
- Tablets using iOS, Android, or Windows 8 operating systems
- Smartphones using iOS, Android, Windows 8, or Blackberry operating systems

See our Cox Hotspots page for more information and to view the coverage map. It also includes CableWiFi hotspots.

## Additional Questions and Answers

View frequently asked questions related to the following topics for Cox Hotspots.

Can I opt-out from having my device broadcasting the CoxWiFi Hotspot?

You can decide whether or not to allow CoxWiFi Hotspot to broadcast from your device. See Changing the Cox WiFi Hotspot Opt In / Opt Out Status for instructions on how to manage these settings in your Cox Business MyAccount.

How many devices can I use at the same time with Cox Hotspots?

With Cox Hotspots, three devices can be attached per user ID and ten per account at a time.

Can other members of my family use Cox Hotspots?

Yes. With each Cox Internet account, you can have up to ten unique devices connected to Cox Hotspots. Up to three devices can be connected at the same time per user ID.

Feedback

ER-182

Case: 24-3978, 09/10/2024, DktEntry: 14.1, Page 183 of 257

Case 1:23-mc-00263-JMS-WRP   Document 10-2   Filed 09/11/23   Page 3 of 4  PageID.78

### How will customers access Cox Hotspots?

Once customers are in an area where they can connect to Cox Hotspots, they should see the CoxWiFi network location in the list of available wireless networks on their wireless device. Customers must use their Cox User ID and Password to log in to Cox Hotspots. Once authenticated, they will be able to browse the internet as they would from home.

### Am I able to use Cox Hotspots outside of my service area?

Cox Hotspots are available in select areas within the Cox service footprint. Customers traveling to these service areas may also use Cox Hotspots.

**Note**: Cox is planning to expand the coverage available to our customers in the near future.

### Will I have to sign in to the CoxWiFi SSID each time I access a Hotspot?

Cox will recognize your device on any hotspot for two years. For your security, you will be asked to sign in again to verify your username and password at least once every two years per hotspot, or if you access Cox Hotspots on a different device.

### Is the Cox Hotspots network secure?

Cox makes reasonable efforts to provide a secure service, but because this service is a wireless service, we strongly recommend you make sure any devices you connect are first protected by anti-virus / anti-malware software, and that your operating system firewall is turned on to provide additional protection. Cox cannot guarantee absolute security through Cox Hotspots.

### How can I get support for Cox Hotspots?

Click one of the following links for additional support.

- Residential customer support
- Cox Business customer support

### How do I disconnect my device from the Cox Hotspots network?

If you are signed in to Cox Hotspots and wish to disconnect, you will need to temporarily disable WiFi on your wireless device and wait for approximately 15 minutes. WiFi can usually be disabled and re-enabled by using a menu option or key press combination. Details vary depending on the type of device you are using, so consult the device manufacturer documentation for more information.

**Note**: Cox Hotspots will remember your device for two years, so the next time you connect during that timeframe your device will automatically connect to the CoxWiFi SSID.

Feedback

# Search for More Articles

Support Search

 Post a Question ›

 Tweet @CoxHelp ›

Browse Forums ›

Contact Cox ›

ER-183

Case: 24-3978, 09/10/2024, DktEntry: 14.1, Page 184 of 257

Case 1:23-mc-00263-JMS-WRP   Document 10-2   Filed 09/11/23   Page 4 of 4   PageID.79

| Shop | Common Tasks | Help |
| --- | --- | --- |
| About Us | More | Companies |
| Follow Us | Legal | Privacy |

Limit the Use of My Sensitive Personal Information (CA Consumers)
Do Not Sell or Share My Personal Information

© 1998 - 2023 Cox Communications, Inc.

Feedback

CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:   (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Petitioners
Voltage Holdings, LLC
Millennium Funding, Inc., and
Capstone Studios Corp.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| In re Subpoena | ) | **Case No.:** 1:23-mc-263-JMS-WRP |
|---|---|---|
| | ) | (Copyright) |
| Internet subscribers of Cox | ) | |
| Communications, LLC and CoxCom | ) | MEMORANDUM IN SUPPORT OF |
| LLC | ) | PETITIONERS' OBJECTIONS TO |
| | ) | THE FINDINGS AND |
| | ) | RECOMMENDATIONS |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PETITIONERS' OBJECTIONS TO
THE FINDINGS AND RECOMMENDATIONS**

1

# I.    INTRODUCTION

John Doe made a single page objection to Petitioners' §512(h) subpoena to Cox Communications, LLC and CoxCom LLC ("Cox") "…objecting to having my personal information released."[1]  Doc. #4.  In response to Magistrate Judge Porter's Order [Doc. #5] construing the objection as a motion to quash and ordering Petitioners to file a response, Petitioners filed an Opposition [Doc. #6] correctly pointing out that Doe failed to argue a privacy interest, burden or any other recognized legal basis for quashing.  Cox did not file any response.  Nor did Doe file a reply.    Nonetheless, Magistrate Judge Porter issued a Findings and Recommendation ("F&R") [Doc. #8] concluding that (i) Cox is a mere conduit service provider; and (ii) the §512(h) subpoena is invalid for being based upon a §512(c)(3)(A) notification to the mere conduit provider Cox.  The F&R concedes, "neither party analyzes whether the 512(h) Subpoena was valid".  F&R at p.4.  This is an understatement.  Nobody argued or submitted any evidence asserting Cox is a mere conduit provider.  Nor did the Magistrate Judge give even a hint that he was considering this issue.  Petitioners do not agree that Cox is a mere conduit because Cox assigns to its subscribers the Internet Protocol ("IP") addresses that are §512(d) information location tools linking to infringing material as mentioned in the Application for the subpoena.  *See* Doc. #1 at p.4 ("…Owner respectfully submits

---

[1] The objection did not comply with LR 5.2 for filing sealed documents.

2

that the [Ninth][2] Circuit would likely conclude that 512(h) does also apply to ISPs that…provide **links** to infringing material") (emphasis added).   Petitioners respectfully request that the Court sustain this objection, reject the F&R and overrule Doe's objection.   The F&R also recommends the sledgehammer remedy that Petitioners be ordered to destroy all data received in response to the subpoena. Neither Doe nor Cox requested this extreme remedy.  At most, the Court should only order Cox to not turnover Doe's name if it sustains Doe's objection.

## II.   <u>LEGAL STANDARD</u>

When a party objects to a magistrate judge's findings or recommendations, the district court must review *de novo* those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *See* 28 U.S.C. § 636(b)(1).

## III.   <u>ARGUMENT</u>

### A.  <u>Petitioners object to the F&R's Conclusion that Cox is a "mere" conduit.</u>

Although none of the parties briefed this issue, the F&R concludes that Cox acts as a mere conduit.  *See* F&R at p.3.  As one basis for this conclusion, the F&R cites the following language from *BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 881 F.3d 293, 299 (4th Cir. 2018) ("*Cox*"):

> As a conduit ISP, Cox only provides Internet access to its subscribers. Cox does not create or sell software that operates using the BitTorrent

---

[2] Petitioners mentioning of Tenth was a typographical error.

protocol, store copyright-infringing material on its own computer servers, or control what its subscribers store on their personal computers.

F&R at pp. 1-2.

However, this language of *Cox* does not state or imply that a conduit is *the only* service Cox provides. Indeed, *Cox* also states that Cox assigns the IP address to its subscribers. *See id.* (…since only the ISP can match the IP address to the subscriber's identity.). The IP address is "[t]he unique 32-bit address that specifies the location of each device or workstation on the Internet." *HB Prods., Inc. v. Faizan*, 603 F. Supp. 3d 910, 917 n.2 (D. Haw. 2022). Accordingly, the F&R's conclusion that Cox is a mere conduit was incorrect. As discussed below, the IP address Cox assigns to its subscriber is an information location tool as provided in 17 U.S.C. §512(d). Just like an "index, reference, pointer, or hypertext link", *Id.*, the IP address assigned to the subscriber by Cox linked other P2P users to the online location containing infringing material or infringing activity.

The F&R states "At the very least, in citing to *Verizon* and *In Re Charter* in their Application, it appears that Petitioners agree that Cox is a conduit ISP." F&R at p.8. But Petitioners do not agree that Cox is a *mere* conduit. Rather, as Petitioners pointed out in their Application, the ISP also provides links to infringing material. *See* Doc. #1 at p.4. An ISP can be a conduit and provide other services such as links.

**B. Petitioners Object to the F&R's conclusion that the subpoena is invalid for failing to be based upon a proper §512(c)(3)(A) notification.**

4

As argued above, there is no sound technical basis for the F&R's conclusion that Cox is merely a conduit because Cox provides the IP addresses[3] that are the online locations used for linking other P2P users to the infringing material. The F&R did not consider the information location tool section (§512(d)) in making its flawed conclusion that the underlying notification did not satisfy the 17 U.S.C. §512(c)(3)(A) notification requirement[4]. Subsection (3) of 17 U.S.C. §512(d) explicitly states:

> upon notification of claimed infringement as described in subsection (c)(3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity, except that, for purposes of this paragraph, **the information described in subsection (c)(3)(A)(iii) shall be identification of the reference or link, to material or activity claimed to be infringing, that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate that reference or link**.

(emphasis added)

The Notification [Doc. #1-3] satisfies all requirements of §512(d)(3). It provided the identification of the reference or link (IP address 70.161.172.138; Port 34307), the material claimed to be infringing (After Ever Happy (2022) [1080p] [WEBRip] [5.1] YTS.MX), the activity claimed to be infringing (sharing via

---

[3] *See* https://search.arin.net/rdap/?query=70.161.172.138 [last accessed on Sep. 10, 2023] (ARIN records showing that IP address is owned by Cox).

[4] Petitioners do not concede inapplicability of other sections such as §512(b) or (c) because there is no evidence on the record of what type of "Wi-Fi router" was at Doe's home. Many ISPs such as Cox provide public free Wi-Fi's to customers by including such routers in customers' homes. *See* Ex. "1" (Can I opt-out from having my device broadcasting the CoxWiFi Hotspot?); *see also* Dann Albright, "Is Your Router a Public Hotspot? Here's What It Means", July 12, 2016, https://www.makeuseof.com/tag/router-public-hotspot-heres-means/ [last accessed on Sept. 3, 2023].

5

BitTorrent) and information reasonably sufficient to permit the service provider to locate that reference or link (IP address 70.161.172.138; Port 34307).  Contrary to the F&R's conclusion that Cox can do nothing, Cox can disable access to the infringing material by, for example, null routing[5] the assigned IP address.

The F&R's analysis relies on *In re Charter Commc'ns, Inc., Subpoena Enf't Matter*, 393 F.3d 771, 773 (8th Cir. 2005) and *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1232 (D.C. Cir. 2003).  However, neither of these cases considered the information location tool section (§512(d)) because this argument was not made[6].  Indeed, *In re Charter* explicitly notes that the parties had agreed that the ISP's function was limited to a conduit. *In re Charter*, 393 F.3d at 777 ("…because the parties do not dispute that Charter's function was limited to acting as a conduit…").  In *Verizon* also it appears the parties agreed that the ISP's function was limited to conduit because the opinion compares the conduct to just sending email.  *See Verizon*, 351 F.3d at 1233.  That is not the case here.

## C.  Petitioners Object to the F&R's Conclusion that there can be no valid §512(c)(3)(A) notification for mere conduit providers.

---

[5] Null routing, which is also called black hole routing, is a network route that goes nowhere. *See* RFC 3882 "Configuring BGP to Block Denial-of-Service Attacks", Sept. 2004, https://datatracker.ietf.org/doc/html/rfc3882 [last accessed on Sept. 7, 2023]; *see also* Ax Sharma, "VPN provider bans BitTorrent after getting sued by film studios", Mar. 12, 2022, https://www.bleepingcomputer.com/news/security/vpn-provider-bans-bittorrent-after-getting-sued-by-film-studios/ [last accessed on Sept. 7, 2023[ ("It is a common practice in the hosting industry for a provider to "null route" a subscriber's IP address, effectively terminating a network connection, where it has received multiple notices of copyright infringement associated with an IP address.")

[6] It appears that null routing or black hole routing IP addresses begin to be widely adopted by networks in late 2000s early 2010s after *Verizon* and *In re Charter* decisions.

Petitioners disagree with the F&R's adoption of the conclusions of *In re Charter* and *Verizon* of nearly two decades ago that a notice to a conduit does not comply with subpart 512(c)(3)(A)(iii), particularly since there is no evidence on the record as to what type of services are provided by Cox to John Doe.

Firstly, the DC Circuit's conclusion in *Verizon* that "a subpoena may be issued only to an ISP…storing on its servers material…subject of infringing activity" (*Verizon*, 351 F.3d at 1233) contradicts the plain language of §512(d) which is applicable to information location tools and says nothing about servers or storing.

Secondly, the case law has developed in the last two decades. The Eighth Circuit recognized the irreparable harm that would be caused to copyright owners if they were unable to identify persons engaged in peer-to-peer file transfers. "…[A]s a practical matter, copyright owners cannot deter unlawful peer-to-peer file transfers unless they can learn the identities of persons engaged in that activity." *In re Charter*, 393 F.3d at 775 n.3 (8th Cir. 2005). The Eighth Circuit concluded that their decision was sound because "organizations…can file a John Doe suit, along with a motion for third-party discovery of the identity of the otherwise anonymous "John Doe" defendant." *Id.* The DC Circuit also recognized in *Verizon* that the copyright owner filed lawsuits against hundreds of individuals. *See Verizon*, 351 F.3d at 1232. 15 years later, the Ninth Circuit undermined the basis for John Doe lawsuits in *Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142, 1145 (9th Cir. 2018) ("*Cobbler*") concluding:

7

> Because multiple devices and individuals may be able to connect via an IP address, simply identifying the IP subscriber solves only part of the puzzle.  A plaintiff must allege something more to create a reasonable inference that a subscriber is also an infringer.

*Id*.

Some Courts have questioned if a John Doe Complaint can satisfy a motion to dismiss in view of *Cobbler*.  *See, e.g., Malibu Media, LLC v. Causa*, No. 1:19-CV-963 (NAM/ML), 2020 U.S. Dist. LEXIS 164268, at *9 (N.D.N.Y. Sep. 9, 2020) (Denying motion for default judgment based upon *Cobbler*).

Thirdly, Petitioners respectfully assert that the reasoning of Judge Murphy's dissent in *In re Charter* pointing out that the "or" in § 512(c)(3)(A)(iii) shows that §512(h) subpoenas to conduit service providers are valid is more persuasive:

> The majority's reading of [§ 512(c)(3)(A)(iii)] ignores the use of the disjunctive form in describing the infringing material (the subsection also contains a second use of the disjunctive form to distinguish "to be removed or … to be disabled")…
> The copyrighted material stored on an ISP's network becomes the subject of infringing activity when it is unlawfully duplicated by subscribers. In order to remove such material or disable access to it, a storage ISP needs it to be identified. On the other hand, when a subscriber transfers copyrighted material through a conduit ISP, that service provider cannot remove the material from the network. It can, however, provide identifying information about the offeror of the material "claimed to be infringing.

*In re Charter*, 393 F.3d at 781 (8th Cir. 2005).

By properly considering the "or", §512(c)(3)(A)(iii) is read as requiring conduit providers to provide identifying information for the offeror of the material claimed to be infringing.  Petitioners urge the Court to adopt Judge Murphy's conclusion.

Fourthly, technology has changed significantly in the two decades since *Verizon* and *In re Charter*. Broadband adoption has increased remarkably.[7] Service providers offer services that were not even conceived of at the time of *Verizon* such as public WiFi based upon placing routers in homes of private users. *See* Ex "1". Some service providers engage in "deep packet inspection" to inspect packets in transit to users to protect their networks or even generate advertisements based upon user data consumption.[8] Service providers can use null routing to disable access to ongoing activity. *Supra*. The P2P application in *Verizon* was not BitTorrent but the defunct app "KaZaA". *Verizon*, 351 F.3d at 1229. It was an error for the F&R to simply conclude that the technology at issue had stayed the same since 2003.

**D. The Petitioners object procedurally to the F&R's conclusions based upon documents outside the briefings that the subpoena was invalid.**

Neither Doe nor Cox argued that the subpoena was invalid. The F&R attempts to frame the issue of the validity of the subpoena as a type of subject matter jurisdictional inquiry it was obligated to undertake *sua sponte* by stating, "When analyzing motions to quash 512(h) subpoenas, courts first address the validity of the subpoena." F&R at p.5. Neither of the unpublished cases cited in the F&R support

---

[7] *See* Pew Research Center, April 7, 2021, https://www.pewresearch.org/internet/fact-sheet/internet-broadband/ (adult broadband adoption increased from 29 percent to over 80 percent since 2003 – the year of *Verizon* decision).
[8] *See* Alex Wawro, "What is Deep Packet Inspection", PCWorld, Feb. 1, 2012, https://www.pcworld.com/article/474095/what_is_deep_packet_inspection_.html [last accessed on Sept. 10, 2023].

9

this proposition.  In *In re DMCA Subpoena to eBay, Inc.*, 2015 WL 3555270, at *2 (S.D. Cal. June 5, 2015), the subpoenaed party eBay – not the Court – first argued that the subpoena was invalid.  The 512(h) subpoena issue in *Well Go USA, Inc. v. Unknown Participants Participants in Filesharing Swarm Identified*, No. 4:12-cv-00963, 2012 U.S. Dist. LEXIS 137272, at *3 (S.D. Tex. Sep. 24, 2012) was decided on the copyright owner Plaintiff's motion for the subpoena rather than an objection to a subpoena.  Accordingly, the Magistrate Judge should have limited the inquiry to the arguments raised by Doe.  Or at least invited Petitioners to submit a supplemental brief on this issue before concluding that Cox is a mere conduit from materials outside the adversary process.  *See Wood v. Milyard*, 566 U.S. 463, 472, 132 S. Ct. 1826, 1833 (2012) ("a federal court does not have carte blanche to depart from the principle of party presentation basic to our adversary system").  This F&R's incorrect technical conclusions illustrate the wisdom of *Wood*.

**E.  Petitioners Object to the F&R's Recommendation that they be ordered to destroy any information received in response to the subpoena.**

Cox did not file an opposition to the subpoena. Doe was the only subscriber that objected.  Except Doe's identification, Cox responded to the subpoena on June 27, 2023.  Petitioners have since received invaluable responsive information from subscribers such as a piracy website used to pirate Petitioners' Works.  The F&R would order Petitioners forget this website although no one sought such extreme

<div align="center">10</div>

relief. In *In re Charter* and *Verizon* this extreme relief was granted because it was sought by the respective ISPs. Petitioners urge the Court to decline to use this sledgehammer and merely order Cox to not disclose Doe's name should it agree with Doe's objection. *See In re Subpoena Issued Pursuant to the Dig. Millennium Copyright Act To: 43SB.COM.LLC*, No. MS07-6236-EJL, 2007 U.S. Dist. LEXIS 90342 (D. Idaho Dec. 7, 2007)(Partially quashing DMCA subpoena to one individual).

## IV.   CONCLUSION

As discussed above, the F&R's conclusion based upon papers outside the adversary process and without consideration of the applicability of §512(d) that the subpoena was invalid was an error. Petitioners respectfully request that the Court sustain their objections, reject the F&R and overrule Doe's objection to the subpoena. Alternatively, Petitioners request that the Court only partially quash the subpoena with respect to Doe's identification information.

DATED: Kailua-Kona, Hawaii, September 11, 2023.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Petitioners

11

ER-195

CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:  (202) 204-5181
E-Mail:      kculpepper@culpepperip.com

Attorney for Petitioners
Voltage Holdings, LLC
Millennium Funding, Inc., and
Capstone Studios Corp.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re Subpoena ) | **Case No.:** 1:23-mc-263-JMS-WRP |
| ) | (Copyright) |
| ) | |
| Internet subscribers of Cox ) | |
| Communications, LLC and CoxCom ) | PETITIONERS' OBJECTIONS TO |
| LLC ) | MAGISTRATE JUDGE'S |
| ) | FINDINGS AND |
| ) | RECOMMENDATION TO GRANT |
| ) | JOHN DOE'S MOTION TO QUASH |
| ) | 512(h) SUBPOENA; |
| ) | MEMORANDUM IN SUPPORT OF |
| ) | OBJECTION; EXHIBIT "1"; |
| ) | CERTIFICATE OF SERVICE |

**PETITIONERS' OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO GRANT JOHN DOES' MOTION TO <u>QUASH</u>**

Petitioners Voltage Holdings, LLC, Millennium Funding, Inc., and Capstone

Studios Corp. (hereafter: "Petitioners"), by and through their attorney, Kerry S.

Culpepper, hereby submit their Written Objections to Magistrate Wes Reber Porter's

20-023Ga

Findings And Recommendation ("F&R") [Doc. #8] granting the motion to quash of John Doe ("Doe") pursuant to 28 U.S.C. § 636(b)(1) (c), Rule 72(b) of the Federal Rules of Civil Procedure ("FRCP") and Rule 74.1(a) of the Local Rules of Practice ("LR").

## I.    Designation of portions of the Order to which Petitioners are Objecting

Petitioners object to the F&R's conclusion "…Cox's role in disseminating the allegedly copyrighted material is confined to acting as a mere "conduit" in the transfer of files through its network including the files at issue in this case." F&R at p.3.

Petitioners object to the F&R's conclusion that the subpoena was not valid because "subpart 512(c)(3)(A)(iii) required Petitioners to identify in their 512(c)(3)(A) notice to Cox the infringing material that could be removed or access to which can be disabled, which Petitioners could not do because Cox's role in the alleged infringement was limited to providing the internet service that connected P2P subscribers utilizing a BitTorrent protocol to allegedly download and share movies between their personal computers; there was nothing stored on Cox's servers to be taken down." F&R at p.14

Petitioners object to the F&R's conclusions that "when the infringement complained of is done through P2P file sharing such as through a BitTorrent

20-023Ga

2

protocol, the ISP can neither "remove" nor "disable access to" the infringing material because that material is not stored on the ISP's servers."  F&R at p.8

Petitioners object to all the F&R's factual conclusions that were not based upon any briefings of Doe or Petitioners.

Petitioners object to the F&R's conclusion "…that Petitioners be ordered to return and/or destroy any information obtained from the Subpoena, to maintain no further record of the information from the Subpoena, and to make no further use of the subscriber data obtained from the Subpoena."  F&R at pp. 15-16.

## II.    Bases of Petitioners' Objections

As explained more fully in the Memorandum, the F&R's technical "facts" are fundamentally unsound, not based upon any briefing in this case and defy common network technical principles of IP addresses that were used to identify the locations of infringing material.  Further, the legal conclusions of the F&R fail to consider two decades of development in technology and case law since *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1232 (D.C. Cir. 2003). Indeed, absolutely none of the legal and technical analysis in the F&R was raised by the Petitioners or Doe.  Neither were any arguments questioning the validity of the subpoena raised by Doe.  The F&R flawed technical reason illustrates the wisdom of the Supreme Court's statement in *Wood v. Milyard* that "a federal court does not have carte blanche to depart from the principle of party presentation basic to our

<div style="text-align: center">3</div>

20-023Ga

<div style="text-align: center">ER-198</div>

adversary system".  *Wood v. Milyard*, 566 U.S. 463, 472, 132 S. Ct. 1826, 1833 (2012).

DATED: Kailua-Kona, Hawaii, September 11, 2023.

CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper
Attorney for Petitioners

20-023Ga

4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| IN THE MATTER OF:<br><br>SUBPOENA OF INTERNET<br>SUBSCRIBERS OF COX<br>COMMUNICATIONS, LLC AND<br>COXCOM LLC | MISC. NO. 23-00263 JMS-WRP<br><br>FINDINGS AND<br>RECOMMENDATION TO GRANT<br>JOHN DOE'S MOTION TO QUASH<br>512(h) SUBPOENA |

## FINDINGS AND RECOMMENDATION TO GRANT JOHN DOE'S MOTION TO QUASH 512(h) SUBPOENA

Before the Court is John Doe's Motion to Quash Subpoena (Motion).

See John Doe (Doe) Mot., ECF No. 4.  Petitioners Voltage Holdings, LLC,

Millennium Funding, Inc., Screen Media Ventures, LLC, and Capstone Studios

Corp. filed their Opposition on May 29, 2023.  See Pet'rs' Opp'n, ECF No. 6.  The

Court finds this Motion suitable for disposition without a hearing pursuant to Local

Rule 7.1(c).  After careful consideration of the relevant legal authority, the Court

FINDS AND RECOMMENDS that Doe's Motion be GRANTED and that

Petitioners' 512(h) subpoena be quashed. [1]

---

[1] Because Petitioners obtained the relevant subpoena in this case on "a freestanding basis independent of a complaint or litigation," the "subpoena is its own civil case, and the motion to quash is dispositive of the sole issue presented in

BACKGROUND

This case concerns Petitioners' use of the subpoena provision of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. Section 512(h), to identify internet users who the Petitioners believe are infringing on their copyrights.

On April 13, 2023, Petitioners filed an Application for 512(h) Subpoena (Application) to serve on Internet Service Provider (ISP), Cox Communications, LLC and CoxCom LLC (collectively, "Cox"), to discover the names of several Cox subscribers who appear to have been trading files of copyrighted movies using the protocol BitTorrent.  See Application for 512(h) Subpoena, ECF No. 1-3, Ex. 2 at 2 (where Petitioners identify the relevant infringement occurring via a BitTorrent protocol).

"BitTorrent is not a software program, but rather describes a protocol—a set of rules governing the communication between computers—that allows individual computers on the Internet to transfer files directly to other

---

the case -- whether the subpoena should be enforced or not.  Once that question is answered, the dispute between the parties is fully decided."  In re DMCA Subpoena to Reddit, Inc., 441 F. Supp. 3d 875, 880 (N.D. Cal. 2020).  In the absence of consent by all the parties, as is the case here, the Court must address this dispositive issue in the form of a findings and recommendation to the District Court.  See id. at 881 (citing 28 U.S.C. § 636(b)(1)(B)-(C)).  Accordingly, within fourteen days after a party is served with the Findings and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written objections in the United States District Court.  A party must file any objections within the fourteen-day period to preserve appellate review of the Findings and Recommendation.

2

computers."  BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc., 881 F.3d 293, 298 (4th Cir. 2018).  This method of file sharing is commonly known as "peer-to-peer" (P2P) file sharing and contrasts with the traditional method of downloading a file from a central server using a Web browser.  See id.

P2P systems allow users to disseminate files stored on their computers to other internet users.  See In re Charter Commc'ns, Inc., Subpoena Enf't Matter, 393 F.3d 771, 773 (8th Cir. 2005).  By utilizing this technology, an internet user can directly search the MP3 file libraries of other users, with no web site being involved because the transferred files are not stored on the computers of the ISP providing the P2P users with internet access.  See id. (citing Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc., 351 F.3d 1229, 1232 (D.C. Cir. 2003)).

While Cox has not opposed Petitioners' Application, it appears from other cases and the circumstances of this case that Cox's role in disseminating the allegedly copyrighted material is confined to acting as a mere "conduit" in the transfer of files through its network including the files at issue in this case.  "As a conduit ISP, Cox only provides Internet access to its subscribers.  Cox does not create or sell software that operates using the BitTorrent protocol, store copyright-infringing material on its own computer servers, or control what its subscribers

store on their personal computers." Cox Commc'ns, Inc., 881 F.3d at 299. In other words, Cox merely provides the internet that connects two users so that they are able to exchange allegedly infringing material on their personal computers.

Petitioners' Subsection 512(h) subpoena (referred to herein as "512(h) Subpoena" or "Subpoena") was issued on April 13, 2023, demanding certain subscriber information including the names of Cox subscribers associated with several IP addresses, their last known address, last known telephone number, and any electronic mail addresses associated with the subscribers. See Application for 512(h) Subpoena, ECF No. 1-4 at 1.

On May 24, 2023, one of those subscribers, Doe, appearing *pro se*, filed a letter with this Court, which was construed as the present Motion to Quash the 512(h) Subpoena. See Doe's Mot., ECF No. 4. In the Motion, Doe objects to the Subpoena, stating that he and his family "erroneously forgot to add a password" to their Wi-Fi network and that they do not have the infringing material on their computers. See id. In their Opposition, Petitioners respond to Doe's objection; however, neither party analyzes whether the 512(h) Subpoena was valid.

4

<u>DISCUSSION</u>

When analyzing motions to quash 512(h) subpoenas, courts first address the validity of the subpoena.  E.g., <u>In re DMCA Subpoena to eBay, Inc.</u>, 2015 WL 3555270, at *2 (S.D. Cal. June 5, 2015); <u>Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Identified by Hash B7FEC872874D0CC9B1372ECE5ED07AD7420A3BBB</u>, 2012 WL 4387420, at *1 (S.D. Tex. Sept. 25, 2012).

**I.   Validity of 512(h) Subpoena**

The DMCA provision governing issuance of a subpoena to identify an infringer, 17 U.S.C. Section 512(h)(1)-(2), provides in part as follows:

> (1) Request.--A copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection.
>
> (2) Contents of request.--The request may be made by filing with the clerk--
> **(A) a copy of a notification described in subsection (c)(3)(A);**
> (B) a proposed subpoena; and
> (C) a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title.

17 U.S.C. § 512(h)(1)-(2) (emphasis added).

<center>5</center>

The notice provision in Subsection 512(c)(3)(A) (referred to herein as a "512(c)(3)(A) notice") requires the following elements in the notification:

> (i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
>
> (ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.
>
> (iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is **to be removed** or **access to which is to be disabled**, and information reasonably sufficient to permit the service provider to locate the material.
>
> (iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.
>
> (v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.
>
> (vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

17 U.S.C. § 512(c)(3)(A)(i)-(vi) (emphasis added).  To comply with the 512(c)(3)(A) notice provision, a notice must contain *all* of the above requirements.

See Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102, 1112 (9th Cir. 2007).  This

6

notification is a mandatory part of the subpoena request and a condition precedent to the issuance of a subpoena because the statute further provides, as the "[b]asis for granting subpoena," that the notification filed must satisfy the provisions of subsection 512(c)(3)(A). See In re Charter, 393 F.3d at 775 (citing 17 U.S.C. § 512(h)(4)). Therefore, a 512(h) subpoena may only issue upon proof of a notice to an ISP that complies with each provision in Subsection (c)(3)(A) of the DMCA.

While it does not appear that the Ninth Circuit or the District of Hawaii has addressed whether a copyright owner can meet the requirements of Subsection 512(c)(3)(A) (and thereafter obtain a 512(h) subpoena) when dealing with an ISP that merely acts a conduit between two P2P infringers, the District of Columbia and Eighth Circuits have held that it cannot.

In Verizon and In re Charter, the DC Circuit and Eighth Circuit held that a 512(h) subpoena may be issued only to an ISP engaged in *storing* on its servers material that is infringing or the subject of infringing activity. See Verizon, 351 F.3d at 1233 ("We conclude from both the terms of § 512(h) and the overall structure of § 512 that, . . . a [512(h)] subpoena may be issued only to an ISP engaged in storing on its servers material that is infringing or the subject of infringing activity."); In re Charter, 393 F.3d at 777 ("We agree with and adopt the reasoning of the United States Court of Appeals for the District of Columbia

7

Circuit in <u>Verizon</u> as it pertains to this statutory issue.  Thus, because the parties do not dispute that [the ISP's] function was limited to acting as a conduit for the allegedly copyright protected material, we agree § 512(h) does not authorize the subpoenas issued here.").  Twitter and eBay, for example, store information when users post to their platforms and, therefore, may be subject to a 512(h) subpoena to identify a user who is posting infringing material to their platforms.  <u>See</u> <u>In re DMCA § 512(h) Subpoena to Twitter, Inc.</u>, 2021 WL 6135300, at *2 (N.D. Cal. Dec. 29, 2021); <u>Rosen v. eBay, Inc.</u>, 2015 WL 1600081, at *5 (C.D. Cal. Jan. 16, 2015) (discussing how in creating listings, eBay creates a copy of the copyrighted image and stores it on its servers).

In contrast, 512(h) subpoenas have been held to be invalid when issued to ISPs acting as mere conduits.  That is, when the infringement complained of is done through P2P file sharing such as through a BitTorrent protocol, the ISP can neither "remove" nor "disable access to" the infringing material because that material is not stored on the ISP's servers.  <u>See</u> <u>Verizon</u>, 351 F.3d at 1237 ("We think it clear . . . that § 512(h) applies to an ISP storing infringing material on its servers in any capacity . . . and does not apply to an ISP routing infringing material to or from a personal computer owned and used by a subscriber."); 17 U.S.C. § 512(c)(3)(A)(iii).  No matter what information the copyright owner may provide in

8

its 512(c)(3)(A) notice, a conduit ISP cannot remove or disable one user's access to infringing material resident on another user's computer because the ISP does not control the content on its subscribers' computer. [2]  See Verizon, 351 F.3d at 1235; see also id. at 1236 (emphasis added) ("The [copyright owner's] notification identifies absolutely no material [the ISP] could remove or access to which it could disable, **which indicates to us that § 512(c)(3)(A) concerns means of infringement *other* than P2P file sharing**.").  In other words, the ISP is powerless to act upon the infringing material.

In sum, the validity of a 512(h) subpoena depends on whether the copyright owner has provided the ISP with a 512(c)(3)(A) notice that meets all of the criteria set forth in each of the subparts 512(c)(3)(A), and any notice to an ISP concerning its activity as a mere conduit cannot satisfy subpart 512(c)(2)(A)(iii) because there is no infringing material to be removed or access to which can be

_____

[2] The Court notes that others have argued that an ISP can indeed "disable access" to infringing material by terminating the offending subscriber's internet account.  See Verizon, 351 F.3d at 1235.  However, the D.C. Circuit dispensed with this argument by noting that, in the text of the DMCA, Congress distinguished the concepts of disabling access to infringing material and disabling access to a subscribers' account.  See id.  "[W]here different terms are used in a single piece of legislation, the court must presume that Congress intended the terms have different meanings."  Id. (citation omitted).  That Congress distinguished these concepts in the DMCA establishes that terminating a subscriber's account is not the same as removing or disabling access by others to the infringing material resident on the subscriber's computer.  See id.

9

disabled.  See Verizon, 351 F.3d at 1236 ("A § 512(h) subpoena simply cannot meet the notice requirement of § 512(c)(3)(A)(iii).").

In further support of the conclusion that 512(h) subpoenas are not available to serve on ISPs acting as conduits for P2P file sharing infringement, the courts in Verizon and In re Charter focused on the structure of the DMCA.  The DMCA creates safe harbors that shield ISPs from liability for copyright infringement.  "Each safe harbor applies to a particular ISP function."  In re Charter, 393 F.3d at 775; see also Verizon, 351 F.3d 1229, 1234 (discussing the differences between the four safe harbors).  "The first safe harbor, under § 512(a), limits the liability of ISPs when they do nothing more than transmit, route, or provide connections for copyrighted material—that is, when the ISP is a *mere conduit* for the transmission."  In re Charter, 393 F.3d at 775 (emphasis added).  "The second safe harbor, under § 512(b), protects ISPs for 'system caching,' that is, instances when they provide intermediate and temporary storage of material on a system or network under certain conditions."  Id.  "The third safe harbor, under § 512(c), limits the liability of an ISP for infringing material 'residing on [the ISP's] system or network at the direction of its users."  Id.  "The fourth safe harbor, under § 512(d), protects an ISP when it merely links users to online locations containing infringing material."  Id.

10

The notification provision is found within Subsection 512(c), or the storage-at-the-direction-of-users safe harbor.  See In re Charter, 393 F.3d at 776. The notification provision is also referenced, however, in two other safe harbors—subsections (b) and (d) - the "system caching" and "linking" safe harbors.  See id. Each of these three subsections "protect an ISP from liability if the ISP responds expeditiously to remove, or disable access to, the material that is claimed to be infringing *upon notification* of claimed infringement as described in [§ 512](c)(3)." Id. (emphasis added).

However, the Verizon and In re Charter courts distinguished the safe harbor under Subsection 512(a) - which does not require notification to an ISP that acts as a mere conduit for the transmission–from the safe harbors established under Subsections 512(b)-(d), which do require notification to the ISP.  See Maximized Living, Inc. v. Google, Inc., 2011 WL 6749017, at *5 (N.D. Cal. Dec. 22, 2011) (citing In re Charter, 393 F.3d at 776); see also Verizon, 351 F.3d at 1234 ("Notably present in §§ 512(b)-(d), and notably absent from § 512(a), is the so-called notice and take-down provision.").  The Eighth Circuit determined that "**a specific purpose of the notification provision is to allow an ISP, *after notification*, the opportunity to remove or disable access to infringing material and thereby protect itself from liability for copyright infringement**."

11

Maximized, 2011 WL 6749017, at *5 (emphasis added) (citing In re Charter, 393 F.3d at 776). "The absence of the remove-or-disable-access provision (and the concomitant notification provision) [in the safe harbor provision of § 512(a)] makes sense where an ISP merely acts as a conduit for infringing material—rather than directly storing, caching, or linking to infringing material—because the ISP has no ability to remove the infringing material from its system or disable access to the infringing material." In re Charter, 393 F.3d at 776. Based on this analysis of the structure of the statute, a copyright owner may not request a 512(h) subpoena for an ISP which merely acts as a conduit for P2P file sharing. See Maximized, 2011 WL 6749017, at *5 (citing In re Charter, 393 F.3d at 776-77); Verizon, 351 F.3d at 1236 ("[W]e agree with Verizon that § 512(h) does not by its terms authorize the subpoenas issued here.").

Accordingly, under Verizon and In re Charter, a 512(h) subpoena may not be issued to a conduit ISP for P2P file sharing infringement because a conduit ISP cannot comply with a 512(c)(3)(A) notice as there is no infringing material to be removed or to disable access to, and, further, the 512(c)(3)(A) notice provision was not intended to apply to ISPs acting as mere conduits.

District Courts in the Ninth and Fifth Circuits have agreed with the D.C. and Eighth Circuits' reasoning for denying issuance of a 512(h) subpoena

12

when the circumstances involve an ISP acting as a conduit in P2P infringement. See Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Identified by Hash B7FEC872874D0CC9B1372ECE5ED07AD7420A3BBB, 2012 WL 4387420, at *2 (S.D. Tex. Sept. 25, 2012) (relying in Verizon and In re Charter and stating that "a copyright owner cannot request a subpoena for an ISP which merely acts as a conduit for data."); id. at *3 ("While this Court acknowledges it is not bound to follow the precedent of Verizon, it finds compelling the statutory analysis employed in Verizon."); eBay, Inc., 2015 WL 3555270, at *3 ("This Court agrees that allegedly infringing material must be available to be removed for the § 512(c)(3) notification to have any effect.  See § 512(c)(3)(A)(iii).  This Court also agrees that a DMCA subpoena, without a satisfactory notification being served simultaneously with or subsequent to the notification, is not enforceable."); Maximized Living, Inc. v. Google, Inc., 2011 WL 6749017, at *6 (N.D. Cal. Dec. 22, 2011) ("This Court agrees with the reasoning of [Verizon] and holds that the subpoena power of § 512(h) is limited to currently infringing activity and does not reach former infringing activity that has ceased and thus can no longer be removed or disabled.").

Here, this Court also agrees with the reasoning in Verizon and In re Charter.  The Court FINDS AND RECOMMENDS that the 512(h) Subpoena be

13

quashed because, as stated above, subpart 512(c)(3)(A)(iii) required Petitioners to identify in their 512(c)(3)(A) notice to Cox the infringing material that could be removed or access to which can be disabled, which Petitioners could not do because Cox's role in the alleged infringement was limited to providing the internet service that connected P2P subscribers utilizing a BitTorrent protocol to allegedly download and share movies between their personal computers; there was nothing stored on Cox's servers to be taken down.  Because Petitioners' 512(c)(3)(A) notice did not comply with subpart 512(c)(2)(A)(iii) (and it needed to comply with each provision of 512(c)(3)(A), see Perfect 10, 488 F.3d at 1112 and In re Charter, 393 F.3d at 775), Petitioners were not entitled to the 512(h) Subpoena.[3]

While the validity of the 512(h) Subpoena under Verizon and In re Charter was not discussed in their Opposition, Petitioners were aware that the Court may quash the 512(h) Subpoena as invalid because they cited to Verizon and In re Charter in their original Application for the Subpoena–two cases that quashed 512(h) subpoenas to conduit ISPs where the infringement concerned P2P file

---

[3] The Court notes that there are alternative avenues to seeking Doe's identity including a "John Doe" lawsuit, many of which are pending in district courts across the country.  In such a lawsuit, Petitioners could file the John Doe suit together with a motion for third-party discovery to identify an otherwise anonymous John Doe defendant.

14

sharing.  See Application for 512(h) Subpoena, ECF No. 1 at 4.  Petitioners chose not to analyze why this case is distinguishable from other P2P file sharing infringements cases involving 512(h) subpoenas in their Opposition.  At the very least, in citing to Verizon and In Re Charter in their Application, it appears that Petitioners agree that Cox is a conduit ISP.

Based on the foregoing and the reasoning discussed throughout this Findings and Recommendation, the Court RECOMMENDS that the 512(h) Subpoena be quashed.[4]

## II.    Information Already Received By Petitioners

The Court points out that until the filing of this Findings and Recommendation, there have been no obstacles to prevent Petitioners from making use of any information they already received from Cox as to the other John Doe identities requested in their 512(h) Subpoena.  Accordingly, if the District Court adopts this Findings and Recommendation and quashes the 512(h) Subpoena, the Court further RECOMMENDS that Petitioners be ordered to return and/or destroy any information obtained from the Subpoena, to maintain no further record of the

---

[4] Because the Court finds and recommends that the Subpoena was not validly issued, the Court does not address Doe's argument that he and his family failed to add a password to their Wi-Fi and that, because of this, the infringers are not Doe and his family but some unknown third-party who accessed their Wi-Fi.

15

information from the Subpoena, and to make no further use of the subscriber data obtained from the Subpoena.  See In re Charter, 393 F.3d at 778.

CONCLUSION

The Court FINDS AND RECOMMENDS that the 512(h) Subpoena, ECF No. 3, be QUASHED and that Petitioners be ordered return and/or destroy any information derived from the Subpoena, to maintain no further record of the information obtained the Subpoena, and to make no further use of the subscriber data obtained from the Subpoena.

Additionally, the Court ORDERS Petitioners to serve a copy of this Findings and Recommendation on Cox Communications, LLC and CoxCom LLC with instructions for each to provide this Findings and Recommendation to John Doe, I.P. Address: 50.159.108.38.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, AUGUST 31, 2023.



Wes Reber Porter
United States Magistrate Judge

**IN THE MATTER OF: SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC; MISC, NO. 23-00263 JMS-WRP; FINDINGS AND RECOMMENDATION TO GRANT MOTION TO QUASH 512(H) SUBPOENA**

16

CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:  (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Petitioners
Voltage Holdings, LLC,
Millennium Funding, Inc., and
Capstone Studios Corp.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re Subpoena ) | **Case No.:** 1:23-mc-263-JMS-WRP |
| ) | (Copyright) |
| Internet subscribers of Cox ) | |
| Communications, LLC and CoxCom ) | CERTIFICATE OF SERVICE |
| LLC ) | |
| ) | |
| ) | |
| _____ ) | |

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on <u>May 30, 2023</u> and by the methods of

service noted below, a true and correct copy of the Opposition [Doc. #6] and Order

[Doc. #5] were served to the following:

<u>Via First Class Mail</u>
*Service per Rule 5(b)(2)(D)*
Internet Subscriber at IP address 50.159.108.380

1

20-023Ga

c/o Clerk of Court
District of Hawaii
300 Ala Moana Blvd, C-338
Honolulu, HI, 96850

Via First Class Mail
Corporation Service Co.
Agent for Cox Communications LLC and CoxCom LLC
251 Little Falls Drive
Wilmington, DE 19808

DATED: Kailua-Kona, Hawaii, May 30, 2023.

                CULPEPPER IP, LLLC


                /s/ Kerry S. Culpepper
                Kerry S. Culpepper

                Attorney for Petitioners
                CULPEPPER IP, LLLC
                75-170 Hualalai Road, Suite B204
                Kailua-Kona, Hawaii 96740
                Telephone:  (808) 464-4047
                Facsimile:   (202) 204-5181
                E-Mail:        kculpepper@culpepperip.com
                Attorney for Petitioners

2

20-023Ga

CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:   (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Petitioners
Voltage Holdings, LLC
Millennium Funding, Inc., and
Capstone Studios Corp.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re Subpoena ) | **Case No.:** 1:23-mc-263-JMS-WRP |
| ) | (Copyright) |
| Internet subscribers of Cox ) | |
| Communications, LLC and CoxCom ) | **MEMORANDUM IN IN** |
| LLC ) | **OPPOSITION TO MOTION TO** |
| ) | **QUASH** |
| ) | |
| _____ ) | |

**MEMORANDUM IN OPPOSITION TO MOTION TO QUASH [DOC. #4]**

**I.      BACKGROUND**

Petitioners Voltage Holdings, LLC, Millennium Funding, Inc., and Capstone

Studios Corp. (hereafter: "Petitioners") are the owners of copyright protected

motion pictures *After Ever Happy*, *The Protégé* and *Fall*. *See* Ex. "1" [Docs. #1-2].

John Doe at IP Address: 50.159.108.38 ("Doe") is an Internet subscriber whose

Internet service was used to share copies of the motion picture *Fall* via the peer-to-

20-023Ga

peer protocol BitTorrent.  *See* Id. Petitioners served a subpoena on Cox to obtain the identities of Cox subscribers whose service was used to share pirated copies of their motion pictures in violation of their exclusive rights.

As these subscribers anonymously used the Internet to commit infringement, Petitioners only know their Internet Protocol ("IP") addresses, the time of the infringements and that the IP addresses were assigned by their Internet Service Provider ("ISP") Cox.  *See* Ex. "1" [Doc. #1-2]

Cox notified their Internet Subscribers prior to disclosing the identification information to Petitioners' counsel to give them an opportunity to file any motions in this Court contesting the subpoena.  Doe submitted a letter [Doc. #4] objecting to the subpoena.  The Court construed the letter as a motion to quash.  *See* Order [Doc. #5].

## II.    ARGUMENT

### A.    Doe has not asserted a legal basis for quashing the subpoena.

Doe fails to assert any legal basis for quashing the subpoena beyond a naked objection.  Moreover, Doe concedes that someone may have used his Internet service to share copies of Petitioners' Work.  *See* Doc. #4 ("This mistake was allowing everyone in our neighborhood to use our internet").  Courts have noted that mere objections to having personal information disclosed such as Doe's objection are not sufficient basis for quashing a subpoena.  *See After II Movie, LLC*

2

*v. Grande Communications Networks LLC*, Case 1:21-cv-00709-RP, Dkt. 99 (W.D. Tex. April 26, 2023) (citing *After II Movie, LLC v. WideOpenWest Finance, LLC*, No. 21-CV-1901, Dkt. 126 (D. Colo. Dec. 15, 2022))(attached as Exhibit "1".)

**B.     There is no undue burden or expense to Defendant Doe to comply with the Subpoena.**

Notwithstanding Doe failing to assert a legal basis for quashing the subpoena, Plaintiff respectfully asserts that the subpoena served on Cox fully complies with Rule 45 of the Federal Rules of Civil Procedure.

Rule 45(d)(1) requires an attorney responsible for issuing and serving a subpoena to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. *See* Fed. R. Civ. P. 45(d)(1).  Cox has not objected to the subpoena per Rule 45(d)(2)(B).  There is no expense required of Doe to comply with the subpoena at issue.   Further, Doe has not asserted a recognized undue burden.

Rule 45(d)(3)(A)(iii) requires a court to quash or modify a subpoena that requires disclosure of privileged or other protected matter.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iii).   The subpoena does not require disclosure of privileged or other protected matter.   It should be noted that Doe does not have a recognized privacy interest in his/her IP address. The Ninth Circuit has consistently held that a person

3

20-023Ga

has no legitimate expectation of privacy in information they voluntarily turn over to third parties.  For example, in the Fourth Amendment context, in *United States v. Forrester*, the Ninth Circuit allowed the warrantless collection of email and IP address because email and IP addresses "constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers." *See United States v. Forrester,* 512 F.3d at 500, 510 (9th Cir. 2008).

## III.   SERVICE

In the Order [Doc. #5], the Court ordered Petitioners to serve Doe with a copy of the Order and this Memorandum of Opposition. However, Petitioners do not know Doe's address.  Accordingly, Petitioners are serving Doe pursuant to Rule 5(b)(2)(D) by mailing these documents to the Clerk of the Court.

## IV.   CONCLUSION

For the foregoing reasons, the Petitioners request that this Court issue an order denying Doe's Motion to Quash and ordering Cox to disclose the identification information of Doe as requested in the subpoena.

DATED: Kailua-Kona, Hawaii, May 29, 2023.

20-023Ga

CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper
Attorney for Petitioners

20-023Ga

5

## Kerry Culpepper

| | |
|---|---|
| **From:** | hid_resp@hid.uscourts.gov |
| **Sent:** | Friday, May 26, 2023 10:15 AM |
| **To:** | hawaii_cmecf@hid.uscourts.gov |
| **Subject:** | Activity in Case 1:23-mc-00263-JMS-WRP In Re: Subpoena of Internet subscribers of Cox Communications, LLC and CoxCom LLC Set Ripe Deadline |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of Hawaii

## Notice of Electronic Filing

The following transaction was entered on 5/26/2023 at 10:15 AM HST and filed on 5/26/2023

**Case Name:** In Re: Subpoena of Internet subscribers of Cox Communications, LLC and CoxCom LLC

**Case Number:** 1:23-mc-00263-JMS-WRP

**Filer:**

**WARNING: CASE CLOSED on 04/13/2023**

**Document Number:** 5(No document attached)

**Docket Text:**
**EO: Regarding [4] Letter from John Doe at IP Address: 50.159.108.38, which has been construed as a Motion to Quash Subpoena, the Court DIRECTS the Petitioners to file a response no later than 6/12/2023; any reply shall be filed no later than 7/3/2023. Thereafter, the Court will determine whether to set a hearing or issue the appropriate order.**

**Petitioners shall serve a copy of this EO, as well as their Opposition, on John Doe and shall file certificates of service reflecting such service.**

**John Doe is referred to the Court's website for information regarding pro se representation.**

**(MAGISTRATE JUDGE WES REBER PORTER)**
**(jo)**

**1:23-mc-00263-JMS-WRP Notice has been electronically mailed to:**

Kerry S. Culpepper     kculpepper@culpepperip.com, nho@culpepperip.com

**1:23-mc-00263-JMS-WRP Notice will not be electronically mailed to:**

1

John Doe
Las Vegas, NV

2

May 22, 2023

Honorable J Michael Seabright
United States District Court
District of Hawaii
300 Ala Moana Blvd C-338
Honolulu, HI 96850

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 2 4 2023

at __1__ o'clock and __30__ min. ___P___ M
CLERK, U.S. District Court

From: Internet Subscriber of Cox Communication, LLC and CoxComm LLC
Re: Civil Action No. MC 23-00263 JMS-WRP
I.P. Address: 50.159.108.38 – Las Vegas, NV
CCed: Cox Communication, Inc Subpoena Compliance Office

Dear Honorable J Michael Seabright:

On May 6, 2023 I received a subpoena to have Cox Communication, Inc. release information about IP address: 50.159.108.38 referenced as Civil Action No. MC 23-00263 JMS-WRP

My wife, children and I reside in Las Vegas NV and we are submitting an objection to having our information released to Voltage Holdings. I understand it was advised by Cox to have an attorney to assist but we do not have the means to afford one. I am currently on disability and receiving government aid. Our internet service through Cox is provided through the government Affordable Connectivity Program because our household is below 200% of the Federal Poverty Guidelines.

We received a notice from Cox Communications stating someone using Cox High Speed Internet service has violated U.S. Copyright law. Upon receipt from Cox, we learned since installing our Wi-Fi router, the device that allows us to connect our household to internet services, we had an unprotected open network. We erroneously forgot to add a password to our Wi-Fi and found out our internet service was open for anyone to use. This mistake was allowing everyone in our neighborhood to use our internet.

I spoke with my wife, children and looked at our computer. The item in question on the subpoena is not anywhere to be found on our computer. We have added a password to hopefully prevent this from happening ever again. If you would require, we could mail you our computer or hard drive for inspection so long as it would be sent back prior to August 2023 as our children need it for school to access classroom assignments.

Appropriately I am asking to have this motion quashed or dismissed and I am objecting to having my personal information released. We do not have the ability to travel and address you directly and cannot afford an attorney to represent us in this matter so we are praying this is received at your highest court and taken in the upmost consideration.

Sincerely,

John Doe

I.P Address: 50.159.108.38 – Las Vegas, NV
Re: Civil Action No. MC 23-00263 JMS-WRP

Received By Mail
Date 5/24/2023

ER-225

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Hawaii

| | |
|---|---|
| In re Subpoena of _____ <br> *Plaintiff* <br> v. <br> Internet subscribers of Cox Communications, LLC and CoxCom LLC <br> *Defendant* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil Action No. **MC 23-00263 JMS-WRP** |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                        Cox Communications, LLC and CoxCom LLC

_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Subscriber information (the name, last known address, last known telephone number, and any electronic mail addresses associated with the subscriber or account holders) associated with IP addresses as shown in attached Exhibit "1"

| Place: email: kculpepper@culpepperip.com; Kerry Culpepper; 75-170 Hualalai Road, Suite B204, Kailua Kona, HI 96740 | Date and Time: <br> 06/27/2023 10:06 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

    The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: **Apr 13, 2023**

*CLERK OF COURT*

**/s/ Lucy Carillo, Clerk by: JT, Deputy Clerk**          OR          _____
_____                                     *Attorney's signature*
*Signature of Clerk or Deputy Clerk*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Voltage Holdings, LLC, Millennium Funding, Inc., et al. (all requestors) _____, who issues or requests this subpoena, are:

Kerry S. Culpepper, 75-170 Hualalai Rd., #B204, Kailua-Kona, HI 96740, kculpepper@culpepperip.com, 808-464-4047

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   MC 23-00263 JMS-WRP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

ER-227

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:  (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Owners/Requestors;
Voltage Holdings, LLC
Millennium Funding, Inc., and
Capstone Studios Corp.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re Subpoena | ) | **Case No.:** 1:23-mc-263 |
| | ) | (Copyright) |
| Internet subscribers of Cox | ) | |
| Communications, LLC and CoxCom | ) | APPLICATION FOR 512(h) |
| LLC | ) | SUBPOENA |
| | ) | |
| | ) | |
| | ) | |

APPLICATION FOR 512(h) SUBPOENA

TO: CLERK OF THE ABOVE-ENTITLED COURT:

Pursuant to 17 U.S.C. § 512(h) (hereafter: "512(h)"), Voltage Holdings, LLC,

Millennium Funding, Inc., Screen Media Ventures, LLC and Capstone Studios Corp.

(collectively "Owners") hereby apply for issuance of a subpoena to Co

Communications, LLC and CoxCom LLC (collectively "service provider") to

1

20-023Ga

ER-229

identify the alleged infringers of Owners' copyright protected motion pictures as listed in Exhibit "1".

512(h) provides the copyright owner with a mechanism to request a subpoena from this Court. Particularly, 512(h)(1) provides:

(1) Request.—

A copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection.

As stated in the Declaration of Counsel, the undersigned represents the Owners of an exclusive right in the copyright protected subject matter.

512(h)(2) provides:

(2) Contents of request.—The request may be made by filing with the clerk—

(A) a copy of a notification described in subsection (c)(3)(A);

(B) a proposed subpoena; and

(C) a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title.

The undersigned provided a representative copy of the notifications described in subsection (c)(3)(A) [*See* Exhibit "2"], a proposed subpoena and the sworn declaration.

512(h)(3) provides:

(3) Contents of subpoena.—

2

20-023Ga

ER-230

The subpoena shall authorize and order the service provider receiving the notification and the subpoena to expeditiously disclose to the copyright owner or person authorized by the copyright owner information sufficient to identify the alleged infringer of the material described in the notification to the extent such information is available to the service provider.

The proposed subpoena is in accordance with 512(h)(3).

512(h)(4) provides:

(4) Basis for granting subpoena.—

If the notification filed satisfies the provisions of subsection (c)(3)(A), the proposed subpoena is in proper form, and the accompanying declaration is properly executed, the clerk shall expeditiously issue and sign the proposed subpoena and return it to the requester for delivery to the service provider.

As the undersigned has provided the notification, the proposed subpoena in proper form, and the properly executed declaration, the clerk must issue and sign the proposed subpoena. 512(h)(4) provides that *the Clerk*, not a Judge should issue and sign the proposed subpoena.

512(h)(6) provides that "…the procedure for issuance and delivery of the subpoena…shall be governed to the greatest extent practicable by those provisions of the Federal Rules of Civil Procedure governing the issuance, service, and enforcement of a subpoena duces tecum". That is, 512(h)(6) provides that the procedures for the Rule 45 subpoena shall govern. The proposed subpoena is a Rule 45 subpoena.

3

20-023Ga

The DC Circuit has determined that a subpoena under 512(h) "may be issued only to an ISP engaged in storing on its servers material that is infringing or the subject of infringing activity." *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1233 (D.C. Cir. 2003). The Eighth Circuit adopted the reasoning of the DC Circuit and concluded that 512(h) only applies to ISPs that directly store, cache, or provide links to infringing material. *See In re Charter Communications, Inc.*, 393 F.3d 771, 776-77 (8th Cir. 2005). Both of the decisions turned on the conclusion that the notification described in subsection (c)(3)(A) could not be applied to an ISP that acts as a conduit. The Tenth Circuit has not yet concluded whether 512(h) applies to ISPs that function as a conduit for infringing material. However, the Fourth Circuit recently concluded that notifications similar to those described in subsection (c)(3)(A) were sufficient to trigger an ISP's loss of the DMCA safe harbor. *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 300 (4th Cir. 2018). Accordingly, Owner respectfully submits that the Tenth Circuit would likely conclude that 512(h) does also apply to ISPs that directly store, cache, or provide links to infringing material.

For these reasons, the undersigned request that the Clerk of the Court expeditiously issue and sign the proposed subpoena and return it to the undersigned via ECF to be served on the service provider.

4

20-023Ga

DATED: Kailua-Kona, Hawaii, April 13, 2023.


CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:   (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:        kculpepper@culpepperip.com
Attorney for Owners/Requestors

5

20-023Ga

**Exhibit "2"**

Message-ID: 4XN01C9C90FD4D00052235213826@dmcagateway.com
Bcc: ████████████████████████████
████████████████████████████

To: <CoxDMCA@cox.net>
Subject: Notice of Claimed Infringement [Case No. 52235213826]
Date: Mon, 20 Feb 2023 10:30:33 +0100
Content-Type: text/plain;
        charset="utf-8"
Content-Transfer-Encoding: quoted-printable

-----BEGIN PGP SIGNED MESSAGE-----
Hash: SHA256

Notice of Claimed Infringement


Notice ID: 52235213826
Notice Date: 2023-02-20 09:30:33


Dear Sir or Madam:

This message is sent on behalf of After Ever Happy Productions Ltd.=2E

Under penalty of perjury, I assert that=C2=A0PML Process Management Ltd. =
is authorized to act on behalf of the owner of the exclusive copyrights =
that are alleged to be infringed herein=2E

After Ever Happy Productions Ltd. owns the copyrights to the movie After =
Ever Happy. The unauthorized download and distribution of this file by =
your IP address constitutes copyright infringement.=20

Please see below details for the infringements:=20

Protocol: BITTORRENT
Infringed Work: After Ever Happy
Infringing FileName: After Ever Happy (2022) [1080p] [WEBRip] [5.1] =
[YTS.MX]
Infringing FileSize:=C2=A01873162572
Infringer's=C2=A0IP=C2=A0Address: 70.161.172.138
Infringer's Port: 34307
Initial Infringement Timestamp: 2023-02-19 00:03:57

And, you=E2=80=99re also creating a security risk on your computers, =
devices and networks when you download unauthorized movies or allow others =
to do so from your Internet connection=2E
  =20
We respectfully ask that you stop infringing and redistributing After Ever =
Happy Productions Ltd. copyright protected content, and take the proper =
steps to secure your Internet so that others do not infringe and =

redistribute our content as well.=20
 =20
We have a good faith belief that use of the copyrighted material detailed =
above is not authorized by the copyright owner, its agent, or the law.  In =
addition, we have a good faith subjective belief that the use does not =
constitute fair use. The information in this notice is accurate and we =
state, under penalty of perjury, that we are authorized to act on behalf =
of the owner of the copyright that is allegedly infringed. This letter is =
not a complete statement of After Ever Happy Productions Ltd.=E2=80=99s =
rights in connection with this matter, and nothing contained herein =
constitutes an express or implied wavier of any rights or remedies of =
After Ever Happy Productions Ltd. in connection with this matter, all of =
which are expressly reserved=2E

We appreciate your assistance and thank you for your cooperation in this =
matter=2E
=20
Respectfully,

/Thomas Nowak/
Thomas Nowak
PML Process Management Ltd=2E
████████████████████
Address:
Lordou Vyronos, 61-63, Floor 5
Larnaca 6023
Cyprus

```xml
<?xml version=3D"1.0" encoding=3D"UTF-8"?>
<Infringement>
        <Case>
                <ID>52235213826</ID>
        </Case>
        <Complainant>
                <Entity>After Ever Happy Productions Ltd.</Entity>
                <Contact>Thomas Nowak</Contact>
                <Address>Lordou Vyronos, 61-63, Floor 5 Larnaca 6023
Cyprus</Address>
                <Email███████████████</Email>

        </Complainant>
        <Service_Provider>
                <Entity>Cox Communications</Entity>
                <Address>1400 Lake Hearn Drive, Atlanta, GA 30319, US</Address>
                <Phone>+1-404-269-7626</Phone>
                <Email>CoxDMCA@cox.net</Email>
        </Service_Provider>
```

```
        <Source>
                <TimeStamp>2023-02-19T00:03:57Z</TimeStamp>
                <IP_Address>70.161.172.138</IP_Address>
                <Port>34307</Port>
                <Type>BitTorrent</Type>
        </Source>
        <Content>
                <Item>
                        <Title>After Ever Happy</Title>
                        <FileName>After Ever Happy (2022) [1080p] [WEBRip] [5.1] =
[YTS.MX]</FileName>
                        <FileSize>1873162572</FileSize>
                        <Type>Movie</Type>
                        <Hash
Type=3D"SHA1">592361C3D5CBE24B0C19D9A448F9EE7EE015FB1F</Hash>
                </Item>
        </Content>
</Infringement>
-----BEGIN PGP SIGNATURE-----
```



```
-----END PGP SIGNATURE-----
```

**Exhibit "1"**

| Number | NoticesID | IP | Filehash |
|---|---|---|---|
| 1 | 52235213826 | 70.161.172.138 | 592361C3D5CBE24B0C19D9A448F9EE7EE015FB1F |
| 2 | 51998269860 | 98.186.195.187 | 8360C3CF1076A2305C3FBF6D1B35A9A442636967 |
| 3 | 50781423708 | 174.72.179.158 | 7C4F75A3FAE8946A62B6265F524375666C293F2C |
| 4 | 50921146500 | 70.160.12.144 | 468A426EE49D2B40C80E6898BA750103A9CEC3BA |
| 5 | 51643585404 | 70.189.207.108 | 6C20DCA33CC84493F29BE1ECD2AD7E5EBFF6A868 |
| 6 | 51998876640 | 98.186.195.187 | 6C20DCA33CC84493F29BE1ECD2AD7E5EBFF6A868 |
| 7 | 52252775054 | 70.161.172.138 | 468A426EE49D2B40C80E6898BA750103A9CEC3BA |
| 8 | 52564539256 | 70.163.221.46 | 35D021DAAF4DB716A9A280ECD6F4D4FE5246C79B |
| 9 | 52806820788 | 68.230.145.56 | 468A426EE49D2B40C80E6898BA750103A9CEC3BA |
| 10 | 52796238184 | 68.230.145.56 | 468A426EE49D2B40C80E6898BA750103A9CEC3BA |
| 11 | 52792226610 | 70.176.239.249 | 6AD5AF766E1614DA3EB14C6D8CB20A446A63B00F |
| 12 | 52789574168 | 174.66.240.9 | 117B30F1FB138DC5EA00D29C52FFB468809C5B6A |
| 13 | 52788243934 | 184.187.165.114 | 9FBEEEF55D19F696F9D7B1D7941AB700D5F0FE16 |
| 14 | 52785566340 | 68.7.2.39 | 468A426EE49D2B40C80E6898BA750103A9CEC3BA |
| 15 | 52776772346 | 68.102.95.159 | 3E73F38A3BB9641254E26F62074FD19053AD5652 |
| 16 | 52774730550 | 98.183.115.204 | 468A426EE49D2B40C80E6898BA750103A9CEC3BA |
| 17 | 52773380996 | 68.224.197.234 | 34ED17BA4E71F2ECB9714DDBA5BA09DDB5DCC337 |
| 18 | 52773377312 | 174.66.240.9 | 117B30F1FB138DC5EA00D29C52FFB468809C5B6A |
| 19 | 52757493598 | 72.204.68.144 | 4E739ED0B5E1CF0B298F619622D910EF04CE57F4 |
| 20 | 52756793438 | 68.3.91.183 | 6AD5AF766E1614DA3EB14C6D8CB20A446A63B00F |
| 21 | 52756103884 | 68.230.145.56 | 468A426EE49D2B40C80E6898BA750103A9CEC3BA |
| 22 | 52756103880 | 72.198.57.13 | 468A426EE49D2B40C80E6898BA750103A9CEC3BA |
| 23 | 52753315808 | 70.178.250.147 | 468A426EE49D2B40C80E6898BA750103A9CEC3BA |
| 24 | 52741370854 | 68.228.144.184 | 468A426EE49D2B40C80E6898BA750103A9CEC3BA |
| 25 | 52736444056 | 68.14.80.187 | 7C4F75A3FAE8946A62B6265F524375666C293F2C |
| 26 | 52720803476 | 68.230.145.56 | 468A426EE49D2B40C80E6898BA750103A9CEC3BA |
| 27 | 52720083366 | 68.108.28.168 | AC5BDABCE9A7141241D18308BDA55351C9C2A19C |
| 28 | 52717225580 | 68.108.28.168 | AC5BDABCE9A7141241D18308BDA55351C9C2A19C |
| 29 | 52701298072 | 68.227.185.58 | 468A426EE49D2B40C80E6898BA750103A9CEC3BA |
| 30 | 52696158270 | 68.227.185.58 | 468A426EE49D2B40C80E6898BA750103A9CEC3BA |
| 31 | 52687961702 | 68.104.33.145 | 6AD5AF766E1614DA3EB14C6D8CB20A446A63B00F |
| 32 | 52687224554 | 68.102.46.14 | 55C24892087DC5B19D74A731D7F0E5E987F9BCD2 |
| 33 | 52681997194 | 68.224.19.134 | 9FBEEEF55D19F696F9D7B1D7941AB700D5F0FE16 |
| 34 | 52681242866 | 68.102.46.14 | 55C24892087DC5B19D74A731D7F0E5E987F9BCD2 |
| 35 | 52673633616 | 68.104.33.145 | 6AD5AF766E1614DA3EB14C6D8CB20A446A63B00F |
| 36 | 52667515036 | 50.159.142.80 | 9FBEEEF55D19F696F9D7B1D7941AB700D5F0FE16 |
| 37 | 52665210230 | 50.159.108.38 | 219524837A441F9C4F5594E0CF3CF98DAB0538C2 |
| 38 | 52658230752 | 70.177.233.82 | 468A426EE49D2B40C80E6898BA750103A9CEC3BA |
| 39 | 52650378058 | 68.102.46.14 | 55C24892087DC5B19D74A731D7F0E5E987F9BCD2 |
| 40 | 52649600964 | 68.102.46.14 | 35D021DAAF4DB716A9A280ECD6F4D4FE5246C79B |
| 41 | 52644872832 | 50.158.42.121 | 19719FE5CC48672CFB26B99D23C68283B779F670 |

| Number | NoticesID | IP | Filename |
|---|---|---|---|
| 1 | 52235213826 | 70.161.172.138 | After Ever Happy (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 2 | 51998269860 | 98.186.195.187 | The Protégé (2021) AC3 5.1 ITA.ENG 1080p H265 sub ita.eng Sp |
| 3 | 50781423708 | 174.72.179.158 | Fall.2022.1080p.BluRay.H264.AAC-RARBG |
| 4 | 50921146500 | 70.160.12.144 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 5 | 51643585404 | 70.189.207.108 | Fall.2022.720p.WEBRip.800MB.x264-GalaxyRG[TGx] |
| 6 | 51998876640 | 98.186.195.187 | Fall.2022.720p.WEBRip.800MB.x264-GalaxyRG[TGx] |
| 7 | 52252775054 | 70.161.172.138 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 8 | 52564539256 | 70.163.221.46 | www.5MovieRulz.lc - Fall (2022) 1080p BluRay - (DD+5.1 - 640I |
| 9 | 52806820788 | 68.230.145.56 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 10 | 52796238184 | 68.230.145.56 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 11 | 52792226610 | 70.176.239.249 | Fall.2022.1080p.WEBRip.DD5.1.x264-NOGRP |
| 12 | 52789574168 | 174.66.240.9 | Fall (2022) [2160p] [4K] [WEB] [5.1] [YTS.MX] |
| 13 | 52788243934 | 184.187.165.114 | Fall (2022) [1080p] [BluRay] [5.1] [YTS.MX] |
| 14 | 52785566340 | 68.7.2.39 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 15 | 52776772346 | 68.102.95.159 | Fall.2022.WebDL.2160p.DV.Hevc.HDR.DTS.ITA.E-AC3.ENG.AC3 |
| 16 | 52774730550 | 98.183.115.204 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 17 | 52773380996 | 68.224.197.234 | Fall.2022.1080p.BluRay.x265-RARBG |
| 18 | 52773377312 | 174.66.240.9 | Fall (2022) [2160p] [4K] [WEB] [5.1] [YTS.MX] |
| 19 | 52757493598 | 72.204.68.144 | Fall.2022.2160p.WEB-DL.DD5.1.HDR.H.265-EVO[TGx] |
| 20 | 52756793438 | 68.3.91.183 | Fall.2022.1080p.WEBRip.DD5.1.x264-NOGRP |
| 21 | 52756103884 | 68.230.145.56 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 22 | 52756103880 | 72.198.57.13 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 23 | 52753315808 | 70.178.250.147 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 24 | 52741370854 | 68.228.144.184 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 25 | 52736444056 | 68.14.80.187 | Fall.2022.1080p.BluRay.H264.AAC-RARBG |
| 26 | 52720803476 | 68.230.145.56 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 27 | 52720083366 | 68.108.28.168 | Fall.2022.1080p.WEBRip.1400MB.DD5.1.x264-GalaxyRG[TGx] |
| 28 | 52717225580 | 68.108.28.168 | Fall.2022.1080p.WEBRip.1400MB.DD5.1.x264-GalaxyRG[TGx] |
| 29 | 52701298072 | 68.227.185.58 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 30 | 52696158270 | 68.227.185.58 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 31 | 52687961702 | 68.104.33.145 | Fall.2022.1080p.WEBRip.DD5.1.x264-NOGRP |
| 32 | 52687224554 | 68.102.46.14 | Fall.2022.WEB-DLRip.Rus.Dub.DD.2.0.mkv |
| 33 | 52681997194 | 68.224.19.134 | Fall (2022) [1080p] [BluRay] [5.1] [YTS.MX] |
| 34 | 52681242866 | 68.102.46.14 | Fall.2022.WEB-DLRip.Rus.Dub.DD.2.0.mkv |
| 35 | 52673633616 | 68.104.33.145 | Fall.2022.1080p.WEBRip.DD5.1.x264-NOGRP |
| 36 | 52667515036 | 50.159.142.80 | Fall (2022) [1080p] [BluRay] [5.1] [YTS.MX] |
| 37 | 52665210230 | 50.159.108.38 | Fall 2022 BluRay 1080p DTS AC3 x264-MgB |
| 38 | 52658230752 | 70.177.233.82 | Fall (2022) [1080p] [WEBRip] [5.1] [YTS.MX] |
| 39 | 52650378058 | 68.102.46.14 | Fall.2022.WEB-DLRip.Rus.Dub.DD.2.0.mkv |
| 40 | 52649600964 | 68.102.46.14 | www.5MovieRulz.lc - Fall (2022) 1080p BluRay - (DD+5.1 - 640I |
| 41 | 52644872832 | 50.158.42.121 | www.5MovieRulz.lc - Fall (2022) 720p BluRay - (DD+5.1 - 192Kl |

| Number | NoticesID | IP | Title | ISP |
|---|---|---|---|---|
| 1 | 52235213826 | 70.161.172.138 | After Ever Happy | Cox Communications |
| 2 | 51998269860 | 98.186.195.187 | The Protege | Cox Communications |
| 3 | 50781423708 | 174.72.179.158 | Fall | Cox Communications |
| 4 | 50921146500 | 70.160.12.144 | Fall | Cox Communications |
| 5 | 51643585404 | 70.189.207.108 | Fall | Cox Communications |
| 6 | 51998876640 | 98.186.195.187 | Fall | Cox Communications |
| 7 | 52252775054 | 70.161.172.138 | Fall | Cox Communications |
| 8 | 52564539256 | 70.163.221.46 | Fall | Cox Communications |
| 9 | 52806820788 | 68.230.145.56 | Fall | Cox Communications |
| 10 | 52796238184 | 68.230.145.56 | Fall | Cox Communications |
| 11 | 52792226610 | 70.176.239.249 | Fall | Cox Communications |
| 12 | 52789574168 | 174.66.240.9 | Fall | Cox Communications |
| 13 | 52788243934 | 184.187.165.114 | Fall | Cox Communications |
| 14 | 52785566340 | 68.7.2.39 | Fall | Cox Communications |
| 15 | 52776772346 | 68.102.95.159 | Fall | Cox Communications |
| 16 | 52774730550 | 98.183.115.204 | Fall | Cox Communications |
| 17 | 52773380996 | 68.224.197.234 | Fall | Cox Communications |
| 18 | 52773377312 | 174.66.240.9 | Fall | Cox Communications |
| 19 | 52757493598 | 72.204.68.144 | Fall | Cox Communications |
| 20 | 52756793438 | 68.3.91.183 | Fall | Cox Communications |
| 21 | 52756103884 | 68.230.145.56 | Fall | Cox Communications |
| 22 | 52756103880 | 72.198.57.13 | Fall | Cox Communications |
| 23 | 52753315808 | 70.178.250.147 | Fall | Cox Communications |
| 24 | 52741370854 | 68.228.144.184 | Fall | Cox Communications |
| 25 | 52736444056 | 68.14.80.187 | Fall | Cox Communications |
| 26 | 52720803476 | 68.230.145.56 | Fall | Cox Communications |
| 27 | 52720083366 | 68.108.28.168 | Fall | Cox Communications |
| 28 | 52717225580 | 68.108.28.168 | Fall | Cox Communications |
| 29 | 52701298072 | 68.227.185.58 | Fall | Cox Communications |
| 30 | 52696158270 | 68.227.185.58 | Fall | Cox Communications |
| 31 | 52687961702 | 68.104.33.145 | Fall | Cox Communications |
| 32 | 52687224554 | 68.102.46.14 | Fall | Cox Communications |
| 33 | 52681997194 | 68.224.19.134 | Fall | Cox Communications |
| 34 | 52681242866 | 68.102.46.14 | Fall | Cox Communications |
| 35 | 52673633616 | 68.104.33.145 | Fall | Cox Communications |
| 36 | 52667515036 | 50.159.142.80 | Fall | Cox Communications |
| 37 | 52665210230 | 50.159.108.38 | Fall | Cox Communications |
| 38 | 52658230752 | 70.177.233.82 | Fall | Cox Communications |
| 39 | 52650378058 | 68.102.46.14 | Fall | Cox Communications |
| 40 | 52649600964 | 68.102.46.14 | Fall | Cox Communications |
| 41 | 52644872832 | 50.158.42.121 | Fall | Cox Communications |

| Number | NoticesID | IP | ClientDHTport | ClientPort |
|---|---|---|---|---|
| 1 | 52235213826 | 70.161.172.138 | 34307 | 34307 |
| 2 | 51998269860 | 98.186.195.187 | 0 | 12793 |
| 3 | 50781423708 | 174.72.179.158 | 65343 | 60253 |
| 4 | 50921146500 | 70.160.12.144 | 0 | 37532 |
| 5 | 51643585404 | 70.189.207.108 | 53022 | 54433 |
| 6 | 51998876640 | 98.186.195.187 | 0 | 12681 |
| 7 | 52252775054 | 70.161.172.138 | 34307 | 34307 |
| 8 | 52564539256 | 70.163.221.46 | 0 | 6881 |
| 9 | 52806820788 | 68.230.145.56 | 0 | 6881 |
| 10 | 52796238184 | 68.230.145.56 | 0 | 56196 |
| 11 | 52792226610 | 70.176.239.249 | 62185 | 62185 |
| 12 | 52789574168 | 174.66.240.9 | 0 | 6881 |
| 13 | 52788243934 | 184.187.165.114 | 0 | 61771 |
| 14 | 52785566340 | 68.7.2.39 | 0 | 56075 |
| 15 | 52776772346 | 68.102.95.159 | 0 | 59151 |
| 16 | 52774730550 | 98.183.115.204 | 0 | 57213 |
| 17 | 52773380996 | 68.224.197.234 | 32316 | 32316 |
| 18 | 52773377312 | 174.66.240.9 | 0 | 65523 |
| 19 | 52757493598 | 72.204.68.144 | 0 | 56251 |
| 20 | 52756793438 | 68.3.91.183 | 0 | 50175 |
| 21 | 52756103884 | 68.230.145.56 | 0 | 59824 |
| 22 | 52756103880 | 72.198.57.13 | 0 | 55461 |
| 23 | 52753315808 | 70.178.250.147 | 17507 | 17507 |
| 24 | 52741370854 | 68.228.144.184 | 17591 | 17591 |
| 25 | 52736444056 | 68.14.80.187 | 55962 | 50860 |
| 26 | 52720803476 | 68.230.145.56 | 0 | 56058 |
| 27 | 52720083366 | 68.108.28.168 | 38159 | 38159 |
| 28 | 52717225580 | 68.108.28.168 | 38159 | 38159 |
| 29 | 52701298072 | 68.227.185.58 | 0 | 6881 |
| 30 | 52696158270 | 68.227.185.58 | 0 | 6881 |
| 31 | 52687961702 | 68.104.33.145 | 0 | 59681 |
| 32 | 52687224554 | 68.102.46.14 | 13426 | 13426 |
| 33 | 52681997194 | 68.224.19.134 | 4322 | 60129 |
| 34 | 52681242866 | 68.102.46.14 | 13426 | 13426 |
| 35 | 52673633616 | 68.104.33.145 | 0 | 52663 |
| 36 | 52667515036 | 50.159.142.80 | 0 | 56230 |
| 37 | 52665210230 | 50.159.108.38 | 15886 | 15886 |
| 38 | 52658230752 | 70.177.233.82 | 19357 | 19357 |
| 39 | 52650378058 | 68.102.46.14 | 13426 | 13426 |
| 40 | 52649600964 | 68.102.46.14 | 62814 | 45711 |
| 41 | 52644872832 | 50.158.42.121 | 32133 | 49856 |

| Number | NoticesID | IP | Trackname |
|---|---|---|---|
| 1 | 52235213826 | 70.161.172.138 | After.Ever.Happy.2022.1080p.WEBRip.x264.AAC5.1-[YTS.MX].r |
| 2 | 51998269860 | 98.186.195.187 | The Protégé (2021) AC3 5.1 ITA.ENG 1080p H265 sub ita.eng S|
| 3 | 50781423708 | 174.72.179.158 | Fall.2022.1080p.BluRay.H264.AAC-RARBG.mp4 |
| 4 | 50921146500 | 70.160.12.144 | Fall.2022.1080p.WEBRip.x264.AAC5.1-[YTS.MX].mp4 |
| 5 | 51643585404 | 70.189.207.108 | Fall.2022.720p.WEBRip.800MB.x264-GalaxyRG.mkv |
| 6 | 51998876640 | 98.186.195.187 | Fall.2022.720p.WEBRip.800MB.x264-GalaxyRG.mkv |
| 7 | 52252775054 | 70.161.172.138 | Fall.2022.1080p.WEBRip.x264.AAC5.1-[YTS.MX].mp4 |
| 8 | 52564539256 | 70.163.221.46 | www.5MovieRulz.lc - Fall (2022) 1080p BluRay - (DD+5.1 - 640I |
| 9 | 52806820788 | 68.230.145.56 | Fall.2022.1080p.WEBRip.x264.AAC5.1-[YTS.MX].mp4 |
| 10 | 52796238184 | 68.230.145.56 | Fall.2022.1080p.WEBRip.x264.AAC5.1-[YTS.MX].mp4 |
| 11 | 52792226610 | 70.176.239.249 | Fall.2022.1080p.WEBRip.DD5.1.x264-NOGRP.mkv |
| 12 | 52789574168 | 174.66.240.9 | Fall.2022.2160p.4K.WEB.x265.10bit.AAC5.1-[YTS.MX].mkv |
| 13 | 52788243934 | 184.187.165.114 | Fall.2022.1080p.BluRay.x264.AAC5.1-[YTS.MX].mp4 |
| 14 | 52785566340 | 68.7.2.39 | Fall.2022.1080p.WEBRip.x264.AAC5.1-[YTS.MX].mp4 |
| 15 | 52776772346 | 68.102.95.159 | Fall.2022.WebDL.2160p.DV.Hevc.HDR.DTS.ITA.E-AC3.ENG.AC3 |
| 16 | 52774730550 | 98.183.115.204 | Fall.2022.1080p.WEBRip.x264.AAC5.1-[YTS.MX].mp4 |
| 17 | 52773380996 | 68.224.197.234 | Fall.2022.1080p.BluRay.x265-RARBG.mp4 |
| 18 | 52773377312 | 174.66.240.9 | Fall.2022.2160p.4K.WEB.x265.10bit.AAC5.1-[YTS.MX].mkv |
| 19 | 52757493598 | 72.204.68.144 | Fall.2022.2160p.WEB-DL.DD5.1.HDR.H.265-EVO.mkv |
| 20 | 52756793438 | 68.3.91.183 | Fall.2022.1080p.WEBRip.DD5.1.x264-NOGRP.mkv |
| 21 | 52756103884 | 68.230.145.56 | Fall.2022.1080p.WEBRip.x264.AAC5.1-[YTS.MX].mp4 |
| 22 | 52756103880 | 72.198.57.13 | Fall.2022.1080p.WEBRip.x264.AAC5.1-[YTS.MX].mp4 |
| 23 | 52753315808 | 70.178.250.147 | Fall.2022.1080p.WEBRip.x264.AAC5.1-[YTS.MX].mp4 |
| 24 | 52741370854 | 68.228.144.184 | Fall.2022.1080p.WEBRip.x264.AAC5.1-[YTS.MX].mp4 |
| 25 | 52736444056 | 68.14.80.187 | Fall.2022.1080p.BluRay.H264.AAC-RARBG.mp4 |
| 26 | 52720803476 | 68.230.145.56 | Fall.2022.1080p.WEBRip.x264.AAC5.1-[YTS.MX].mp4 |
| 27 | 52720083366 | 68.108.28.168 | Fall.2022.1080p.WEBRip.1400MB.DD5.1.x264-GalaxyRG.mkv |
| 28 | 52717225580 | 68.108.28.168 | Fall.2022.1080p.WEBRip.1400MB.DD5.1.x264-GalaxyRG.mkv |
| 29 | 52701298072 | 68.227.185.58 | Fall.2022.1080p.WEBRip.x264.AAC5.1-[YTS.MX].mp4 |
| 30 | 52696158270 | 68.227.185.58 | Fall.2022.1080p.WEBRip.x264.AAC5.1-[YTS.MX].mp4 |
| 31 | 52687961702 | 68.104.33.145 | Fall.2022.1080p.WEBRip.DD5.1.x264-NOGRP.mkv |
| 32 | 52687224554 | 68.102.46.14 | Fall.2022.WEB-DLRip.Rus.Dub.DD.2.0.mkv |
| 33 | 52681997194 | 68.224.19.134 | Fall.2022.1080p.BluRay.x264.AAC5.1-[YTS.MX].mp4 |
| 34 | 52681242866 | 68.102.46.14 | Fall.2022.WEB-DLRip.Rus.Dub.DD.2.0.mkv |
| 35 | 52673633616 | 68.104.33.145 | Fall.2022.1080p.WEBRip.DD5.1.x264-NOGRP.mkv |
| 36 | 52667515036 | 50.159.142.80 | Fall.2022.1080p.BluRay.x264.AAC5.1-[YTS.MX].mp4 |
| 37 | 52665210230 | 50.159.108.38 | Fall 2022 BluRay 1080p DTS AC3 x264-MgB.mkv |
| 38 | 52658230752 | 70.177.233.82 | Fall.2022.1080p.WEBRip.x264.AAC5.1-[YTS.MX].mp4 |
| 39 | 52650378058 | 68.102.46.14 | Fall.2022.WEB-DLRip.Rus.Dub.DD.2.0.mkv |
| 40 | 52649600964 | 68.102.46.14 | www.5MovieRulz.lc - Fall (2022) 1080p BluRay - (DD+5.1 - 640I |
| 41 | 52644872832 | 50.158.42.121 | www.5MovieRulz.lc - Fall (2022) 720p BluRay - (DD+5.1 - 192KI |

| Number | NoticesID | IP | Region | City | TimeZone |
|---|---|---|---|---|---|
| 1 | 52235213826 | 70.161.172.138 | Virginia | Virginia Beach | UTC |
| 2 | 51998269860 | 98.186.195.187 | Louisiana | New Orleans | UTC |
| 3 | 50781423708 | 174.72.179.158 | Nevada | Las Vegas | UTC |
| 4 | 50921146500 | 70.160.12.144 | Virginia | Portsmouth | UTC |
| 5 | 51643585404 | 70.189.207.108 | Nevada | Las Vegas | UTC |
| 6 | 51998876640 | 98.186.195.187 | Louisiana | New Orleans | UTC |
| 7 | 52252775054 | 70.161.172.138 | Virginia | Virginia Beach | UTC |
| 8 | 52564539256 | 70.163.221.46 | Arizona | Chandler | UTC |
| 9 | 52806820788 | 68.230.145.56 | Rhode Island | Lincoln | UTC |
| 10 | 52796238184 | 68.230.145.56 | Rhode Island | Lincoln | UTC |
| 11 | 52792226610 | 70.176.239.249 | Arizona | Gilbert | UTC |
| 12 | 52789574168 | 174.66.240.9 | Oklahoma | Oklahoma City | UTC |
| 13 | 52788243934 | 184.187.165.114 | California | Santa Barbara | UTC |
| 14 | 52785566340 | 68.7.2.39 | California | National City | UTC |
| 15 | 52776772346 | 68.102.95.159 | Kansas | Wichita | UTC |
| 16 | 52774730550 | 98.183.115.204 | Oklahoma | Oklahoma City | UTC |
| 17 | 52773380996 | 68.224.197.234 | Rhode Island | West Warwick | UTC |
| 18 | 52773377312 | 174.66.240.9 | Oklahoma | Oklahoma City | UTC |
| 19 | 52757493598 | 72.204.68.144 | Arkansas | Springdale | UTC |
| 20 | 52756793438 | 68.3.91.183 | Arizona | Tempe | UTC |
| 21 | 52756103884 | 68.230.145.56 | Rhode Island | Lincoln | UTC |
| 22 | 52756103880 | 72.198.57.13 | Oklahoma | Yukon | UTC |
| 23 | 52753315808 | 70.178.250.147 | Arkansas | Bentonville | UTC |
| 24 | 52741370854 | 68.228.144.184 | Rhode Island | Pawtucket | UTC |
| 25 | 52736444056 | 68.14.80.187 | Connecticut | Cheshire | UTC |
| 26 | 52720803476 | 68.230.145.56 | Rhode Island | Lincoln | UTC |
| 27 | 52720083366 | 68.108.28.168 | Nevada | North Las Vegas | UTC |
| 28 | 52717225580 | 68.108.28.168 | Nevada | North Las Vegas | UTC |
| 29 | 52701298072 | 68.227.185.58 | Rhode Island | Lincoln | UTC |
| 30 | 52696158270 | 68.227.185.58 | Rhode Island | Lincoln | UTC |
| 31 | 52687961702 | 68.104.33.145 | Nevada | Henderson | UTC |
| 32 | 52687224554 | 68.102.46.14 | Kansas | Wichita | UTC |
| 33 | 52681997194 | 68.224.19.134 | Nevada | Las Vegas | UTC |
| 34 | 52681242866 | 68.102.46.14 | Kansas | Wichita | UTC |
| 35 | 52673633616 | 68.104.33.145 | Nevada | Henderson | UTC |
| 36 | 52667515036 | 50.159.142.80 | Nevada | Henderson | UTC |
| 37 | 52665210230 | 50.159.108.38 | Nevada | Las Vegas | UTC |
| 38 | 52658230752 | 70.177.233.82 | Virginia | Hampton | UTC |
| 39 | 52650378058 | 68.102.46.14 | Kansas | Wichita | UTC |
| 40 | 52649600964 | 68.102.46.14 | Kansas | Wichita | UTC |
| 41 | 52644872832 | 50.158.42.121 | Nevada | Las Vegas | UTC |

| Number | NoticesID | IP | Hit Date |
|---|---|---|---|
| 1 | 52235213826 | 70.161.172.138 | 2023-02-19 00:03:57 |
| 2 | 51998269860 | 98.186.195.187 | 2023-02-05 09:01:56 |
| 3 | 50781423708 | 174.72.179.158 | 2022-11-16 23:54:13 |
| 4 | 50921146500 | 70.160.12.144 | 2022-11-27 03:32:01 |
| 5 | 51643585404 | 70.189.207.108 | 2023-01-16 08:10:08 |
| 6 | 51998876640 | 98.186.195.187 | 2023-02-05 09:44:59 |
| 7 | 52252775054 | 70.161.172.138 | 2023-02-20 00:25:44 |
| 8 | 52564539256 | 70.163.221.46 | 2023-03-14 03:43:42 |
| 9 | 52806820788 | 68.230.145.56 | 2023-03-28 00:08:27 |
| 10 | 52796238184 | 68.230.145.56 | 2023-03-27 09:06:01 |
| 11 | 52792226610 | 70.176.239.249 | 2023-03-27 03:08:03 |
| 12 | 52789574168 | 174.66.240.9 | 2023-03-27 00:13:44 |
| 13 | 52788243934 | 184.187.165.114 | 2023-03-26 22:06:08 |
| 14 | 52785566340 | 68.7.2.39 | 2023-03-26 18:17:12 |
| 15 | 52776772346 | 68.102.95.159 | 2023-03-26 03:50:38 |
| 16 | 52774730550 | 98.183.115.204 | 2023-03-26 02:23:30 |
| 17 | 52773380996 | 68.224.197.234 | 2023-03-26 01:04:24 |
| 18 | 52773377312 | 174.66.240.9 | 2023-03-26 01:08:55 |
| 19 | 52757493598 | 72.204.68.144 | 2023-03-25 04:04:59 |
| 20 | 52756793438 | 68.3.91.183 | 2023-03-25 00:51:10 |
| 21 | 52756103884 | 68.230.145.56 | 2023-03-25 00:47:31 |
| 22 | 52756103880 | 72.198.57.13 | 2023-03-25 00:39:21 |
| 23 | 52753315808 | 70.178.250.147 | 2023-03-24 22:27:26 |
| 24 | 52741370854 | 68.228.144.184 | 2023-03-24 07:31:17 |
| 25 | 52736444056 | 68.14.80.187 | 2023-03-24 00:28:14 |
| 26 | 52720803476 | 68.230.145.56 | 2023-03-22 22:59:13 |
| 27 | 52720083366 | 68.108.28.168 | 2023-03-23 00:17:41 |
| 28 | 52717225580 | 68.108.28.168 | 2023-03-22 21:15:50 |
| 29 | 52701298072 | 68.227.185.58 | 2023-03-22 00:17:02 |
| 30 | 52696158270 | 68.227.185.58 | 2023-03-21 17:13:45 |
| 31 | 52687961702 | 68.104.33.145 | 2023-03-21 03:55:20 |
| 32 | 52687224554 | 68.102.46.14 | 2023-03-21 05:00:45 |
| 33 | 52681997194 | 68.224.19.134 | 2023-03-20 21:30:57 |
| 34 | 52681242866 | 68.102.46.14 | 2023-03-20 21:07:05 |
| 35 | 52673633616 | 68.104.33.145 | 2023-03-20 09:47:50 |
| 36 | 52667515036 | 50.159.142.80 | 2023-03-20 02:04:38 |
| 37 | 52665210230 | 50.159.108.38 | 2023-03-19 20:45:12 |
| 38 | 52658230752 | 70.177.233.82 | 2023-03-19 14:23:25 |
| 39 | 52650378058 | 68.102.46.14 | 2023-03-19 04:00:08 |
| 40 | 52649600964 | 68.102.46.14 | 2023-03-19 02:26:23 |
| 41 | 52644872832 | 50.158.42.121 | 2023-03-18 20:17:35 |

| Number | NoticesID | IP | Additional Titles |
|---|---|---|---|
| 1 | 52235213826 | 70.161.172.138 | |
| 2 | 51998269860 | 98.186.195.187 | |
| 3 | 50781423708 | 174.72.179.158 | Mechanic: Resurrection |
| 4 | 50921146500 | 70.160.12.144 | The Protege |
| 5 | 51643585404 | 70.189.207.108 | The Hitmans Wifes Bodyguard |
| 6 | 51998876640 | 98.186.195.187 | The Protege |
| 7 | 52252775054 | 70.161.172.138 | After Ever Happy |
| 8 | 52564539256 | 70.163.221.46 | Hellboy |
| 9 | 52806820788 | 68.230.145.56 | |
| 10 | 52796238184 | 68.230.145.56 | |
| 11 | 52792226610 | 70.176.239.249 | |
| 12 | 52789574168 | 174.66.240.9 | |
| 13 | 52788243934 | 184.187.165.114 | |
| 14 | 52785566340 | 68.7.2.39 | |
| 15 | 52776772346 | 68.102.95.159 | |
| 16 | 52774730550 | 98.183.115.204 | |
| 17 | 52773380996 | 68.224.197.234 | |
| 18 | 52773377312 | 174.66.240.9 | |
| 19 | 52757493598 | 72.204.68.144 | |
| 20 | 52756793438 | 68.3.91.183 | |
| 21 | 52756103884 | 68.230.145.56 | |
| 22 | 52756103880 | 72.198.57.13 | |
| 23 | 52753315808 | 70.178.250.147 | |
| 24 | 52741370854 | 68.228.144.184 | |
| 25 | 52736444056 | 68.14.80.187 | |
| 26 | 52720803476 | 68.230.145.56 | |
| 27 | 52720083366 | 68.108.28.168 | |
| 28 | 52717225580 | 68.108.28.168 | |
| 29 | 52701298072 | 68.227.185.58 | |
| 30 | 52696158270 | 68.227.185.58 | |
| 31 | 52687961702 | 68.104.33.145 | |
| 32 | 52687224554 | 68.102.46.14 | |
| 33 | 52681997194 | 68.224.19.134 | |
| 34 | 52681242866 | 68.102.46.14 | |
| 35 | 52673633616 | 68.104.33.145 | |
| 36 | 52667515036 | 50.159.142.80 | |
| 37 | 52665210230 | 50.159.108.38 | |
| 38 | 52658230752 | 70.177.233.82 | |
| 39 | 52650378058 | 68.102.46.14 | |
| 40 | 52649600964 | 68.102.46.14 | |
| 41 | 52644872832 | 50.158.42.121 | |

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
**Form 1. Notice of Appeal from a Judgment or Order of a
United States District Court**

Name of U.S. District Court: | DISTRICT OF HAWAII

U.S. District Court case number: | 1:23-cv-00426-JMS-WRP

Date case was first filed in U.S. District Court: | 04/13/2023

Date of judgment or order you are appealing: | 04/26/2024

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

⦿ Yes    ○ No    ○ IFP was granted by U.S. District Court

**List all Appellants** *(List **each** party filing the appeal. Do not use "et al." or other abbreviations.)*

Capstone Studios Corp.

Is this a cross-appeal?  ○ Yes    ⦿ No

If Yes, what is the first appeal case number?

Was there a previous appeal in this case?    ○ Yes    ⦿ No

If Yes, what is the prior appeal case number?

Your mailing address:

75-170 Hualalai Road

Suite B204

City: Kailua Kona    State: HI    Zip Code: 96740

Prisoner Inmate or A Number (if applicable):

**Signature** | /s/ Kerry S. Culpepper    **Date** | Jun 24, 2024

*Complete and file with the attached representation statement in the U.S. District Court*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 1**                                                                                           *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

Capstone Studios Corp.

Name(s) of counsel (if any):

Kerry S. Culpepper

Address: 75-170 Hualalai Road, Suite B204, Kailua Kona, HI 96740

Telephone number(s): 808-464-4047

Email(s): kculpepper@culpepperip.com

Is counsel registered for Electronic Filing in the 9th Circuit?    ⊙ Yes    ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

CoxCom LLC

Name(s) of counsel (if any):

JENNIFER A. GOLINVEAUX

Address: 101 California Street, 35th Floor, San Francisco, CA 94111

Telephone number(s): 415-591-1000

Email(s): JGolinveaux@winston.com

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                                          *1*                                          *Rev. 12/01/2018*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?   ○ Yes   ○ No

**Appellees**

Name(s) of party/parties:

CoxCom LLC

Name(s) of counsel (if any):

THOMAS J. KEARNEY

Address: 101 California Street, 35th Floor, San Francisco, CA 94111

Telephone number(s): 415-591-1000

Email(s): TKearney@winston.com

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                                       *2*                                       *Rev. 12/01/2018*

## U.S. District Court
## District of Hawaii (Hawaii)
## CIVIL DOCKET FOR CASE #: 1:23-cv-00426-JMS-WRP

In Re: Subpoena of Internet subscribers of Cox Communications, LLC and CoxCom LLC

Assigned to: JUDGE J. MICHAEL SEABRIGHT

Referred to: MAGISTRATE JUDGE WES REBER PORTER

Case in other court: Ninth Circuit Court of Appeals, 24-03978

Cause: Civil Miscellaneous Case

Date Filed: 04/13/2023
Date Terminated: 01/30/2024
Jury Demand: None
Nature of Suit: 190 Contract: Other
Jurisdiction: U.S. Government Plaintiff

### In Re

**In The Matter Of:**

*Subpoena of Internet subscribers of Cox Communications, LLC and CoxCom LLC*

**Petitioner**

| | | |
|---|---|---|
| **Voltage Holdings, LLC** | represented by | **Kerry S. Culpepper** |
| | | 75-170 Hualalai Road |
| | | Suite B204 |
| | | Kailua Kona, HI 96740 |
| | | 808-464-4047 |
| | | Fax: 202-204-5181 |
| | | Email: kculpepper@culpepperip.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Petitioner**

| | | |
|---|---|---|
| **Millennium Funding, Inc.** | represented by | **Kerry S. Culpepper** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Petitioner**

| | | |
|---|---|---|
| **Capstone Studios Corp.** | represented by | **Kerry S. Culpepper** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Interested Party**

| | | |
|---|---|---|
| **John Doe** | represented by | **John Doe** |
| *I.P. Address: 50.159.108.38* | | Las Vegas, NV |
| | | PRO SE |

**Interested Party**

**Cox Communications, LLC**

**Interested Party**

**CoxCom LLC**                                             represented by **Jennifer A. Golinveaux**
Winston & Strawn LLP
101 California Street 35th Fl.
San Francisco, CA 94111
(415) 591-1000
Email: jgolinveaux@winston.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joachim P. Cox**
Cox Fricke A Limited Liability Law
Partnership LLP
800 Bethel Street
Suite 600
Honolulu, HI 96813
585-9440
Email: jcox@cfhawaii.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas J. Kearney**
Winston & Strawn LLP
101 California Street 35th Fl.
San Francisco, CA 94111
(415) 591-1000
Email: tkearney@winston.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Abigail Marie Holden**
Cox Fricke LLP
800 Bethel Street
Suite 600
Honolulu, HI 96813
808 585-9440
Email: aholden@cfhawaii.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/13/2023 | 1 | Miscellaneous Case Filing Fee/USA Applications *APPLICATION FOR 512(h) SUBPOENA*, filed by Voltage Holdings, LLC Millennium Funding, Inc., and Capstone Studios Corp. Filing fee $ 49, Receipt number AHIDC-2826134., (Attachments: # 1 Declaration of Counsel, # 2 Exhibit "1", # 3 Exhibit "2", # 4 Proposed DMCA subpoena) (Culpepper, Kerry) Modified on 4/13/2023 (jtt1) (Entered: 04/13/2023) |
| 04/13/2023 | 2 | NOTICE of Case Assignment: Please reflect Miscellaneous case number MC 23-00263 JMS-WRP on all further pleadings. (jtt1) (Entered: 04/13/2023) |
| 04/13/2023 | 3 | Subpoena Issued as to Cox Communications, LLC and CoxCom LLC. (jtt1) (Entered: 04/13/2023) |

| | | |
|---|---|---|
| 05/24/2023 | 4 | LETTER/MOTION to Quash Subpoena - by Interested Party John Doe (Attachments: # 1 Mailing Envelope) (jni) (Entered: 05/25/2023) |
| 05/24/2023 | | COURT'S CERTIFICATE of Service - a copy of 4 Motion to Quash was not served upon filing party; no return address provided. Registered Participants of CM/ECF received the document electronically at the e-mail address listed on the Notice of Electronic Filing (NEF). (jni) (Entered: 05/25/2023) |
| 05/26/2023 | 5 | EO: Regarding 4 Letter from John Doe at IP Address: 50.159.108.38, which has been construed as a Motion to Quash Subpoena, the Court DIRECTS the Petitioners to file a response no later than 6/12/2023; any reply shall be filed no later than 7/3/2023. Thereafter, the Court will determine whether to set a hearing or issue the appropriate order.<br><br>Petitioners shall serve a copy of this EO, as well as their Opposition, on John Doe and shall file certificates of service reflecting such service.<br><br>John Doe is referred to the Court's website for information regarding pro se representation.<br><br>(MAGISTRATE JUDGE WES REBER PORTER) (jo) (Entered: 05/26/2023) |
| 05/29/2023 | 6 | MEMORANDUM in Opposition re 4 MOTION to Quash filed by Capstone Studios Corp., Millennium Funding, Inc., Voltage Holdings, LLC. (Attachments: # 1 Exhibit "1") (Culpepper, Kerry) (Entered: 05/29/2023) |
| 05/30/2023 | 7 | CERTIFICATE OF SERVICE by Capstone Studios Corp., Millennium Funding, Inc., Voltage Holdings, LLC re 6 Memorandum in Opposition to Motion, 5 Set Ripe Deadline,, (Culpepper, Kerry) (Entered: 05/30/2023) |
| 08/31/2023 | 8 | FINDINGS AND RECOMMENDATION to Grant John Doe's Motion to Quash 512(h) Subpoena (Re 4 ). Signed by MAGISTRATE JUDGE WES REBER PORTER on 8/31/2023. - The Court FINDS AND RECOMMENDS that the 512(h) Subpoena be QUASHED and that Petitioners be ordered return and/or destroy any information derived from the Subpoena, to maintain no further record of the information obtained the Subpoena, and to make no further use of the subscriber data obtained from the Subpoena. Additionally, the Court ORDERS Petitioners to serve a copy of this Findings and Recommendation on Cox Communications, LLC and CoxCom LLC with instructions for each to provide this Findings and Recommendation to John Doe, I.P. Address: 50.159.108.38. (mdc) (Entered: 08/31/2023) |
| 08/31/2023 | 9 | CERTIFICATE OF SERVICE by Capstone Studios Corp., Millennium Funding, Inc., Voltage Holdings, LLC re 8 FINDINGS AND RECOMMENDATIONS re 4 MOTION to Quash filed by John Doe *Certificate of Service on Cox* (Culpepper, Kerry) (Entered: 08/31/2023) |
| 09/11/2023 | 10 | OBJECTION re 8 FINDINGS AND RECOMMENDATIONS re 4 MOTION to Quash filed by John Doe filed by Capstone Studios Corp., Millennium Funding, Inc., Voltage Holdings, LLC. (Attachments: # 1 Memorandum in support of objection, # 2 Exhibit "1", # 3 Certificate of Service)(Culpepper, Kerry) (Entered: 09/11/2023) |
| 09/26/2023 | 11 | NOTICE of Appearance by Joachim P. Cox on behalf of Cox Communications, LLC, CoxCom LLC on behalf of Cox Communications, LLC, CoxCom LLC. (Cox, Joachim) (Entered: 09/26/2023) |
| 09/26/2023 | 12 | NOTICE of Appearance by Abigail Marie Holden on behalf of Cox Communications, LLC, CoxCom LLC on behalf of Cox Communications, LLC, CoxCom LLC. (Holden, Abigail) (Entered: 09/26/2023) |

| | | |
|---|---|---|
| 09/26/2023 | 13 | NOTICE by Cox Communications, LLC, CoxCom LLC re 10 Objection, *(Non-parties Cox Communications, LLC and CoxCom LLCs Notice of Intent to Respond to Objections to Magistrate Judges Findings and Recommendation; Certificate of Service)* Cox Communications, LLC, CoxCom LLC. (Holden, Abigail) (Entered: 09/26/2023) |
| 09/28/2023 | 14 | AMENDED DOCUMENT by CoxCom LLC. Amendment to 11 Notice of Appearance *(Amended Notice of Appearance of Counsel for Non-Party CoxCom LLC)*. (Cox, Joachim) (Entered: 09/28/2023) |
| 09/28/2023 | 15 | AMENDED DOCUMENT by CoxCom LLC. Amendment to 12 Notice of Appearance *(Amended Notice of Appearance of Counsel for Non-Party CoxCom LLC)*. (Holden, Abigail) (Entered: 09/28/2023) |
| 09/28/2023 | 16 | AMENDED DOCUMENT by CoxCom LLC. Amendment to 13 Notice (Other), *(Non-Party CoxCom LLCs Amended Notice of Intent to Respond to Objections to Magistrate Judges Findings and Recommendation; Certificate of Service)*. (Holden, Abigail) (Entered: 09/28/2023) |
| 09/28/2023 | 17 | Corporate Disclosure Statement by CoxCom LLC identifying Corporate Parent Cox Communications, Inc. for CoxCom LLC.. (Holden, Abigail) (Entered: 09/28/2023) |
| 09/28/2023 | 18 | RESPONSE re 10 Objection, *(CoxCom LLCs Response to Objections to Magistrate Judges Findings and Recommendation [Dkt. 10]; Certificate of Service)* filed by CoxCom LLC. (Holden, Abigail) (Entered: 09/28/2023) |
| 09/29/2023 | 19 | MOTION for Pro Hac Vice *[Jennifer A. Golinveaux]* Filing fee $ 300, receipt number AHIDC-2900798.Abigail Marie Holden appearing for Interested Party CoxCom LLC (Attachments: # 1 Declaration of Counsel [Abigail M. Holden], # 2 Order Granting Motion for PHV Admission [Jennifer A. Golinveaux])(Holden, Abigail) (Entered: 09/29/2023) |
| 09/29/2023 | 20 | MOTION for Pro Hac Vice *[Thomas J. Kearney]* Filing fee $ 300, receipt number AHIDC-2900808.Abigail Marie Holden appearing for Interested Party CoxCom LLC (Attachments: # 1 Declaration of Counsel [Abigail M. Holden], # 2 Order Granting Motion for PHV Admission [Thomas J. Kearney])(Holden, Abigail) (Entered: 09/29/2023) |
| 10/02/2023 | 21 | ORDER Granting Motion to Appear Pro Hac Vice (Re 19 ). Signed by MAGISTRATE JUDGE WES REBER PORTER on 10/2/2023. (mdc) (Attorney Jennifer A. Golinveaux added to docket for party CoxCom LLC.) (mdc) (Entered: 10/02/2023) |
| 10/02/2023 | 22 | ORDER Granting Motion to Appear Pro Hac Vice (Re 20 ). Signed by MAGISTRATE JUDGE WES REBER PORTER on 10/2/2023. (mdc) (Attorney Thomas J. Kearney added to docket for party CoxCom LLC.) (mdc) (Entered: 10/02/2023) |
| 10/02/2023 | 23 | EO: The court grants leave, under LR74.1(c), for Petitioner to file a Reply to CoxCom LLC's Response (ECF No. 18 ) to Petitioner's Objections (ECF No. 10 ) to the Magistrate Judge's Findings and Recommendation (ECF No. 8 ) by October 12, 2023.<br><br>(JUDGE J. MICHAEL SEABRIGHT)(rlfh) (Entered: 10/02/2023) |
| 10/02/2023 | | COURT'S CERTIFICATE of Service - a copy of 23 Entering Order, has been served by First Class Mail pursuant to Rule 5(b)(2)(D) to John Doe, c/o Clerk of Court - District of Hawaii, 300 Ala Moana Blvd. C-338, Honolulu, HI 96850 on October 2, 2023. Registered Participants of CM/ECF received the document electronically at the e-mail address listed on the Notice of Electronic Filing (NEF). (rlfh) (Entered: 10/02/2023) |
| 10/09/2023 | 24 | Petitioners' REPLY *IN SUPPORT OF THEIR 10 OBJECTIONS TO MAGISTRATE JUDGES FINDINGS AND RECOMMENDATION TO GRANT JOHN DOES MOTION TO QUASH* filed by Capstone Studios Corp., Millennium Funding, Inc., Voltage Holdings, |

| | | |
|---|---|---|
| | | LLC. (Attachments: # 1 Certificate of Service)(Culpepper, Kerry) Modified on 10/10/2023 (eta). (Entered: 10/09/2023) |
| 10/17/2023 | 25 | NOTICE of Case Assignment; Please reflect Civil case number CV 23-00426JMS-WRP on all further pleadings. Case MC 23-00263JMS-WRP has been closed. (apg) (Entered: 10/17/2023) |
| 11/08/2023 | 26 | ORDER REQUESTING SUPPLEMENTAL EVIDENCE re 10 - Signed by JUDGE J. MICHAEL SEABRIGHT on 11/8/2023.<br><br>Accordingly, so that the court may address Petitioners' Objections to the F&R on a full record, the court requests that CoxCom, LLC file with the court appropriate evidentiary proof that it is or is not an internet service provider under 17 U.S.C. § 512(a) for purposes of the subpoena issued in this matter. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C) (allowing district judge to receive further evidence in resolving objection to F&R). A declaration by an appropriate corporate representative with personal knowledge of the relevant statutory factors would appear to be sufficient. Such a declaration or other evidence is due by **November 22, 2023**. Petitioners may file a response to CoxCom, LLC's submission by **December 6, 2023**.<br><br>(eta) (Entered: 11/08/2023) |
| 11/21/2023 | 27 | Letter addressed to Judge Seabright from Abigail M. Holden, Esq., dated November 21, 2023, re: request for a continuance of the deadline to file declaration.<br>(jni) (Entered: 11/21/2023) |
| 11/22/2023 | 28 | EO: CoxCom LLC's letter request for extension, ECF No. 27, is GRANTED. The deadline to respond to the court's November 8, 2023, Order is extended to November 29, 2023. Any response is due by December 13, 2023.<br><br>(JUDGE J. MICHAEL SEABRIGHT)(shm) (Entered: 11/22/2023) |
| 11/29/2023 | 29 | Declaration *of Amber Hall in Response to Order Requesting Supplemental Evidence (Dkt. No 26)*. (Attachments: # 1 Certificate of Service)(Holden, Abigail) (Entered: 11/29/2023) |
| 12/05/2023 | 30 | RESPONSE re 29 Declaration filed by Capstone Studios Corp., Millennium Funding, Inc., Voltage Holdings, LLC. (Attachments: # 1 Certificate of Service)(Culpepper, Kerry) (Entered: 12/05/2023) |
| 01/30/2024 | 31 | ORDER OVERRULING OBJECTIONS, ECF NO. 10, AND ADOPTING FINDINGS AND RECOMMENDATION TO QUASH 512(h) SUBPOENA, ECF NO. 8 re 8 - Signed by JUDGE J. MICHAEL SEABRIGHT on 1/30/2024.<br><br>The court OVERRULES Petitioners' Objections, ECF No. 10, and ADOPTS the Magistrate Judge's August 31, 2023 Finding and Recommendation to quash Petitioners' Subpoena, ECF No. 8. Petitioners' 512(h) Subpoena is QUASHED. No later than one week after the date of this Order, Petitioners are ordered to return and/or destroy any information derived from the Subpoena, to maintain no further record of the information obtained the Subpoena, and to make no further use of the subscriber data obtained from the Subpoena.<br><br>(jni) (Entered: 01/30/2024) |
| 01/31/2024 | 32 | Emergency MOTION to Stay re 31 Order Adopting Findings and Recommendations,,,, Order on Findings and Recommendations,,, *URGENT MOTION FOR STAY PENDING APPEAL* Kerry S. Culpepper appearing for Petitioners Capstone Studios Corp., Millennium Funding, Inc., Voltage Holdings, LLC (Attachments: # 1 Memorandum in support of motion, # 2 Declaration of Counsel, # 3 Exhibit "1", # 4 Certificate of Service)(Culpepper, Kerry) (Entered: 01/31/2024) |
| 02/01/2024 | 33 | EO: Petitioners have filed an "Urgent Motion for Stay Pending Appeal" ("Motion for Stay"), ECF No. 32 , regarding the court's order for Petitioners "[n]o later than one week |

after [January 30, 2024] to return and/or destroy any information derived from the Subpoena, to maintain no further record of the information obtained from the Subpoena, and to make no further use of the subscriber data obtained from the Subpoena." *See* ECF No. 31 at PageID.173. Upon review of the Motion to Stay, the court temporarily SUSPENDS the requirements "to return and/or destroy any information" and "to maintain no further record of the information" so as to allow CoxCom LLC to file a Response to the Motion to Stay. Accordingly, Cox is DIRECTED to file a Response by **February 15, 2024**. After review of a Response, the Court will decide whether to stay any requirements pending any appeal.

In the meantime, the parties are to maintain the status quo while the court decides the Motion for Stay. That is, Petitioners are still required to "made no further use of the subscriber data" while the court decides the Motion for Stay.

Petitioners are also DIRECTED to file a Statement as to whether (and if so, how) the subpoenaed information has been used, to include whether other litigation has been filed in other districts. Such a Statement is also due by **February 15, 2024**.

(JUDGE J. MICHAEL SEABRIGHT)(rlfh) (Entered: 02/01/2024)

| | | |
|---|---|---|
| 02/10/2024 | 34 | RESPONSE re 33 Link,,,,,,, Set Ripe Deadline,,,,, *Petitioners' Statement* filed by Capstone Studios Corp., Millennium Funding, Inc., Voltage Holdings, LLC. (Attachments: # 1 Certificate of Service)(Culpepper, Kerry) (Entered: 02/10/2024) |
| 02/12/2024 | 35 | First MOTION for Reconsideration re 31 Order Adopting Findings and Recommendations,,,, Order on Findings and Recommendations,,, Kerry S. Culpepper appearing for Petitioners Capstone Studios Corp., Millennium Funding, Inc., Voltage Holdings, LLC (Attachments: # 1 Memorandum in support, # 2 Declaration of David Cox; Ex. 1-2, # 3 Exhibit "C", # 4 Certificate of Service)(Culpepper, Kerry) (Entered: 02/12/2024) |
| 02/14/2024 | 36 | EO: On February 12, 2024, Petitioners filed a Motion for Reconsideration of the court's January 30, 2024 Order Adopting Findings and Recommendation. *See* ECF No. 35 . Under Local Rule 60.1, no opposition or reply shall be filed unless directed by the court. Accordingly, the court DIRECTS that an Opposition/Response be filed to the Motion for Reconsideration. Any Opposition/Response is due by February 28, 2024. No Reply shall be filed.

(JUDGE J. MICHAEL SEABRIGHT)(rlfh) (Entered: 02/14/2024) |
| 02/15/2024 | 37 | *Coxcom LLC's* RESPONSE *to Petitioner's Motion for Stay Pending Appeal* re 32 Emergency MOTION to Stay re 31 Order Adopting Findings and Recommendations,,,, Order on Findings and Recommendations,,, *URGENT MOTION FOR STAY PENDING APPEAL (CoxCom LLCs Response to Petitioners Motion for Stay Pending Appeal, Pursuant to Court Order [Dkt. No. 33])* filed by CoxCom LLC. (Attachments: # 1 Certificate of Service)(Cox, Joachim) Modified on 2/15/2024 (jni) (Entered: 02/15/2024) |
| 02/28/2024 | 38 | RESPONSE re 35 First MOTION for Reconsideration re 31 Order Adopting Findings and Recommendations,,,, Order on Findings and Recommendations,,, filed by CoxCom LLC. (Attachments: # 1 Certificate of Service)(Holden, Abigail) (Entered: 02/28/2024) |
| 02/28/2024 | 39 | MOTION to Strike *re 35 [CoxCom LLCs Motion to Strike Declaration of David Cox [Doc # 35-2] Filed in Support of Petitioners Motion for Reconsideration of Order Overruling Petitioners Objections [Dkt. No. 35]]* Abigail Marie Holden appearing for Interested Party CoxCom LLC (Attachments: # 1 Memorandum in Support of Motion, # 2 Declaration of |

| | | Thomas J. Kearney, # 3 Exhibit A (2024.02.20 Email), # 4 Certificate of Service)(Holden, Abigail) Modified on 2/29/2024 to add link. (jni) (Entered: 02/28/2024) |
|---|---|---|
| 02/28/2024 | 40 | REPLY re 37 Response,, 32 Emergency MOTION to Stay re 31 Order Adopting Findings and Recommendations,,,, Order on Findings and Recommendations,,, *URGENT MOTION FOR STAY PENDING APPEAL*, 33 Link,,,,,, Set Ripe Deadline,,,, filed by Capstone Studios Corp., Millennium Funding, Inc., Voltage Holdings, LLC. (Attachments: # 1 Declaration of [Redacted], # 2 Certificate of Service)(Culpepper, Kerry) (Entered: 02/28/2024) |
| 02/29/2024 | 41 | EO: The briefing schedule on CoxCom LLC's Motion to Strike, filed February 28, 2024, is as follows:<br><br>Petitioners' Opposition is due by March 11, 2024.<br>CoxCom LLC's Reply is due by March 21, 2024.<br><br>(JUDGE J. MICHAEL SEABRIGHT)(rlfh) (Entered: 02/29/2024) |
| 03/08/2024 | 42 | MEMORANDUM in Opposition re 39 MOTION to Strike *[CoxCom LLCs Motion to Strike Declaration of David Cox [Doc # 35-2] Filed in Support of Petitioners Motion for Reconsideration of Order Overruling Petitioners Objections [Dkt. No. 35]]* filed by Capstone Studios Corp., Millennium Funding, Inc., Voltage Holdings, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Certificate of Service)(Culpepper, Kerry) (Entered: 03/08/2024) |
| 03/21/2024 | 43 | REPLY re 39 MOTION to Strike *[CoxCom LLCs Motion to Strike Declaration of David Cox [Doc # 35-2] Filed in Support of Petitioners Motion for Reconsideration of Order Overruling Petitioners Objections [Dkt. No. 35]]* filed by CoxCom LLC. (Attachments: # 1 Certificate of Service)(Holden, Abigail) (Entered: 03/21/2024) |
| 04/26/2024 | 44 | ORDER (1) GRANTING COX'S MOTION TO STRIKE, ECF NO. 39 ; (2) DENYING PETITIONERS' MOTION FOR RECONSIDERATION, ECF NO. 35 ; AND (3) CLARIFYING RELIEF AND DENYING PETITIONERS' MOTION TO STAY, ECF NO. 32 - Signed by JUDGE J. MICHAEL SEABRIGHT on 4/26/2024. (eta) (Entered: 04/26/2024) |
| 05/08/2024 | 45 | MOTION 30 DAY EXTENSION OF TIME TO FILE NOTICE OF APPEAL Kerry S. Culpepper appearing for Petitioners Capstone Studios Corp., Millennium Funding, Inc., Voltage Holdings, LLC (Attachments: # 1 Memorandum in support of motion, # 2 Certificate of Service)(Culpepper, Kerry) (Entered: 05/08/2024) |
| 05/08/2024 | 46 | EO: Petitioners' Motion for 30 Day Extension of Time to File Notice of Appeal, ECF No. 45 is GRANTED for good cause shown. The deadline to file a Notice of Appeal is extended to June 25, 2024.<br><br>(JUDGE J. MICHAEL SEABRIGHT)(rlfh) (Entered: 05/08/2024) |
| 06/04/2024 | 48 | MOTION TO SUPPLEMENT RECORD FOR APPEAL Kerry S. Culpepper appearing for Petitioners Capstone Studios Corp., Millennium Funding, Inc., Voltage Holdings, LLC (Attachments: # 1 Memorandum in support of motion, # 2 Exhibit "1", # 3 Certificate of Service)(Culpepper, Kerry) (Entered: 06/04/2024) |
| 06/07/2024 | 49 | ORDER DENYING PETITIONERS' MOTION TO SUPPLEMENT RECORD FOR APPEAL, ECF NO. 48 re 48 - Signed by JUDGE J. MICHAEL SEABRIGHT on 6/7/2024.<br>(jni) (Entered: 06/07/2024) |

| | | |
|---|---|---|
| 06/24/2024 | 50 | **NOTICE OF APPEAL** as to 49 Order on Motion for Miscellaneous Relief, 44 Order on Motion to Stay,, Order on Motion for Reconsideration,, Order on Motion to Strike, 31 Order Adopting Findings and Recommendations,,,, Order on Findings and Recommendations,,, by Capstone Studios Corp.; USCA No. 24-3978. Filing fee $ 605, receipt number AHIDC-3018819. Appeal Record due by 7/8/2024. (Culpepper, Kerry) Modified on 6/25/2024 (jni) Modified on 6/27/2024 (jni) (Entered: 06/24/2024) |
| 06/24/2024 | 51 | CERTIFICATE OF SERVICE by Capstone Studios Corp., Millennium Funding, Inc., Voltage Holdings, LLC re 50 Notice of Appeal, (Culpepper, Kerry) (Entered: 06/24/2024) |
| 06/27/2024 | 52 | USCA Case Number 24-3978 for 50 Notice of Appeal, filed by Capstone Studios Corp. (jni) (Entered: 06/27/2024) |
| 06/27/2024 | 53 | USCA TIME SCHEDULE ORDER as to 50 Notice of Appeal, filed by Capstone Studios Corp.; USCA No. 24-3978. (jni) (Entered: 06/27/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/27/2024 14:52:26 | | |
| **PACER Login:** | clerkshi | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-00426-JMS-WRP |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Always |

ER-257