NO. 24-3978

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

IN RE: SUBPOENA OF INTERNET SUBSCRIBERS OF COX
COMMUNICATIONS, LLC AND COXCOM LLC

CAPSTONE STUDIOS CORP.,

PETITIONER-APPELLANT,

v.

COXCOM, LLC

RESPONDENT-APPELLEE.

On Appeal from the United States District Court
for the District of Hawaii
No. 1:20-cv-00426-JMS-WRP
The Honorable J. Michael Seabright

## BRIEF OF AMICUS CURIAE ELECTRONIC FRONTIER
## FOUNDATION IN SUPPORT OF RESPONDENT–APPELLEE
## COXCOM, LLC AND AFFIRMANCE

Mitchell L. Stoltz
Victoria Noble
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Email: mitch@eff.org
Telephone: (415) 436-9333
Fax: (415) 436-9993

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, amicus

Electronic Frontier Foundation states that it does not have a parent corporation and

that no publicly held corporation owns 10% or more of its stock.

Dated: December 17, 2024               By:  /s/ *Mitchell L. Stoltz*
                                            Mitchell L. Stoltz

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...........................................i

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF INTEREST OF AMICUS ...........................................1

INTRODUCTION .................................................................................1

ARGUMENT .......................................................................................2

    I.    THE PROBLEM OF ABUSIVE COPYRIGHT LITIGATION
        AGAINST ORDINARY INTERNET SUBSCRIBERS
        (COPYRIGHT TROLLING). ..................................................2

    II.    RULE 45 SUBPOENAS IN DOE CASES ARE AN
        ALTERNATIVE TO 512(h) SUBPOENAS THAT HELPS
        AVOID ABUSE. ...................................................................5

CONCLUSION ....................................................................................8

CERTIFICATE OF COMPLIANCE .......................................................9

CERTIFICATE OF SERVICE..............................................................10

# TABLE OF AUTHORITIES

**Cases**

*Bell v. Wilmott Storage Servs.*, LLC,
   12 F.4th 1065 (9th Cir. 2021) ..................................................................2

*Cobbler Nevada, LLC v. Gonzales*,
   901 F.3d 1142 (9th Cir. 2018) .........................................................4, 5, 7

*Design Basics, LLC v. Signature Constr., Inc.*,
   994 F.3d 879 (7th Cir. 2021) ...............................................................2, 3

*Ensor v. Does 1-15*,
   No. A-19-CV-00625-LY,
   2019 WL 4648486 (W.D. Tex. Sept. 23, 2019).......................................6

*In re BitTorrent Adult Film Copyright Infringement Cases*,
   296 F.R.D. 80 (E.D.N.Y. 2012) ..............................................................7

*In re Charter Commc'ns, Inc., Subpoena Enforcement Matter*,
   393 F.3d 771 (8th Cir. 2005) ...........................................................2, 5, 8

*Malibu Media, LLC v. Doe*,
   319 F.R.D. 299 (E.D. Cal. 2016) .........................................................3, 4

*Patrick Collins, Inc. v. Doe 1*,
   288 F.R.D. 233 (E.D.N.Y. 2012) .............................................................7

*Recording Industry Ass'n of Am. Inc. v. Verizon Internet Svcs., Inc.*,
   351 F.3d 1229 (D.C. Cir. 2003)........................................................2, 5, 8

*Strike 3 Holdings, LLC v. Doe*,
   No. C17-1731 TSZ, 2020 WL 531996, (W.D. Wash. Feb. 3, 2020),
   aff'd, 849 F. App'x 183 (9th Cir. 2021) ...............................................4, 6

*UN4 Prods., Inc. v. Doe*,
   No. CV 19-00092 SOM-RLP,
   2019 WL 13215308 (D. Haw. Feb. 25, 2019) ..........................................6

**Statutes**

17 U.S.C. § 512(h).............................................................................*passim*

**Other Authorities**

Matthew Sag & Jake Haskell, "*Defense Against the Dark Arts of Copyright
   Trolling*," 103 Iowa L. Rev. 571 (2018) .................................................4

**Rules**

Fed. R. Civ. P. 45 .................................................................................6

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 8 ...............................................................3

## STATEMENT OF INTEREST OF AMICUS[1]

The Electronic Frontier Foundation ("EFF") is a non-profit civil liberties organization based in San Francisco, California, and supported by over 33,000 dues-paying members. EFF has worked for over 30 years to ensure that technology supports freedom, justice, and innovation for all people of the world. EFF and its members have an interest in ensuring that copyright law fulfills its purpose of promoting progress, while preserving privacy, free expression, and technological growth that contributes to a more just society. EFF's work includes more than a decade of counseling clients and the public about copyright trolls, the subject of this brief.

## INTRODUCTION

For two decades, the settled understanding of internet users is that the extraordinary discovery procedure established in section 512(h) of the Digital Millennium Copyright Act—subpoenas for the identity of an internet user, issued by clerks of court without *ex ante* judicial supervision—does not apply to internet service providers whose role is merely "transmitting, routing, or providing connections for" material alleged to infringe copyright. 17 U.S.C. § 512(h). This

---

[1] Pursuant to Federal Rule of Appellate Procedure Rule 29(a)(4)(E), amicus certifies that no person or entity other than amicus curiae, its members, or its counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part. Respondent CoxCom, LLC consents to the filing of this brief. Petitioner Capstone Studios Corp. does not consent.

holding was established in *Recording Industry Ass'n of Am. Inc. v. Verizon Internet Svcs., Inc.,* 351 F.3d 1229 (D.C. Cir. 2003) and *In re Charter Commc'ns, Inc., Subpoena Enforcement Matter,* 393 F.3d 771 (8th Cir. 2005), and no court of appeals has disagreed with it. The holding of *Verizon* and *Charter* ensures important procedural safeguards for internet users against a group of copyright holders who seek to monetize frequent litigation (or threats of litigation) by coercing settlements—copyright trolls. Affirming the district court and upholding the interpretation of the D.C. and Eighth Circuits will preserve this protection, while still allowing rightsholders the ability to find and sue infringers.

## ARGUMENT

### I.  THE PROBLEM OF ABUSIVE COPYRIGHT LITIGATION AGAINST ORDINARY INTERNET SUBSCRIBERS (COPYRIGHT TROLLING).

The limits that Congress placed on the extraordinary discovery mechanism of Section 512(h) help to deter the abusive litigation-based business model known as copyright trolling. Copyright trolls are "opportunistic holders of registered copyrights." *Design Basics, LLC v. Signature Constr., Inc.*, 994 F.3d 879, 882 (7th Cir. 2021). Compared to other rightsholders, they are "more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service," *Bell v. Wilmott Storage Servs.*, LLC, 12 F.4th 1065, 1082 (9th Cir. 2021) (Clifton, J., concurring) (cleaned

up). "Like the proverbial troll under the bridge, these firms try to extract rents from market participants who must choose between the cost of settlement and the costs and risks of litigation. The federal courts have "documented growing concerns" with copyright trolling. *Malibu Media, LLC v. Doe*, 319 F.R.D. 299, 303 (E.D. Cal. 2016). This business model is "far removed from the goals of the Constitution's intellectual property clause to 'promote the Progress of Science and useful Arts.'" *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1097 (7th Cir. 2017) (quoting U.S. Const. art. I, § 8, cl. 8).

A copyright troll "plays a numbers game in which it targets hundreds or thousands of defendants, seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim. *Malibu Media*, 319 F.R.D. at 303 (quotations and citations omitted). The lawsuits "are filed to take advantage of court ordered discovery…to break the veil of anonymity that separates IP addresses from the account information of actual human beings. They then use this information to quickly negotiate settlements on mass scale without any intention of taking the case to trial." *Id.* In other words, a troll's "corporate strategy relies on aggressively suing for infringement and obtaining accelerated discovery of the IP address holder's identity from the ISP. *Id.* at 304. It then seeks quick, out-of-court settlements which, because they are hidden, raise serious questions about misuse of court procedure." *Id.* Their sole

"motive is to use the federal courts only to obtain identifying information in order to coerce fast settlements," effectively "abusing the process to extort defendants." *Id.*

Copyright trolling is pervasive. By one measure, copyright troll cases against John Doe defendants accounted for 58 percent of the 2015 federal copyright docket. *Strike 3 Holdings, LLC v. Doe*, No. C17-1731 TSZ, 2020 WL 531996, at *6 n.6 (W.D. Wash. Feb. 3, 2020), aff'd, 849 F. App'x 183 (9th Cir. 2021); Matthew Sag & Jake Haskell, "*Defense Against the Dark Arts of Copyright Trolling*," 103 Iowa L. Rev. 571, 573, 577 (2018) ("It is difficult to overstate the extent to which copyright trolling has come to dominate the federal copyright docket."). Researchers estimate that hundreds of thousands of U.S. households have received a settlement demand letter from a copyright troll. *Id.*

To achieve higher returns from settlements with less expense, practitioners of the copyright trolling business model have an incentive to pursue settlements from the ISP subscribers identified through subpoenas to ISPs, even where the subscriber is not necessarily the infringer. It's common for many people to access the internet through a single ISP subscription, apart from the subscriber. *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1146 (9th Cir. 2018) ("[S]imply establishing an account does not mean the subscriber is even accessing the internet, and multiple devices can access the internet under the same IP address."). An ISP

subscriber is not, without more, liable for infringement by other users. *Id.* at 1147–50 (merely "fail[ing] to police" one's internet service "does not sufficiently link" a subscriber to alleged infringement). But pursuing subscribers for settlement avoids the expense of additional discovery.

While the federal courts can and do curb abuses, as this Court affirmed in *Cobbler Nevada*, the copyright trolling business model occurs largely out of sight of the courts, as copyright trolls can favor extrajudicial settlements while simply dismissing claims against targets who move to quash or otherwise defend themselves. *See Cobbler Nevada*, 901 F.3d at 1147 (noting that plaintiff voluntarily dismissed claim against ISP subscriber but filed amended complaint once again naming John Doe).

A holding that § 512(h) subpoenas can be issued to conduit ISPs to discover the identities of their subscribers, contrary to the holding of *Verizon* and *Charter*, would remove an important procedural check against this form of abuse, because §512(h) subpoenas are issued by court clerks without *ex ante* judicial supervision.

## II.    RULE 45 SUBPOENAS IN DOE CASES ARE AN ALTERNATIVE TO 512(h) SUBPOENAS THAT HELPS AVOID ABUSE.

The holding of *Verizon* and *Charter* does not leave rightsholders without any means of identifying an online infringer. Rightsholders can and frequently do accomplish the same result by filing an infringement action against a John Doe defendant, and then moving the court for leave to conduct early discovery. The

discovery requested is a subpoena to an ISP issued under Fed. R. Civ. P. 45 that mirrors the purported § 512(h) subpoena in this action—directing an ISP to produce the name of a subscriber assigned a given IP address at a given time. *See, e.g.*, *UN4 Prods., Inc. v. Doe*, No. CV 19-00092 SOM-RLP, 2019 WL 13215308, at *2 (D. Haw. Feb. 25, 2019); *Ensor v. Does 1-15*, No. A-19-CV-00625-LY, 2019 WL 4648486, at *3 (W.D. Tex. Sept. 23, 2019). Having identified the subscriber, the rightsholder can conduct additional discovery into the identity of the infringer, then amend its complaint to name the infringer.

In contrast to a §512(h) subpoena, a Rule 45 subpoena issued with leave of court in a Doe case allows for *ex ante* judicial supervision to protect the privacy and due process interests of the ISP subscriber, who may or may not be the infringer. After reviewing plaintiffs' motions and assessing the potential for coercion and abuse of process, courts frequently impose limitations or additional safeguards to address the problem of copyright trolling, such as limiting the demand to subscribers' names and addresses to prevent harassment, requiring the ISP to give the identified subscribers sufficient time to challenge the subpoena, or requiring identifying information to be submitted to the court under seal for review before being disclosed to the rightsholder. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 2:24-CV-02976-TLN-CKD, 2024 WL 5010021, at *1 (E.D. Cal. Nov. 20, 2024); *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80,

90 (E.D.N.Y. 2012), *report and recommendation adopted sub nom. Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233 (E.D.N.Y. 2012).

Petitioner Capstone's rejection of Doe suits as an alternative illustrates the importance of close judicial supervision in infringement cases against internet subscribers. In *Cobbler Nevada*, this Court affirmed the dismissal of infringement claims against an ISP subscriber identified through early discovery in a Doe suit. 901 F.3d at 1149. The Court held that because multiple people besides the ISP subscriber can use the internet connection identified by a single IP address, a plaintiff must allege something more to state a claim of infringement against the subscriber. Capstone argued incorrectly to the district court that *Cobbler Nevada* precludes the use of Doe suits to identify infringers. *In re Subpoena Internet Subscribers of Cox Comms. LLC*, No. 1:23-cv-426 (D. Haw. Oct. 9, 2023), ECF No. 24, at 7-8. But the Court did not do so—it held only that a rightsholder plaintiff cannot proceed against the *subscriber* (perhaps in pursuit of a nuisance-value settlement) without a plausible allegation that the subscriber is also the infringer. *Id.* (holding that "failing to secure [one's] internet connection" does not establish liability). The plaintiff in *Cobbler Nevada* was, however, permitted to take discovery to attempt to identify the actual infringer. *Id.* at 1145. In *Cobbler Nevada*, the mechanism of a Doe suit was no bar to legitimate discovery, but only to continued litigation against an innocent target.

## CONCLUSION

Breaking with the long-established precedents of *Verizon* and *Charter* by permitting copyright holders to issue §512(h) subpoenas to ISPs who simply transmit data would bypass an important mechanism of court oversight and invite more coercive settlement demands against internet subscribers. It would not expand access to legitimate copyright enforcement. This Court should affirm the district court's quashing of the subpoena to CoxCom.

Dated: December 17, 2024    By:    /s/ *Mitchell L. Stoltz*
                                              Mitchell L. Stoltz
                                              Victoria Noble
                                              ELECTRONIC FRONTIER
                                              FOUNDATION
                                              815 Eddy Street
                                              San Francisco, CA 94109
                                              Telephone:  (415) 436-9333
                                              Fax:  (415) 436-9993
                                              mitch@eff.org

                                              *Counsel for Amicus Curiae*
                                              *Electronic Frontier Foundation*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify as follows:

1.     This Brief of Amicus Curiae Electronic Frontier Foundation in Support of Respondent–Appellee CoxCom, LLC and Affirmance with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 1,739 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365, the word processing system used to prepare the brief, in 14 point Times New Roman font.

Dated:  December 17, 2024          By:  */s/ Mitchell L. Stoltz*_____
                                        Mitchell L. Stoltz

                                        *Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 17, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  December 17, 2024          By:  /s/ *Mitchell L. Stoltz*
                                        Mitchell L. Stoltz

                                        *Counsel for Amicus Curiae*

10