**No. 24-3978**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

IN RE: SUBPOENA OF INTERNET
SUBSCRIBERS OF COX
COMMUNICATIONS, LLC AND COXCOM LLC

CAPSTONE STUDIOS CORP.

*Petitioner-Appellant*, and

MILLENNIUM FUNDING, INC. and VOLTAGE PICTURES, LLC

*Petitioners*

v.

JOHN DOE

*Respondent,* and

COXCOM, LLC

*Interested Party-Appellee*

On Appeal from the United States District Court
for the District of Hawaii
No. 1:20-cv-00426-JMS-WRP
Hon. Judge Seabright

---

**APPELLANT'S REPLY BRIEF**

---

i

Kerry S. Culpepper, HI Bar No. 9837
Culpepper IP, LLLC
75-170 Hualalai Rd, Suite B204
Kailua Kona, HI 96740
808-464-4047
kculpepper@culpepperip.com
*Attorney for Appellant*
*Capstone Studios Corp.*

ii

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS.............................................................................1

TABLE OF AUTHORITIES ......................................................................3

INTRODUCTION ......................................................................................6

ARGUMENT ..............................................................................................8

I. *VERIZON* AND *CHARTER* DO NOT FORECLOSE DMCA
SUBPOENAS TO §512(a) BROADBAND SERVICE PROVIDERS
INCLUDING COX ............................................................................8

    A. *Verizon* and *Charter* were based on the conclusion that these
ISPs were mere conduits that did not store any material, unlike
Cox ........................................................................................9

    B. Not only does the record evidence not support the District
Court's conclusion that Cox is a mere conduit, but it also
contradicts this conclusion. .................................................10

    C. Modern Broadband Internet service providers are not mere
conduits as in *Verizon* and *Charter* as a matter of law. ...........12

II. 17 U.S.C. §512(h) AUTHORIZES SUBPOENAS TO §512(a)
SERVICE PROVIDERS INCLUDING COX ....................................14

    A. Congress knew how to limit provisions to certain service
providers ..............................................................................15

    B. §512(c)(3)(A)(iii) does not require the notification to include
identification of the material to be taken down .......................17

    C. Cox fails to rebut Capstone's point that it can remove or disable
access to the infringing activit ...............................................18

    D. Focusing on the plain language of 17 U.S.C. §512 supports this
Court not adopting *Verizon* and *Charter*. ...............................19

III. COX IS A §512(d) SERVICE PROVIDER .......................................21

  A. §512(d) protects a service provider from monetary liability for passive activity.............................................................................21

  B. Cox refers or links other users to an online location at the IP address ....................................................................................26

  C. Cox can remove or disable access to the information location tool it provided to John Doe ...................................................27

IV. JOHN DOE LAWSUITS AGAINST BITTORRENT P2P USERS ARE UNWORKABLE ....................................................................28

V. THE DISTRICT COURT ABUSED ITS DISCRETION BY ALLOWING COX TO PARTICIPATE...............................................31

  A. Cox does not dispute that it failed to timely object to the subpoena...................................................................................31

  B. Cox does not have standing to contest the subpoena. ..............34

VI. THE DISTRICT COURT ABUSED ITS DISCRETION BY STRIKING THE DAVID COX DECLARATION. .........................35

CONCLUSION.................................................................................................36

CERTIFICATE OF COMPLIANCE………………………………………...37

CERTIFICATE OF SERVICE……………………………………………38

2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*,
    881 F.3d 293 (4th Cir. 2018) ..................................................................15

*Bridgeport Music, Inc. v. Dimension Films*,
    410 F.3d 792 (6th Cir. 2005) ..................................................................20

*Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018) ...................... 29, 31

*Columbia Pictures Indus. v. Gary Fung*,
    710 F.3d 1020 (9th Cir. 2013) .............................................................. 22-23

*Cosmetic Ideas, Inc. v. IAC/InteractiveCorp*,
    606 F.3d 612 (9th Cir. 2010) ..................................................................20

*DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)*,
    151 F.3d 75 (2d Cir. 1998) ......................................................................33

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) .................................................................11

*FCC v. FCC (In re MCP)*, No. 24-7000, __ F.4th __ , 2025 WL 16388,
    2025 U.S. App. LEXIS 11 (6th Cir. Jan. 2, 2025) ................................ 12-14

*George v. McDonough*,
    596 U.S. 740, 741, 142 S. Ct. 1953 (2022) .................................................13

*In re Charter Commc'ns, Inc., Subpoena Enf't Matter*,
    393 F.3d 771 (8th Cir. 2005) .................................................8-12, 14, 19, 34

*In re DMCA Subpoena to Reddit, Inc.*,
    441 F. Supp. 3d 875 (N.D. Cal. 2020) ................................................. 30, 32

*In re DMCA § 512(h) Subpoena to Twitter, Inc.*,
    608 F. Supp. 3d 868 (N.D. Cal. 2022) .......................................................32

3

*LHF Prods. v. Kabala*, No. 2:16-cv-02028-JAD-NJK, 2017 U.S. Dist. LEXIS 175635, 2017 WL 4801656 (D. Nev. Oct. 23, 2017) ....................................30

*Mujica v. AirScan Inc.*, 771 F.3d 580 (9th Cir. 2014) ...............................................12

*Ott v. City of Milwaukee*, 682 F.3d 552 (7th Cir. 2012) ..........................................33

*Padilla-Ramirez v. Bible*, 882 F.3d 826 (9th Cir. 2018) ..........................................20

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) ..................................8-12, 14, 19, 24, 27, 34

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992) ........................................................................33

*Sohm v. Scholastic Inc.*, 959 F.3d 39 (2d Cir. 2020) ...............................................20

*Starz Ent., LLC v. MGM Domestic TV Distribution, LLC*, 39 F.4th 1236, 1244 (9th Cir. 2022) ............................................................20

*Strike 3 Holdings, LLC v. Doe,* No. 1:20-cv-06528, 2020 U.S. Dist. LEXIS 212539, (N.D. Ill. Nov. 13, 2020) ................................................................................29

*Strike 3 Holdings LLC v. Doe*, 849 F. App'x 183 (9th Cir. 2021) ...........................29

*VMG Salsoul, Ltd. Liab. Co. v. Ciccone*, 824 F.3d 871, 886 (9th Cir. 2016) .............................................................20

**Statutes**

17 U.S.C. § 512 ..................................................................... 6, 11, 15, 19, 24-25

17 U.S.C. § 512(a) ..................................... 6, 8-12, 14-18, 21, 24-26, 32

17 U.S.C. § 512(b) ............................................................................... 15, 18

17 U.S.C. § 512(c) ....................................6, 8, 9, 11, 14, 17-19, 27, 28

17 U.S.C. § 512(d) ..........................................................6, 18, 21, 23-28

4

17 U.S.C. § 512(e) ...................................................................... 15, 16, 17

17 U.S.C. § 512(g) ...................................................................................28

17 U.S.C. § 512(h) ......................................6, 8-10, 14-16, 18, 29, 32

17 U.S.C. § 512(j) ..................................................................... 15, 18, 27, 35

17 U.S.C. § 512(k) ...................................................................................13

17 U.S.C. § 512(l) ...................................................................................28

17 U.S.C. § 512(m) ............................................................................ 16-17

17 U.S.C. § 512(n) ...................................................................................24

17 U.S.C. § 1202(c) ........................................................................... 23-24

47 U.S.C. § 153 ................................................................................. 12-13

**Legislative History**

S. Rep. 105-190 ........................................................................................13

Pub. L. 105–304, title II, § 202(a) .........................................................13

**Rules**

Fed. R. Civ. P. 4(m) ...............................................................................29

Fed. R. Civ. P. 20 ............................................................................. 30-31

Fed. R. Civ. P. 45 ............................................................................. 32-33

**Other Publications**

ARIN, *About*, https://www.arin.net/about/ (last accessed on Jan. 27, 2025) ........22

**INTRODUCTION**

Capstone agrees for the most part that this case turns on a straightforward statutory interpretation question under the DMCA. *See* Cox Br. at 1. But Capstone disagrees with taking two contradictory approaches to statutory interpretation to two different sections in the same statute.

Cox argues that *absence* of the 17 U.S.C. §512(c)(3)(A) notification language in §512(a) means §512(c)(3)(A) notifications are not applicable to §512(a) providers. And although §512(h) uses the broad definition of service provider that explicitly includes §512(a) service providers, Cox argues that because an application for a §512(h) DMCA subpoena requires a copy of the notification, there can be no valid §512(h) DMCA subpoenas to §512(a) service providers. Cox states Capstone must go to Congress to deal with the harsh consequences.

But when it comes to §512(d), Cox urges this Court to adopt the District Court's decision that *added* an active requirement to "referring or linking users". Cox argues else ISPs will be "scrambling to create takedown-based DMCA programs" in response to DMCA notices. Cox Br. at 47. Cox's unreconcilable arguments are not supported by the plain language of §512 or the DMCA's purpose of balancing the interests of copyright holders and ISPs. The Court should

6

reverse the District Court's decision so Capstone can use the evidence it obtained from the subpoena stop piracy of its movie *Fall*.

## ARGUMENT

**I.**   ***VERIZON* AND *CHARTER* DO NOT FORECLOSE DMCA SUBPOENAS TO §512(a) BROADBAND SERVICE PROVIDERS INCLUDING COX.**

Cox urges this Court to adopt the decisions of *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1234 (D.C. Cir. 2003) ("*Verizon*") and *In re Charter Commc'ns, Inc., Subpoena Enf't Matter*, 393 F.3d 771, 773 (8th Cir. 2005) ("*Charter*") more than 20 years ago but ignore their logic that a mere conduit cannot take down infringing material. Unlike a mere conduit, Cox does not deny that infringing material *is* stored on its servers, albeit for a limited period. ER-148. And unlike the service providers in *Verizon* and *Charter*, Cox does not dispute that it *can* take measures short of termination of subscriber accounts to stop users from distributing pirated copies of Capstone's movie *Fall* on BitTorrent P2P networks in response to a §512(c)(3) notification. Cox does not deny that its anti-infringement measures have a 95 percent success rate. *See* Opening Br. at 52. Because there is no evidence that Cox is a mere conduit, the *Verizon* and *Charter* decisions are distinguishable, and a §512(h) subpoena can be issued to Cox.

8

**A.  *Verizon* and *Charter* were based on the conclusion that these ISPs were mere conduits that did not store any material, unlike Cox.**

The logic underpinning the *Verizon* and *Charter* is that a mere conduit provider cannot remove or takedown any material in response to a §512(c)(3) take down notifications.  Nonetheless, Cox argues that the discussion of this logic in *Verizon* and *Charter* that was limited to a certain type of transitory provider (mere conduits) was not the reasoning but merely a recognition of Congress's judgment to not subject all §512(a) transitory providers to §512(c)(3) take down notifications.  *See* Cox Br. at 37-38.  Cox cannot point to any *positive* language in the statute or legislative history supporting its thesis that Congress chose not to subject §512(a) providers to §512(c)(3) take down notifications.  In *Verizon* the ISP argued that "…§ 512(h) does not authorize the issuance of a subpoena to an ISP that transmits infringing material *but does not store* any such material on its servers." *Verizon*, 359 F.3d at 1236 (DC Cir. 2003) (emphasis added).  The *Verizon* Court agreed and stated: "…any notice to an ISP concerning its activity as *a mere conduit* does not satisfy the condition of § 512(c)(3)(A)(iii) and is therefore ineffective." *Id.* at 1236 (emphasis added).  Likewise in *Charter*: "Charter argues § 512(h) does not allow a copyright owner to request a subpoena for an ISP which *merely acts as a conduit* for data transferred between two internet users…We agree."  *Charter*, 393 F.3d at 776-77 (8th Cir. 2005) (emphasis added).  Thus, the

9

key to the decisions in *Verizon* and *Charter* was the concession that the ISPs were mere conduits that did not store the infringing content and thus could never remove or disable the infringing content. Cox wrongly ignores this key point and argues that *Verizon* and *Charter* stand for the proposition that §512(h) does not apply to §512(a) providers in general whether their functions are characterized as conduits, mere conduits or transitory digital communications. *See* Cox Br. at 45. This Court can agree with *Verizon* and *Charter* but still reverse the District Court because although Cox may be a §512(a) provider, there is no evidence that it is a mere conduit like the ISPs in *Verizon* and *Charter*.

**B. Not only does the record evidence not support the District Court's conclusion that Cox is a mere conduit, but it also contradicts this conclusion.**

Unlike the parties in *Verizon* and *Charter*, Capstone disputes that Cox is a mere conduit that does not store infringing material on its server. Cox argues that Capstone does not point to any evidence undercutting the District Court's conclusion that Cox's involvement with piracy of Capstone's movie was limited to functions covered by §512(a). *See* Cox. Br. at 44. But the District Court went further and improperly concluded that Cox is a "mere conduit". ER-130. Cox does not dispute that the cut and paste of §512(a) declaration of Cox's employee Ms. Hall is the *only* evidence presented. Even the Hall declaration in no way establishes that Cox is a mere conduit. Rather, in the contrary, Hall states that "no

10

such copy is maintained … for a longer period than is reasonably necessary for the transmission …" ER-148.

Thus, unlike in *Verizon* and *Charter* where it was not disputed that nothing was ever stored at the ISP, Cox can take down the pirated copies of Capstone's movie *Fall* on its network during the "period reasonably necessary for transmission". ER-148. And the limited period stored for transmission is not ephemeral. This Court has concluded that 14 days is "transient" and "intermediate" within the meaning of §512(a). *See Ellison v. Robertson*, 357 F.3d 1072, 1081 (9th Cir. 2004), 357 F.3d at 1081. Rather than Cox responding to Capstone's point that a provider can store infringing material for at least 14 days that can be removed in response to a take down notice and still qualify as a §512(a) service provider per *Ellison*, Cox reverts to its *ipse dixit* argument that Congress deliberately chose not to subject all §512(a) service providers to §512(c)(3) notices. *See* Cox. Br. at 42. Cox's argument depends on this Court ignoring the logic of *Charter* and *Verizon*. It also depends on the Court ignoring other sections of §512 that explicitly reference the §512(c)(3) notification scheme to §512(a) providers as discussed below. *See infra* 16-18.

Besides Cox failure to deny that it stores material on its servers for a limited time, Capstone also cited Cox's own publications to show that Cox has other services such as cloud storage service. *See* Opening Br. at 47-48. Cox does not

11

dispute that it offers other services. But Hall's declaration, at best, just states how Cox's "Internet service product operates". Hall's declaration does not state that Cox's involvement with the *infringement at issue* (John Doe's neighbor's infringements) was limited to §512(a) functions as concluded by the District Court.

The District Court's conclusion that Cox is a mere conduit for the infringement at issue, *see* ER-130, lacks any support in inferences that may be drawn from the facts in the record and is contradicted by the Hall declaration. Thus, the District Court's decision was an abuse of discretion. *See Mujica v. AirScan Inc.*, 771 F.3d 580, 589 (9th Cir. 2014).

**C.     Modern Broadband Internet service providers are not mere conduits as in *Verizon* and *Charter* as a matter of law.**

Just this month, the broadband industry convinced the Sixth Circuit Court of Appeals in a multidistrict action that broadband Internet service providers are *not* mere conduits in the context of 47 U.S.C. § 153 (the Telecommunications Act):

> …Broadband Internet Service Providers, of course, "offer to members of the public . . . Internet access."…The question is whether, in so doing, they are merely a conduit for data transmission (a so-called "dumb pipe") and thus offer consumers a telecommunications service (as the Safeguarding Order concludes); or whether, instead, Broadband Internet Service Providers offer consumers the capability to acquire, store, and utilize data—and thus offer consumers an information service. In our view, the latter is the best reading of the Act.

*FCC v. FCC (In re MCP)*, No. 24-7000, 2025 U.S. App. LEXIS 11 at \*12, 2025 FED App. 0002P (6th Cir.), __ F.4th __ , 2025 WL 16388 (6th Cir. Jan. 2, 2025)("*In re MCP*").

Although *In re MCP* interpreted the Telecommunication Act, the DMCA derived its definition of a §512(k)(1)(A) service provider from the Telecommunication Act:

> The first definition of a service provider, set forth in subsection (j)(1)(A), defines a narrower range of functions and applies to use of the term in subsection (a). …This freestanding definition is derived from the definition of ''telecommunications'' found in 47 U.S.C. 153(48) …

S. Rep. 105-190 at 54 (note the (j)(1)(A) definition in the Senate Report was adopted as §512(k)(1)(A) and the definition of telecommunications appears to now be in 47 U.S.C. §153(50)).

Because the DMCA's definition of §512(k)(1)(A) service provider is adopted from the Telecommunications Act, *In re MCP*'s interpretation of broadband providers not being mere conduits is applicable to the DMCA when considering whether a broadband provider such as Cox is a mere conduit. *See George v. McDonough*, 596 U.S. 740, 741, 142 S. Ct. 1953, 1955 (2022) (Where Congress employs a term of art from another legal source, it brings the old soil with it.) Since a service provider per the narrower range of function in

13

§512(k)(1)(A) is not a mere conduit per *In re MCP*, such a provider cannot be a mere conduit per §512(a) which has broader range.

Recognizing that broadband providers are not mere conduits like ISPs of 20 plus years ago is common sense recognition of the advances in network technology. *See* ER-18. It also recognizes the result the broadband industry fought for 10 years to achieve. *See In re MCP*, 2025 U.S. App. LEXIS 11, at *4 (discussing previous substantial challenges heard by the broadband industry to the FCC's 2015 and 2018 net neutrality orders). The Court should accept the broadband industry's assertion that they are not mere conduits. And because Cox is not a mere conduit as a matter of law, *Verizon* and *Charter* are not applicable.

## II. 17 U.S.C. §512(h) AUTHORIZES SUBPOENAS TO §512(a) SERVICE PROVIDERS INCLUDING COX.

As established above, Cox is not a mere conduit. Cox also argues that §512(h) does not apply to §512(a) providers in general whether their functions are characterized as conduits, mere conduits or transitory digital communications. *See* Cox Br. at 45. But Cox did not even try to refute Capstone's point that §512(c)(3)(A)(iii) notification section does not require that the infringing material *be stored on the ISP's servers*. *See* Opening Br. at 49-50. Thus, it appears even Cox does not defend the District Court Judge's and Magistrate Judge's improper conclusion that §512(a) does not contain any notice and take down provision

14

referring to Subsection (c)(3)(A) because there is no material stored to take down. *See* ER-31, ER-213. Cox's argument is basically that a §512(h) subpoena cannot be applied to a §512(a) service provider because sections 512(b) - (d) each include an explicit reference to the (c)(3) notification while §512(a) does not. *See* Cox. Br. at 24, 26, 29. The Court should reject Cox's request to read in a negative limitation in §§512(a) and (h) which requires acceptance of myriad assumptions that are nowhere in the statute and explicitly contradicted by other provisions and even by Cox's own arguments.

### A. Congress knew how to limit provisions to certain service providers.

Capstone previously pointed out that Congress explicitly said when a provision was *not* applicable to §512(a) service providers in multiple sections of §512 such as §512(j)(1)'s specification of the type of injunctive relief not applicable to §512(a) providers and §512(e)'s specification of what limitation of liability was applied to (a) and (b) providers. *See* Opening Br. at 43. Congress knew when it wanted to limit language. *See, e.g., BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 881 F.3d 293, 302 (4th Cir. 2018) ("Congress knew how to expressly refer to adjudicated infringement…")

Cox completely ignored Capstone's point about §512(j)(1) and argues that "Congress had no reason to distinguish between providers in §512(h)". Cox Br. at 31. But Capstone can say the same – Congress had no need to repeat the (c)(3)

15

notification language in §512(a) because it had no reason to distinguish it from the other sections in this context.

Capstone previously pointed out that Cox's argument that Congress chose not to apply the notification/takedown scheme to §512(a) providers ignores §512(e)'s explicit reference to the notification scheme to a §512(a) university service provider. *See* Opening Br. at 55. Particularly, §512(e) provides that the graduate student or faculty member of a §512(a) university service provider is considered a person other than the university if conditions (A) – (C) are complied. Condition (B) is that the "the [university] has not, within the preceding 3-year period, received *more than two notifications described in section (c)(3)* of claimed infringement…" §512(e)(1)(B) (emphasis added). Thus, here Congress explicitly applies the (c)(3) notification provision to a §512(a) provider. Capstone also pointed out that Cox's argument ignores §512(m)'s explicit reference to removing/disabling access (takedown) to material to §512(a) service providers. *See* Opening Br. at 54. Thus, here Congress again explicitly applies the (c)(3) take down provision to a §512(a) provider.

Cox concedes that these notification/takedown provisions in §512(m) and §512(e) are applicable to §512(a) providers but argues that "§512(m) and §512(e) are broadly applicable to *all* safe harbors…" Cox. Br. at 32. But the same can be said to §512(h) which is broadly applicable to all safe harbors. Cox also argues

16

that §512(m) merely clarifies that §512(a) providers do not have to remove or disable access to material when prohibited by law. Cox. Br. at 32. But this contradicts Cox's *ipse dixit* argument that Congress specifically chose not to subject §512(a) providers to the notice/take down provision. *See* Cox. Br. at 38.

Capstone previously pointed out that adopting Cox's interpretation that a §512(c)(3) notification can never be sent to a §512(a) service provider would lead to the absurd result that the Condition (B) that no more than two notifications in a 3-year period for a §512(a) university service provider explicitly set forth in §512(e)(1)(B) could never be satisfied. *See* Opening Br. at 55-56. Rather than addressing this point, Cox incorrectly describes Capstone's point as critique of Congress's policy choice. *See* Cox. Br. at 33-34. Capstone was pointing to explicit language in §512(e)(1)(B) that shows Congress expressly made §512(c)(3) notifications applicable to §512(a) service providers.

**B. §512(c)(3)(A)(iii) does not require the notification to include identification of the material to be taken down.**

Capstone previously pointed out that Congress's use of the disjunctive "or" in §512(c)(3)(A)(iii) provides for two cases in a notification: (1) Identification of the material claimed to be infringing; or (2) Identification of the material subject of infringing activity and that is to be removed or access to which is to be disabled. *See* Opening Br. at 59. Cox argues that Capstone's point is undermined by the

nearby provisions in §512(c)(1)(C) and §512(d)(3) that both require the service provider to take down material claimed to be infringing or subject of infringing activity. *See* Cox Br. at 35. First, Cox ignores the other nearby provision of §512(h)(3) which only requires the "information sufficient to identify the alleged infringer of the material…" just like case (1).

Second, §512(c)(1)(C) and §512(d)(3) include that same language because each relates to the functions of the type of service provider and the actions it must take in response to the notification. On the other hand, for a §512(b) provider, §512(b)(2)(E)(ii) modifies the notification to include language pertaining to whether the material has been removed from the originating site or that a court has ordered removal. Thus, §512(c)(3)(A)(iii) sets forth the requirements for a notification in general, but in §§512(b)(2)(E), 512(c)(1)(C) and 512(d)(1)(3) the language is tailored for how those service providers should respond. For a §512(a) provider, Congress did not need to include the notification language again because §512(c)(3)(A)(iii) sets forth the requirements for a notification in general uses the disjunctive "or".

**C. Cox fails to rebut Capstone's point that it can remove or disable access to the infringing activity.**

Cox asserts that the measures Capstone pointed to for disabling access to infringing activity are harsher than set forth in §512(j). *See* Cox Br. at 2, 38-40.

18

But Cox does not say that it *cannot* disable access to infringing activity. Cox has boasted in multiple courts that its practices are successful 95 percent of the time. *See* Opening Br. at 52. Cox can keep doing what it is doing.

Cox argues that some of the measures Capstone discussed were "doubly waived". Cox Br. at 40. Untrue. Capstone pointed to these measures in briefing before the District Court which addressed some of them. *See, e.g.* ER-88-ER-90, ER-108-ER-109, ER-137, and ER-142-ER143. Therefore, Capstone sufficiently discussed these measures.

Importantly, Cox does not dispute that it was not Capstone's but John Doe's or Cox's burden to affirmatively prove it could not remove or disable access to infringing material in response to a §512(c)(3) notification. *See* Opening Br. at 53. The District Court improperly shifted the burden to Capstone, despite neither Cox nor John Doe even arguing that the subpoena was invalid in an objection or in a motion to quash.

**D. Focusing on the plain language of 17 U.S.C. §512 supports this Court distinguishing or not adopting *Verizon* and *Charter*.**

Cox's argues that Capstone has not provided a compelling reason to create a circuit split. *See* Cox Br. at 29-30. First, as discussed above, this Court can distinguish *Verizon* and *Charter* from this case based upon the fact that Cox does

19

not deny that it stores the material, albeit for limited time and those cases concerned a different P2P technology now defunct for decades.

Second, this Court has not applied the compelling reason standard in *Padilla-Ramirez v. Bible*, 882 F.3d 826, 836 (9th Cir. 2018) in copyright cases. For example, this Court merely considered possible troublesome consequences when rejecting the Sixth Circuit's decision in *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792 (6th Cir. 2005) concerning application of the *de minimis* exception. *See VMG Salsoul, Ltd. Liab. Co. v. Ciccone*, 824 F.3d 871, 886 (9th Cir. 2016) ("*VMG*"). And this Court has often disagreed with other Circuits on interpreting provisions of the Copyright Act. For example, in *Starz Ent., LLC v. MGM Domestic TV Distribution, LLC*, 39 F.4th 1236, 1244 (9th Cir. 2022) this Court declined to follow the Second Circuit's decision on the discovery rule in *Sohm v. Scholastic Inc.*, 959 F.3d 39 (2d Cir. 2020). In *Cosmetic Ideas, Inc. v. IAC/InteractiveCorp*, 606 F.3d 612 (9th Cir. 2010) this Court declined to follow the Tenth and Eleventh Circuits when considering whether copyright holders must register their copyright prior to filing suit. "…[T]he goal of avoiding a circuit split cannot override our independent duty to determine congressional intent." *VMG*, 824 F.3d at 886 (9th Cir. 2016). The Court should do the same as *VMG* here.

20

### III. COX IS A §512(d) SERVICE PROVIDER.

When discussing §512(d), Cox switches gear and urges this Court to adopt the District Court's conclusion that read in an "active" requirement to the linking of users to the online location containing infringing material. Cox asks this Court to ignore the fact that it did more than just route or connect P2P users to the neighbor's computer at John Doe's Internet service. Cox provided the modem and assigned the IP address as the information location tool that was used to link P2P users for obtaining pirated copies of *Fall*. The Court should reject the District Court and Cox's argument based upon language that is not in the statute.

### A. §512(d) protects a service provider from monetary liability for passive activity.

§512(d) applies to service providers "…referring or linking users to an online location containing infringing material or infringing activity, by using information location tools, including a directory, index, reference, pointer, or hypertext link…" Cox argues that because Congress used the terms "transmitting, routing, or providing connections for" in §512(a) versus "linking" and "referring" in §512(d) Congress must have meant for linking to mean something more besides mere transmission. *See* Cox. Br. at 47-48. The difference between connecting in §512(a) and the linking in §512(d) is the requirement of the *information location*

21

*tool*. Cox used the IP address as the information location tool to link other P2P users to the John Doe's computer which was at the online location.

Cox argues that assigning an IP address does not fit the statutory definition of referring or linking. *See* Cox. Br. at 47-48. Cox cites an unhelpful example of a computer user reading Cox's brief on a computer. A better example is Cox's Internet subscriber John Doe's neighbor's using the Internet service for piracy. *See* ER-225 ("This mistake was allowing everyone in our neighborhood to use our internet."). Cox assigned IP address 50.159.108.38 to John Doe. *See id.* When the neighbor using John Doe's Cox Internet service from IP address 50.159.108.38 started downloading a pirated copy of *Fall* on his/her computer using BitTorrent, Cox linked other peers in the BitTorrent swarm to the neighbor's computer using IP address 50.159.108.38 and transmitted pieces of *Fall* from the peers to the neighbor's computer (downloading). *See Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1027–1028 (9th Cir. 2013) ("*Fung*") (discussing how BitTorrent works). And from the moment the neighbor obtained a first piece of *Fall,* Cox transmitted messages broadcasting IP address 50.159.108.38 as a peer that had a pirated copy of *Fall* on his/her computing device available to other peers in the swarm. *See* ER-90-ER-91 at ¶¶19, 22 (discussing broadcast). When other peers (including Cox Internet users) decided to join the swarm to obtain the pirated copy, Cox linked these peers to the neighbor's computer using IP address 50.159.108.38

and transmitted pieces of *Fall* from the neighbor's computer to the peers (uploading). *See Fung* at 1027–1028. The neighbor's computer became online by IP address 50.159.108.38.

Cox accuses Capstone of asserting that Cox is a §512(d) provider "…merely by designating a computer as an internet-reachable location." Cox. Br. at 49. Untrue. Cox is not like ARIN that just assigns IP addresses. *See* ARIN, *About*, https://www.arin.net/about/ (last accessed on Jan. 27, 2025). Again, Capstone directs the Court to what John Doe said happened. Cox did *more* than just assign the IP address to John Doe to make a computer an internet-reachable location. Cox sent the transmissions from the neighbor's computer that broadcast the IP address to other peers as having a pirated copy of *Fall* available to share and connected the other peers in the swarm to the neighbor's computer using the IP address. Cox linked users to the online location (John Doe's neighbor's computer) containing infringing material or infringing activity, by using information location tools (IP address 50.159.108.38) for uploading and downloading.

Cox criticizes Capstone for not citing any treatise or legislative history that supports its position. But Capstone did not need to because the plain text of §512(d) supports its position. The verb "linking" is not ambiguous. Notably, Congress also used the term "link" when defining copyright management information in §1202: "Identifying numbers or symbols referring to such

23

information or *links* to such information." 17 U.S.C. §1202(c)(7) (emphasis added). §1202 and §512 were adopted at the same time. *See* Pub. L. 105–304, title II, § 202(a), Oct. 28, 1998. As Capstone established in its opening brief, which Cox does not dispute, an IP address can be a link to information such as a website, *see* Cox. Br. at 53, just like the link in copyright management information. It is Cox that urges the Court to diverge from the plain text and adopt the District Court's read in of an "active" limitation.

Nonetheless, as discussed in *Verizon*, the legislative history shows that Congress was aware of the problem of ISPs passively using information location tools such as FTP sites to link users to pirated content. *See Verizon*, 351 F.3d 1229, 1238 (D.C. Cir. 2003). And besides the hypertext link Capstone discussed previously, §512(d) also includes a pointer as an example of an information location tool. The Senate report stated that "a pointer stands for an Internet location or address". S. Rep. 105-190 at 47 (1998). Thus, a pointer is also just like the IP address Cox assigned to John Doe. The legislative history supports Capstone's position.

Capstone pointed out that the District Court's decision that a service provider could not do both providing connections in §512(a) and linking in §512(d) ignores §512(n)'s command that a service provider can qualify for more than one safe harbor. *See* Opening Br. at 66-67. Cox attempts to deflect the

24

District Court's error by conflating assigning an IP address to transmitting and routing. *See* Cox. Br. 51-52. Capstone previously pointed to specific examples such as IXP and LAN that route data to users without assigning them IP addresses or giving them a modem. *See* Opening Br. at 67. Cox ignores the fact that not every transitory provider assigns IP addresses to users and gives them modems.

Cox asks this Court to accept the District Court's decision that it is not Cox but the P2P system that links the Internet users with the pirated content. *See* Cox. Br. at 64. Capstone rightly pointed out that the District Court was improperly importing the volitional conduct requirement for copyright infringement. *See* Opening Br. at 64-65. Cox tries to recast the District Court's decision as requiring "conduct that goes beyond the mere *passive* [conduct] that makes an entity a conduit under subsection (a)." First, here although Cox does not use the word volitional, Cox is clearly arguing that §512(d) requires active (volitional) conduct rather than just automatic operations. But as Capstone previously pointed out, the entire purpose of §512 was to rule out liability for passive automatic acts. *See* Opening Br. at 64-65. Cox does not respond to this point. Second, Cox provides the conduct that goes beyond the mere passive connections by providing the IP address and modem to the user.

Cox also argues that it would make no sense for Congress to create a safe harbor in §512(a) that is not subject to the notice-and-takedown requirement but

25

treat the same conduct in §512(d) to the notice-and-takedown requirement.  *See* Cox. Br. at 51.  But as exhaustively discussed above, Capstone's position is that assigning the IP address is one of the acts that shifts the conduct from §512(a) to §512(d).  Moreover, Capstone does not agree with Cox's assertion that §512(a) providers are not subject to the notice-and-takedown system as discussed above.

**B.     Cox refers or links other users to an online location at the IP address.**

Cox appears to agree with the District Court's argument that because it assigns the IP address to users automatically it cannot be a §512(d) provider.  *See* Cox. Br. at 53.  Here again Cox is improperly arguing that a copyright holder must prove volitional conduct.

Cox argues that Capstone's interpretation of the plain language of §512(d) must fail because it requires the IP address to be both the information location tool and the online location to which it links.  *See* Cox Br. at 53. But this is no different from a hypertext link which is explicitly included in §512(d).  When one clicks on a hypertext link, the user is referred to a website that displays information from a computer (server) that is online at the hypertext link.  When John Doe's neighbor made *Fall* available on Bittorrent, the neighbor's *computer* became online at the IP address.

26

Cox finishes its argument with an incomplete sentence to try to argue that Captone's interpretation of §512(d) does not make sense. *See* Cox Br. at 54. Capstone completes Cox's same sentence with the facts of this case (in bold) from John Doe to show it makes perfect linguistic sense: "service provider **Cox** "refer[s] or link[s] users *to* **John Doe's neighbor's computer online at IP address 50.159.108.38**, *by using* [an IP address] **50.159.108.38**".

**C. Cox can remove or disable access to the information location tool it provided to John Doe.**

Cox does not deny that it can disable access to the IP address 50.159.108.38 it provided to John Doe or that it was Cox's John Doe's burden as the person seeking to quash the subpoena to set forth evidence that Cox has no measures for blocking access to the links. *See* Opening Br. at 53, 69. Nonetheless, Cox urges the Court to adopt the District Court's reasoning that one of the exemplary means Capstone discussed (null routing) is a broader remedy than §512(d) contemplates. But Cox fails to address Capstone's point that the logic in *Verizon* concerning the distinction between disabling access to infringing material in §512(c) and access to accounts in §512(j) is not applicable to §512(d) which is concerned with disabling *links*. Instead, Cox merely states that "the fact that § 512(d) is concerned with removing … *links* ... only *deepens* the gap between the broad impact of null routing and § 512(d)'s contemplated, surgical remedy." Cox Br. at 56. Notably,

27

Cox fails to address Capstone's point that Cox is already null routing subscribers in response to notices from copyright holders. *See* Opening Br. at 69. In view of this concession, the Court should ignore Cox's parade of horror of "…ISPs across the country scrambling to create takedown-based DMCA programs that require swift denials of internet access based on a mere allegation of infringement." Cox Br. at 47. Cox thinks the specter of ISPs having to stop their users in engaging in piracy after it receives a notice – the very purpose of the DMCA – somehow favors its interpretation of §512(d). Nonetheless, §512(g) allows Cox's subscribers to send a counter notification to deny the allegation in the §512(c)(3) notification. Moreover, as made clear in §512(l), failure to qualify for the §512(d) safe harbor does not equate liability for copyright infringement.

## IV. JOHN DOE LAWSUITS AGAINST BITTORRENT P2P USERS ARE UNWORKABLE.

Filing John Doe lawsuits against thousands of subscribers sharing pirated copies of Capstone's movies as argued by Amicus and Cox is unworkable and unfeasible. *See* Cox Br. at 9, 47; Amicus Br. at 6-7.

The Amicus points out the first problem – the Plaintiff cannot make a plausible allegation that the subscriber is also the infringer. *See* Amicus Br. at 7. As pointed out by this Court, "simply establishing an account does not mean the subscriber is even accessing the internet, and multiple devices can access the

28

internet under the same IP address." *Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142, 1146 (9th Cir. 2018). And just like the scenario discussed in *Cobbler* of a subscriber "not technologically savvy enough to secure the connection to block access by a frugal neighbor," *Id.* at 1149, John Doe states a neighbor was responsible for the piracy at John Doe's service. *See* ER-225. Likewise for a different Cox subscriber whose roommate was responsible for the piracy. *See* ER-71. Permitting copyright holders to obtain identifications as provided in §512(h) rather than filing a John Doe lawsuit avoids the situation where a copyright holder must conduct an investigation of the subscriber's household and visitors to confirm the direct infringer within the strict deadlines to serve the Defendant of Fed. R. Civ. P. 4(m). And District Courts have cited *Cobbler* as a basis to deny expedited discovery in John Doe lawsuits. *See, e.g., Strike 3 Holdings, LLC v. Doe,* No. 1:20-cv-06528, 2020 U.S. Dist. LEXIS 212539 (N.D. Ill. Nov. 13, 2020).

This Court's decision in *Strike 3 Holdings LLC v. Doe*, 849 F. App'x 183 (9th Cir. 2021) is instructive of the unworkable nature of John Doe lawsuits. The copyright holder concluded that the Doe Internet subscriber's son was the infringer after discovery and filed a voluntary dismissal. However, this Court affirmed the District Courts award of more than $40,000 of attorneys' fees and costs to the Internet subscriber's son. *See id.*

29

The second problem with John Doe lawsuits is the inability to join all the infringing subscriber IP addresses as Defendants in one complaint. Courts in the Ninth Circuit have diverged on the issue of whether swarm joinder supports joinder. *See LHF Prods. v. Kabala*, No. 2:16-cv-02028-JAD-NJK, 2017 U.S. Dist. LEXIS 175635, 2017 WL 4801656, (D. Nev. Oct. 23, 2017) (Noting that the District of Arizona, the Central District of California, and the District of Oregon do not allow swarm joinder, the Eastern and Western Districts of Washington both permit swarm joinder under Rule 20, and the Eastern, Northern, and Southern Districts of California have judges on both sides). Capstone would have to file 41 different John Doe lawsuits in numerous districts to obtain the subscriber identifications of just the IP addresses at issue. *See* ER-240.

The Amicus argues that John Doe lawsuits are necessary for the Court to exercise judicial supervision of so-called copyright trolling. *See* Amicus Br. at 7. The Court can perform judicial supervision of a DMCA subpoena by ordering motion practice in response to the subscriber's objection just like this case. *See* ER-223. And besides this case, third parties that are the subject of DMCA subpoenas have been successful in motions to quash. *See, e.g. In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 877 (N.D. Cal. 2020) (granting motion to quash of Darkspilver, a pseudonymous user of Reddit).

30

Nonetheless, should the Court accept the arguments of Cox and Amicus concerning John Doe lawsuits, Capstone urges the Court to clarify that (i) copyright holders can file John Doe lawsuits against Internet subscribers, obtain expedited discovery, and time to investigate the identity of the true infringer after obtaining the subscriber identity notwithstanding *Cobbler* and (ii) copyright holders can join all the infringers in a John Doe action per Rule 20(a)(2)(B).

## V. THE DISTRICT COURT ABUSED ITS DISCRETION BY ALLOWING COX TO PARTICIPATE.

### A. Cox does not dispute that it failed to timely object to the subpoena.

Cox does not dispute that it failed to timely object to the subpoena or join John Doe's motion to quash. Cox argues that Capstone did not explain what relief flows from Cox lacking standing. *See* Cox Br. at 62. But the proper remedy is what Capstone particularly requested – for this Court to reverse the District Court's decision adopting the Magistrate Judge's Findings and Recommendation ("F&R") to quash the subpoena. *See* Opening Br. 78.

Next, Cox argues that it was a party to the proceedings because it was a recipient of the DMCA subpoena. *See* Cox Br. at 64. But Capstone is not arguing that Cox did not receive the subpoena. Rather, Capstone's point is that Cox waived its right to be a party and participate by fully responding to the subpoena without any objections. Cox did not even assert an objection in its response to

31

Petitioners' Objection to the F&R based upon §512(a). Rather, Cox just stated that it "writes to correct the record in certain respects." ER-167. Even the conclusion portion of Cox's response merely requested the court "decline Petitioners' request to make such a finding on this record" rather than requesting that the Court adopt the F&R. ER-171. Indeed, Cox gave no indication that it opposed Capstone's assertion in its application for the DMCA subpoena that a DMCA subpoena can be issued to §512(a) providers until it filed its opposition brief in this appeal.

Cox attempts to excuse its failure to *ever* file an objection to the subpoena by arguing that Rule 45(d)(2)(B)'s objection deadline does not apply to the recipient of a DMCA subpoena. *See* Cox Br. at 65. District Courts have applied Rule 45(d)'s deadlines to recipients of DMCA subpoenas. *See, e.g. Reddit,* 441 F. Supp. 3d at 887 (N.D. Cal. 2020) (noting that Rule 45(d)(2)(B) for objections applies to person commanded to respond); *In re DMCA § 512(H) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 875 n.2 (N.D. Cal. 2022) (Noting that a motion to quash a DMCA subpoena must be "timely" filed per Fed. R. Civ. P. 45(d)(3)(A).) Cox cites no case in support of its argument.

Even Cox concedes that Rule 45 applies to "the procedure for *issuance and delivery* of the subpoena, and the *remedies for noncompliance* with the subpoena." Cox Br. at 66. But Rule 45(a)(1)(A), which sets forth the procedures for *issuance*, explicitly requires that the text of Rule 45(d) and (e) be included in the subpoena.

32

And Rule 45(d)(2)(B) explicitly says "The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Accordingly, the 14 day objection deadline is built within the procedures for *issuance and delivery* of the subpoena. Nonetheless, Capstone's DMCA subpoena had a response deadline of June 27, 2023. *See* ER-226. Cox was served the subpoena on April 17, 2023. *See* ER-48. At best, Cox's objection was when it filed its response to Capstone's objection to the F&R five months later on Sept. 28, 2023. Cox's opposition was untimely and waived under *any* standard.

Cox argues that Capstone provided no support for its position that Cox waived its right to participate by not objecting to the subpoena. *See* Cox Br. at 67. However, Capstone previously cited this Court's decision of *Richmark Corp. v. Timber Falling Consultant* which states, "it is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992); *see also DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)*, 151 F.3d 75, 81 (2d Cir. 1998) (stating that Rule 45 requires all objections to be raised at once); *see also Ott v. City of Milwaukee*, 682 F.3d 552, 558 (7th Cir. 2012) (following *DG Creditor Corp.*). Cox's attempt to distinguish *Richmark Corp.* because the case was a motion to compel is a distinction without a difference.

33

Capstone was prejudiced by Cox's ever shifting stances: (i) Cox first fully responding to the subpoena without any objections; (ii) Cox did not join John Doe's motion to quash; and (iii) Cox filed a non-party response to Capstone's objection to the F&R limited to only pointing out factual issues. ER-163 - ER-171. The case posture shifted from merely John Doe's objection based upon privacy concerns to Cox even arguing against a stay. Capstone did not have any real opportunity to submit evidence because the opposing party's position and even who was Capstone's opposing party were moving targets. The Court can alternatively reverse the District Court's order quashing the subpoena based upon Cox's waiver of any objections without deciding the applicability of *Verizon* and *Charter*.

## B. Cox does not have standing to contest the subpoena.

Cox cannot refute Capstone's point that it had no dispute with Capstone because Cox fully provided all but John Doe's information requested in the subpoena. Thus, the only dispute was between Capstone and John Doe. Cox tries to reframe Capstone's lack of standing argument as an assertion of mootness because Capstone withdrew its request for John Doe's information. *See* Cox Br. at 70. Not true. Cox did not object to disclosing John Doe's information. Cox did not join John Doe's motion to quash. Thus, Cox had no interest in the dispute

34

between John Doe and Cox. Without any controversy between Cox and Capstone, Cox did not have standing to appear.

## VI. THE DISTRICT COURT ABUSED ITS DISCRETION BY STRIKING THE DAVID COX DECLARATION.

Cox does not dispute that the District Court was incorrect in analogizing null routing an Internet connection to terminating a subscriber account as provided in §512(j)(1)(B)(i). Capstone could not have anticipated that the District Court would have made this mistake. But Cox argues that Capstone had an opportunity to submit the David Cox declaration in response to its Hall declaration. *See* Cox Br. at 61-62. Not true. The District Court's Order only permitted Cox to file evidentiary proof. *See* ER-152. Capstone was only permitted to file a "response". *Id.* And because Cox never served objections or appeared until *after* Capstone had filed its objection to the F&R, Capstone could not know this was an issue when it filed its objection to the F&R.

Cox complains that Capstone did not need to include an explanation of the hierarchy of the Internet such as different network tiers. *See* Cox Br. at 61. This technical information was necessary to inform the District Court about its mistake equating null routing to account termination. A Tier 1 network provider or IXP (which is a mere conduit) cannot null route a single endpoint while a Tier 2 network providers such as Cox can. *See* ER-90 – ER-91.

35

Cox argues that any error from the District Court striking the David Cox declaration was harmless because the District Court considered the evidence. Not true. *See* Cox Br. at 57-58. The District Court maintained its position that null routing results in "his internet access was nonetheless "effectively terminate[d]" and explicitly said "the court cannot consider" the explanation of destination null routing. ER-36.

The District Court's striking of the David Cox declaration was an abuse of its discretion.

## CONCLUSION

For the foregoing reasons, the Court should reverse the District Court's Order quashing the DMCA subpoena.

Date: Jan. 27, 2025

Culpepper IP, LLLC


*/s/ Kerry S. Culpepper*
Kerry S. Culpepper

*Attorney for Appellant*
*Capstone Studios Corp.*

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s) 24-3978**

I am the attorney or self-represented party.

**This brief contains <u>6,944</u> words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one)*:
[  ] it is a joint brief submitted by separately represented parties;
[  ] a party or parties are filing a single brief in response to multiple briefs; or
[  ] a party or parties are filing a single brief in response to a longer joint
brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>s/ Kerry S. Culpepper</u> **Date** _____<u>January 27, 2025</u>_____

37

## CERTIFICATE OF SERVICE

**9th Cir. Case Number(s) 24-3978**

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**
[  ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent (per Court order), by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)***:**

Reply Brief

**Signature** _s/ Kerry S. Culpepper__ **Date** ____Jan. 27, 2025____
*(use "s/[typed name]" to sign electronically-filed documents)*

38